Gerald Barrett, SBN: 005855
Taylor Secemski, SBN: 035678
**WARD, KEENAN & BARRETT, P.C.**
3838 N. Central Avenue, Suite 1720
Phoenix, Arizona 85012
Tel: (602) 279-1717
Fax: (602) 279-8908
E-mail: gbarrett@wardkeenanbarrett.com
E-mail: tsecemski@wardkeenanbarrett.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-mail: jmarchese@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot*
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133-5402
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com

*\* Pro Hac Vice* Admission Forthcoming

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Seth Hannibal-Fisher, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>Grand Canyon University, a Domestic Nonprofit Corporation,<br><br>                    Defendant. | Civil Action No. _____<br><br>**ORIGINAL CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Seth Hannibal-Fisher ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Grand Canyon University ("GCU" or "Defendant").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1. This is a class action lawsuit on behalf of all people who paid tuition, fees and the cost of room and board for the Spring 2020 academic term (the "Spring Term") at Grand Canyon University, and who, because of GCU's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefit of the education and room and board for which they paid, as well as the services for which their fees were paid, without having their tuition, fees and costs refunded to them in sufficient amount, or at all.

2. GCU is a large private university located in Phoenix, Arizona with an enrollment of approximately 90,500 students.  GCU offers both online degree programs and on-campus degree programs.

3. On or about March 12, 2020, GCU announced that because of the COVID-19 pandemic, all but a few in-person classes would be moved to an online-only format for its on-campus students, effective March 23 through the end of the Spring 2020 semester.  Thus, in-person classes that have continued have been offered solely in an online format, with no in-person instruction and sometimes with little or no real-time instruction by faculty.

4. GCU suspended all athletic events, all Spring Fine Arts performances, and other co-curricular activities.  GCU students were encouraged to return to their homes to complete their coursework online.  Although it was announced that the GCU campus would remain open, students had no meaningful choice but to comply with the mandate to return home to complete coursework online.  That mandate was reinforced several times, with students told to "leave campus as soon as possible" or if they had already, to stay home and not return.  It was further announced that all large-group gatherings on campus were

canceled, and campus facilities and lounges where groups typically gather were also closed.

5.    GCU students therefore left campus to avoid exposure to COVID-19 by sheltering at home.  Students stayed off campus to comply with GCU directives, as well as local, state and federal public health orders.

6.    GCU has not offered adequate refunds to students for the unused portion of their room and board or school fees, and it has not offered any tuition reimbursement to students who enrolled in and paid for on-campus, in-person courses during the Spring 2020 semester.

7.    As a result of transitioning its in-person courses to an online-only format, and the limited availability of Defendant's on-campus facilities, Defendant has not delivered the educational services, facilities, access, experience and/or opportunities that Mr. Hannibal-Fisher and the putative class contracted and paid for.  The online learning options being offered to GCU students are subpar in practically every aspect compared to the on-campus in-person classes, including due to the lack of facilities, equipment, materials, and access to faculty.  Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.  The remote learning options are in no way the equivalent of the in-person education that Plaintiff and the putative class members contracted and paid for.

8.    Furthermore, there is no basis for GCU not to provide adequate refunds for room and board costs and student fees, when the university's campus facilities were mostly closed and students were told to leave campus and resume their courses at home via an online format.

9.    Plaintiff and the putative class are therefore entitled to a refund of on-campus tuition, student fees and the cost of room and board that Defendant has not provided and not adequately refunded.  Even if GCU claims it did not have a choice in cancelling in-person classes and substantially closing campus facilities, it nevertheless has improperly retained funds for services it is not providing or that have diminished in value.

10.    Through this lawsuit Plaintiff seeks, for himself and Class members,

Defendant's disgorgement of the pro-rated portion of on-campus tuition, students fees, and the costs of room and board, proportionate to the amount of time that remained in the Spring semester when classes moved online and campus services ceased being provided (except on a limited basis) and for the entirety of the Spring Term, during which in-person classes have been held online and campus services have been unavailable.  Plaintiff seeks a return of these amounts on behalf of himself and the Class as defined below.

**PARTIES**

11. Plaintiff Seth Hannibal-Fisher is a citizen of Arizona who resides in Lake Havasu City, Arizona.  Mr. Hannibal-Fisher is an undergraduate student at GCU, enrolled in on-campus degree program.  He paid approximately $8,250 in on-campus tuition, plus $1,400 in fees, and $3,500 in room and board costs to Defendant for the Spring semester.  Plaintiff left campus on March 13, 2020 and has not returned in accordance with GCU's policies and mandates relating to COVID-19.  He had to purchase WiFi equipment at his own cost to continue his GCU classes online at home.  Plaintiff has not been provided a refund of any tuition monies or related costs to continuing his education online, nor has he received a refund of any student fees from Defendant.  Also, Plaintiff has not been provided with an adequate refund for his room and board costs.

12. Defendant Grand Canyon University is a Domestic Nonprofit Corporation doing business as a private university with its main campus located in Phoenix, Arizona.  GCU resides in Maricopa County, Arizona, with its principal place of business at 3300 W. Camelback Road, Phoenix, Arizona.

**JURISDICTION AND VENUE**

13. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

14. This Court has personal jurisdiction over Defendant because it resides in this

District.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because GCU resides in this District, and many of the acts and transactions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

*<u>Plaintiff and Class Members Paid Tuition, Fees, and Room and Board for the Spring Term</u>*

16. Plaintiff and Class members are individuals who paid the cost of on-campus tuition, fees, and/or room and board costs for the Spring 2020 semester at GCU.

17. For the Spring 2020 semester, GCU students moved on campus during January 4-5, 2020. The Spring semester classes began on or about January 6, 2020, and "Face-to-Face Instruction" classes ended on April 22, 2020. Move out dates were from April 23-25, 2020.

18. Plaintiff and Class members paid the cost of on-campus tuition, various fees, and room and board for the Spring 2020 semester.

19. Approximate on-campus tuition at GCU for the Spring 2020 semester costs $687.50 per credit. But tuition costs are substantially cheaper for GCU's online learning degree programs. For example, online tuition costs $440 per credit for GCU's Education and Science Programs, or $395 per credit for its Theology Programs, or $449 per credit for its IT Programs, or $470 per credit for other online degree programs.

20. Plaintiff and members of the putative Class also paid the following fees charged by Defendant for the Spring 2020 semester:

   (a) Canyon Connect Fee:  $105 per class;

   (b) Student Activity Fee:  $300 per semester;

   (c) Student Parking Fee:  Up to $150;

   (d) Housing Application Fee:  $250;

   (e) Graduation Fee:  $150;

   (f) Global Studies Portfolio Fee:  $90; and

    (g) Computer Science, Computer Programming, Engineering and Information Technology Program Premiums:  $900 per semester.

21. Approximate housing costs at GCU for the Spring 2020 semester are as follows:

    (a) Residence Hall Triple Occupancy:  $1,875 and

    (b) Residence Hall Double Occupancy:  $2,500.

22. Meal plans for the 2019-2020 academic year are offered in Dining Dollars only.  By way of example, the following meals plans were available to students at the following prices per semester:

    (a) Canyon 750:  apartment residents or commuter students only at $750;

    (b) Canyon 1000:  minimum requirement for new, incoming apartment residents at $1,000;

    (c) Canyon 1350:  minimum requirement for residence hall students at $1,350; and

    (d) Canyon 2100:  $2,000

23. The tuition, fees, and costs of room and board described in the paragraphs above are provided by way of example; total damage amounts – which may include other fees or monies that are not listed herein but that were not refunded – will be proven at trial.

***In Response To COVID-19, GCU Directed Students To Leave Campuses and Cancelled In-Person Classes***

24. In March 2020, GCU issued various mandates to its students requiring them to begin classes remotely, and in most cases leave campus, including their university housing, for the remainder of the Spring semester.

25. On March 12, 2020, GCU announced that because of the COVID-19 pandemic, all but a few in-person classes would be moved to an online-only format for its on-campus students, effective March 23 through the end of the Spring 2020 semester. Thus, in-person classes that have continued have been offered solely in an online format, with no in-person instruction and sometimes with little or no real-time instruction by

1 faculty.

2      26.    GCU encouraged all students to return to their homes to complete their
3 coursework online.  In addition, it suspended athletic events, fine arts performances, and
4 other extra-curricular activities.

5      27.    On March 16, 2020, GCU announced that commencement ceremonies
6 scheduled for April 30 and May 1 would be postponed until October.

7      28.    On March 17, 2020, GCU issued further mandates and protocol regarding
8 social distancing for students who remain on campus. Specifically, GCU canceled all large-
9 group gatherings on campus and closed facilities such as fitness centers, the E-sports
10 facility, commuter lounge, veterans center and other high-risk areas.

11      29.    On March 18, 2020, GCU updated its COVID-19 protocols, again
12 "remind[ing] students that they are "highly encouraged to return to their homes to finish out
13 the semester in an online learning environment if it is not imperative that they remain on
14 campus" and announcing closures of additional campus facilities.  On March 20, 2020,
15 GCU again urged students not to return to campus following Spring Break.

16      30.    Again, on March 21, 2020, GCU told its students to go home stating, "We are
17 asking all students – other than international students who can not travel to their home
18 countries and students who have special circumstances – to leave campus as soon as
19 possible."  GCU explained that it would not be safe to remain on campus and that if any
20 stay-at-home order issued, students would be restricted to just their rooms, the campus
21 grocery/convenience store and the Health and Wellness Clinic.  Further, it warned that
22 students remaining on campus should expect a significant cutback of food services
23 beginning Monday March 23, 2020.

24      31.    The effect of GCU's COVID-19-related protocol and messaging is that all
25 students have effectively been evicted from campus, unless they truly had no other place to
26 go.  For students who would remain on campus, services would be extremely limited.
27 Despite this, GCU students have not been granted appropriate refunds of their room and
28 board costs and fees, even though they are no longer able to use the services for which they

paid.

32. On March 23, 2020, GCU announced limited credits would be offered to students who moved out of their on-campus housing by March 25, 2020. The credit amounts range from $260 to $450 depending on dorm location and occupancy. After all outstanding balances on a student's account have been paid, GCU will mail checks to students. Students are only eligible for the credit if they moved out of their on-campus housing before March 26, 2020 and if they clarify their personal departure plan through the housing portal by end of the day on March 25, 2020.

33. The housing credits offered to GCU students are insufficient because they do not return to them the full pro-rated, unused portion of their room and board payment for the semester.

34. GCU also announced that in lieu of providing any refund of meal costs, that for students who are leaving campus but returning in the Fall, any Dining Dollars will roll over to next year. Graduating students will be refunded the balance of their Dining Dollars at the end of the semester.

35. The rollover of Dining Dollars is insufficient because it does not refund the amounts paid now. For students receiving financial aid, the rollover would require them to carry debt that they should not have to carry and might adversely affect their aid eligibility for the next academic year. Further, many students may not need the rolled over Dining Dollars, for example, because they will be living off-campus in the Fall and would not have been required to or chosen to purchase a meal plan for Fall.

36. GCU has not offered or provided students refunds of the miscellaneous fees they paid that were unused or for which they had not received a benefit.

37. As a result of transitioning its in-person courses to an online-only format, and the limited availability of Defendant's on-campus facilities, Defendant has not delivered the educational services, facilities, access, experience and/or opportunities that Plaintiff and the putative class contracted and paid for. The online learning options being offered to GCU students are subpar in practically every aspect compared to the on-campus in-person

classes, including due to the lack of facilities, equipment, materials, and access to faculty. Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique. The remote learning options are in no way the equivalent of the in-person education that Plaintiff and the putative class members contracted and paid for.

38. Plaintiff and the putative class are therefore entitled to a refund of all tuition and fees for services, facilities, equipment, access and/or opportunities that Defendant has not provided. Even if GCU claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing.

39. GCU students paid a higher price for in-person education than they would have paid for an online education. This is illustrated clearly by the vast price difference in GCU's in-person, on-campus programs versus GCU's own online learning programs.

40. Through this lawsuit Plaintiff seeks, for himself and Class members, Defendant's disgorgement of the pro-rated portion of on-campus tuition, student fees and the cost of room and board that Defendant has not provided and not adequately refunded, despite in-person classes being moved online and campus facilities and services being severely limited, or not offered at all. Plaintiff seeks return of these amounts on behalf of himself and the Class as defined below.

## CLASS ALLEGATIONS

41. Plaintiff seeks to represent a class defined as all people who paid GCU on-campus tuition, room and board costs, and/or fees for in-person educational services and facilities that GCU failed to provide during the Spring 2020 semester, and whose tuition, costs, and/or fees have not been refunded (the "Class"). Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate

1    family.

2        42.    Plaintiff also seeks to represent a subclass consisting of Class members who
3    reside in Arizona (the "Subclass").

4        43.    Subject to additional information obtained through further investigation and
5    discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed
6    by amendment or amended complaint.

7        44.    **Numerosity.** The members of the Class and Subclass are geographically
8    dispersed throughout the United States and are so numerous that individual joinder is
9    impracticable. Upon information and belief, Plaintiff reasonably estimates that there are
10   tens of thousands of members in the Class and Subclass. Although the precise number of
11   Class members is unknown to Plaintiff, the true number of Class members is known by
12   Defendant and may be determined through discovery. Class members may be notified of
13   the pendency of this action by mail and/or publication through the distribution records of
14   Defendant and third-party retailers and vendors.

15       45.    **Existence and predominance of common questions of law and fact.**
16   Common questions of law and fact exist as to all members of the Class and Subclass and
17   predominate over any questions affecting only individual Class members. These common
18   legal and factual questions include, but are not limited to, the following:

19       (a)    whether Defendant accepted money from Class and Subclass members in
20           exchange for the promise to provide services and facilities;
21       (b)    whether Defendant has provided the services and facilities for which Class
22           and Subclass members contracted;
23       (c)    whether Class and Subclass members are entitled to a refund for that portion
24           of the tuition, room and board, and fees that was contracted for services and
25           facilities that Defendant did not provide;
26       (d)    whether Defendant has unlawfully converted money from Plaintiff, the Class
27           and Subclass; and
28       (e)    whether Defendant is liable for unjust enrichment.

46. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendants that are unique to Plaintiff.

47. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class and Subclass. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

48. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

49. In the alternative, the Class and Subclass may also be certified because:

(a) the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b) the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that would, as a practical matter,

be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c) Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I
### Breach of Contract
### (On Behalf of the Class and Subclass)

50. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

51. Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

52. Through the admission agreement and payment of on-campus tuition, fees, and room and board costs, Plaintiff and each member of the Class and Subclass entered into a binding contract with Defendant.

53. As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services and facilities, all as set forth above. Plaintiff, Class, and Subclass members fulfilled their end of the bargain when they paid monies due for the Spring 2020 semester.  Tuition, fees, and room and board costs for the Spring semester were intended to cover in-person educational services and on-campus facilities from January through April 2020.  In exchange for the monies paid, Class and Subclass members were entitled to in-person educational services as well as regular access and use of on-campus facilities through the end of the Spring semester.

54. Defendant has failed to provide the contracted for services and facilities, and has otherwise not performed under the contract as set forth above.  Defendant has retained monies paid by Plaintiff and the Class for their Spring 2020 semester tuition, fees, and room and board costs, without providing them the benefit of their bargain.

55. Plaintiff and members of the Class and Subclass have suffered damage as a

direct and proximate result of Defendant's breach, including but not limited to being deprived of the education, experience, services, and facilities to which they were promised and for which they have already paid.

56. As a direct and proximate result of Defendant's breach, Plaintiff, the Class, and Subclass are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and costs that were collected by Defendant for services and facilities that Defendant has failed to deliver. Defendant should return the pro-rated portion of any Spring semester on-campus tuition, fees, and room and board costs for education services and campus facilities not provided since GCU ceased in-person classes, canceled on-campus events, and closed campus facilities.

57. Defendant's performance under the contract is not excused due to COVID-19. Indeed, Defendant should have refunded the pro-rated portion of any education services and facilities not provided. Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services and facilities it did not provide.

### COUNT II
### Unjust Enrichment
### (On Behalf of the Class and Subclass)

58. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

59. Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

60. Plaintiff and members of the Class and Subclass conferred a benefit on Defendant in the form of monies paid for Spring semester on-campus tuition, fees, and room and board costs in exchange for certain promises, services and facilities. Tuition, fees, and room and board costs for the Spring semester were intended to cover in-person educational services and on-campus facilities from January through April 2020. In

exchange for the monies paid, Class and Subclass members were entitled to in-person educational services as well as regular access and use of on-campus facilities through the end of the Spring semester.

61. Defendant voluntarily accepted and retained this benefit by accepting payment.

62. Defendant has retained this benefit, even though Defendant has failed to provide the education, experience, facilities and services for which the tuition, fees, and costs were collected, making Defendant's retention unjust under the circumstances. Accordingly, Defendant should return the pro-rated portion of any Spring 2020 semester tuition, fees, and costs for education services and on-campus facilities not provided by GCU.

63. It would be unjust and inequitable for Defendant to retain the benefit, and Defendant should be required to disgorge this unjust enrichment.

## COUNT III
### Conversion
**(On Behalf of the Class and Subclass)**

64. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

65. Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

66. Plaintiff and members of the Class and Subclass have an ownership right to the in-person educational services and on-campus facilities they were supposed to be provided in exchange for their Spring semester on-campus tuition, fees, and room and board payments to Defendant.

67. Defendant intentionally interfered with the rights of Plaintiff, the Class, and Subclass when it moved classes to an online format, discontinued in-person educational services for which tuition and fees were intended to pay, and closed or limited campus facilities.

68. Plaintiff and members of the Class and Subclass demand the return of the pro-rated portion of any Spring 2020 semester on-campus tuition, fees, and room and board costs for in-person education services and campus facilities not provided by GCU.

69. Defendant's retention of the monies paid by Plaintiff and members of the Class and Subclass without providing the educational services and facilities for which they paid, deprived Plaintiff, Class and Subclass members of the benefits for which the monies were paid.

70. This interference with the services and facilities for which Plaintiff and members of the Class and Subclass paid damaged Plaintiff and Class members in that they paid monies for services and facilities that were not provided.

71. Plaintiff, Class, and Subclass members are entitled to the return of pro-rated portion of any Spring 2020 semester on-campus tuition, fees, and room and board costs for education services and facilities not provided by GCU.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

(b) For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

(c) For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

|   |   |
|---|---|
| 1 | (g)  For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit. |

### DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: May 22, 2020                                **WARD, KEENAN & BARRETT, P.C.**

By: */s/Gerald Barrett*

Gerald Barrett
Taylor Secemski
3838 N. Central Avenue, Suite 1720
Phoenix, Arizona 85012
Telephone: (602) 279-1717
Facsimile: (602) 279-8908
E-mail: gbarrett@wardkeenanbarrett.com
E-mail: tsecemski@wardkeenanbarrett.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-mail: jmarchese@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot*
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133-5402
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com

* *Pro Hac Vice* Admission Forthcoming

*Attorneys for Plaintiff*