Gerald Barrett, SBN: 005855
Taylor Secemski, SBN: 035678
**WARD, KEENAN & BARRETT, P.C.**
3838 N. Central Avenue, Suite 1720
Phoenix, Arizona 85012
Tel: (602) 279-1717
Fax: (602) 279-8908
E-mail: gbarrett@wardkeenanbarrett.com
E-mail: tsecemski@wardkeenanbarrett.com

**\*Additional Counsel Listed Below**

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Seth Hannibal-Fisher and David Tran on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>Grand Canyon University,<br><br>     Defendant. | Civil Action No. 2:20-cv-01007-DLR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Seth Hannibal-Fisher and David Tran ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Grand Canyon University ("GCU" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1.      This is a class action lawsuit on behalf of all people who paid tuition, fees and the cost of room and board for the Spring 2020 academic term (the "Spring Term") at Grand Canyon University, and who, because of GCU's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefit of the education and room and board for which they paid, as well as the services for which their fees were paid, without having their tuition, fees and costs refunded to them in sufficient amount, or at all.

2.      GCU is a large for-profit university located in Phoenix, Arizona with an enrollment of approximately 90,500 students. GCU offers both online degree programs and on-campus degree programs.

3.      Plaintiffs and GCU entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in- person educational services, experiences, opportunities, and other related services. The terms of the contractual agreement were set forth in publications from GCU, including GCU's Spring Semester 2020 Course Catalog ("Course Catalog"),[1] the Individual College Courses Page ("Course Finder"),[2] and the Student Portal.

4.      When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Term, Plaintiffs and Class Members viewed the Course Catalog, the Course Finder, the Student

---

[1] https://www.gcu.edu/sites/default/files/media/documents/academics/catalog/2020-21/Academic-Catalog-Spring-2020.pdf

[2] https://www.gcu.edu/individual-courses/single-courses

Portal, and other publications to make specific course selections prior to registering and paying for selected courses.

5.      The Student Portal provided Plaintiffs and Class Members with information regarding the courses offered, the instructor, the days and times during which the courses would be held, and the on-campus location (including the building and room number) where courses would be held.  Plaintiffs and Class members then used and relied upon this information to register for classes on the Student Portal.

6.      Indeed, the Course Finder specifically allows for students to search for courses to enroll in and includes an option for "On Campus," as seen below:



7.      Other publications from GCU reference the in-person nature of the Spring Term course offerings, including course specific syllabi and the University's Policy Handbook ("Academic Rules"),[3] which detail the policies, procedures, and expectations of GCU students.  The Academic Rules describe the policies regarding classroom absences. Students are informed that there are different attendance policies for online and on-campus students.  On-campus students are notified that in the event of an absence:

> [S]tudents must notify the instructor in advance.  If a **face-to-face class** absence (or partial absence) is necessary, the following guidelines apply:
>
>> Partial Absence:   At the course instructor's discretion, partial attendance may result in a deduction of participation points.
>>
>> One Absence:  One class absence will result in the loss of participation points and, in-class activity points if applicable.
>>
>> An absence (or partial absence) does not preclude students from

---

[3] https://www.gcu.edu/sites/default/files/media/documents/academics/handbook/2020-21/University-Policy-Handbook-Spring-V4.pdf

completing assignments as expected or according to completion timelines.[4] (emphasis added).

8.       GCU's Spring Term Calendar, which Plaintiffs and Class Members relied upon to plan their semester when registering for classes, describes "Face-to-face instruction" continuing throughout the semester until April 22, 2020.[5]

9.       GCU's Spring Term commenced on or around January 6, 2020, and was scheduled to conclude on or around April 22, 2020.  Plaintiffs and Class Members' payment of tuition and fees were intended to cover in-person education, experiences, and services for the entirety of the Spring Term.

10.      On or about March 12, 2020, GCU announced that because of the COVID-19 pandemic, all but a few in-person classes would be moved to an online-only format for its on-campus students, effective March 23 through the end of the Spring Term.  Thus, in-person classes that continued were offered solely in an online format, with no in-person instruction and sometimes with little or no real-time instruction by faculty.

11.      GCU suspended all athletic events, all Spring Fine Arts performances, and other co-curricular activities.  GCU students were told to return to their off-campus homes to complete their coursework online.  Although it was announced that the GCU campus would remain open, students had no meaningful choice but to comply with the mandate to return home to complete coursework online.  That mandate was reinforced several times, with students told to "leave campus as soon as possible" or if they had already, to stay home and not return.  It was further announced that all large-group gatherings on campus were canceled, and campus facilities and lounges where groups typically gather were also closed.

12.      GCU students therefore left campus to avoid exposure to COVID-19 by sheltering at home.  Students stayed off campus to comply with GCU directives, as well as

---

[4] *Id*. at 46.

[5] https://news.gcu.edu/2019/12/winter-spring-2020-calendar-of-events/

local, state and federal public health orders.

13.     GCU has not offered adequate refunds to students for the unused portion of their room and board or school fees, and it has not offered any tuition reimbursement to students who enrolled in and paid for on-campus, in-person courses during the Spring Term.

14.     As a result of transitioning its in-person courses to an online-only format, and the limited availability of Defendant's on-campus facilities, Defendant did not deliver the educational services, facilities, access, experience and/or opportunities that Plaintiffs and the putative class contracted and paid for.  The online learning options offered to GCU students were subpar in practically every aspect compared to the on-campus in-person classes, including the lack of facilities, equipment, materials, and access to faculty. Students were deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.  The remote learning options are in no way the equivalent of the in-person education that Plaintiffs and the putative class members contracted and paid for.

15.     Furthermore, there is no basis for GCU not to provide adequate refunds for room and board costs and student fees, when the university's campus facilities were mostly closed and students were told to leave campus and resume their courses at home via an online format.

16.     GCU did not provide in-person education, experiences, or related services for approximately 50% of the Spring Term.

17.     Plaintiffs and the putative class did not enter into an agreement with GCU for online education, but rather sought to receive an in-person education from GCU.  Plaintiffs and the putative class are therefore entitled to a refund of on-campus tuition, student fees and the cost of room and board that Defendant has not provided and not adequately refunded.  Even if GCU claims it did not have a choice in cancelling in-person classes and substantially closing campus facilities, it nevertheless has improperly retained funds for services it did not provide or had their benefits reduced.

18.     Through this lawsuit Plaintiffs seek, for themselves and Class members, Defendant's disgorgement of the pro-rated portion of on-campus tuition, students fees, and the costs of room and board, proportionate to the amount of time that remained in the Spring Term when classes moved online and campus services ceased being provided (except on a limited basis) and for the entirety of the Spring Term, during which in-person classes have been held online and campus services have been unavailable.  Plaintiffs seek a return of these amounts on behalf of themselves and the Class as defined below.

## PARTIES

19.     Plaintiff Seth Hannibal-Fisher is a citizen of Arizona who resides in Lake Havasu City, Arizona.  Mr. Hannibal-Fisher is an undergraduate student at GCU, enrolled in on-campus degree program.  He paid approximately $8,250 in on-campus tuition, plus $1,409 in fees (including a parking fee and housing fee), and $3,500 in room and board costs to Defendant for the Spring Term.  Mr. Hannibal-Fisher left campus on March 13, 2020 and did not return in accordance with GCU's policies and mandates relating to COVID-19.  Mr. Hannibal-Fisher had to purchase WiFi equipment at his own cost to continue his GCU classes online at home.  Plaintiff has not been provided a refund of any tuition monies or related costs to continuing his education online, nor has he received a refund of any student fees from Defendant.  Also, Plaintiff has not been provided with an adequate refund for his room and board costs.

20.     As Mr. Hannibal-Fisher was not an international student or a student with any special circumstances and had already left and packed his belongings on March 13, 2020, he was not "[permitted to] return any time before April 23 to collect his things,"[6] as mentioned on the March 21, 2020 announcement from GCU.

21.     Plaintiff David Tran is a resident of Arizona.  He paid to attend the Spring 2020 semester at the Grand Canyon University as a full-time undergraduate student.  Mr. Tran paid tuition and the Mandatory Fees for the Spring 2020 semester to enable him to

---

[6] https://www.gcu.edu/sites/default/files/media/documents/march-21.pdf

obtain an in-person, on-campus educational experience, and enable him to participate in the activities and to utilize the services covered by the Mandatory Fees that he paid.

22.     Defendant Grand Canyon University is a private university with its main campus located in Phoenix, Arizona.  GCU resides in Maricopa County, Arizona, with its principal place of business at 3300 W. Camelback Road, Phoenix, Arizona.

## JURISDICTION AND VENUE

23.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

24.     This Court has personal jurisdiction over Defendant because it resides in this District.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because GCU resides in this District, and many of the acts and transactions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

### *Plaintiffs and Class Members Paid "On Campus" Tuition, Fees, and Room and Board for the Spring Term*

26.     Plaintiffs and Class members are individuals who paid the cost of on-campus tuition, fees, and/or room and board costs for the Spring Term at GCU.

27.     For the Spring Term, GCU students moved on campus during January 4-5, 2020.  The Spring Term classes began on or about January 6, 2020, and "Face-to-Face Instruction" classes ended on April 22, 2020.[7]  Move out dates were from April 23-25, 2020.

28.     Plaintiffs and Class members paid the cost of on-campus tuition, various fees,

---

[7] https://news.gcu.edu/2019/12/winter-spring-2020-calendar-of-events/

and room and board for the Spring Term.

29.     Approximate on-campus tuition at GCU for the Spring Term costs $687.50 per credit.  Tuition costs are substantially cheaper for GCU's online learning degree programs.  For example, online tuition costs $440 per credit for GCU's Education and Science Programs, or $395 per credit for its Theology Programs, or $449 per credit for its IT Programs, or $470 per credit for other online degree programs.

30.     Plaintiffs and members of the putative Class also paid the following fees charged by Defendant for the Spring Term:

      (a) Canyon Connect Fee:  $105 per class;

      (b) Student Activity Fee:  $300 per semester;

      (c) Student Parking Fee:  Up to $150;

      (d) Housing Application Fee:  $250;

      (e) Graduation Fee:  $150;

      (f) Global Studies Portfolio Fee:  $90; and

      (g) Computer Science, Computer Programming, Engineering and Information Technology Program Premiums:  $900 per semester.

31.     Approximate housing costs at GCU for the Spring Term were as follows:

      (a) Residence Hall Triple Occupancy:  $1,875 and

      (b) Residence Hall Double Occupancy:  $2,500.

32.     Meal plans for the 2019-2020 academic year are offered in Dining Dollars only.  By way of example, the following meals plans were available to students at the following prices per semester:

      (a) Canyon 750:  apartment residents or commuter students only at $750;

      (b) Canyon 1000:  minimum requirement for new, incoming apartment residents at $1,000;

      (c) Canyon 1350:  minimum requirement for residence hall students at $1,350; and

      (d) Canyon 2100:  $2,000

33.     The tuition, fees, and costs of room and board described in the paragraphs above are provided by way of example; total damage amounts – which may include other fees or monies that are not listed herein but that were not refunded – will be proven at trial.

***In Response To COVID-19, GCU Directed Students To Leave Campuses and Cancelled In-Person Classes***

34.     In March 2020, GCU issued various mandates to its students requiring them to begin classes remotely, and in most cases leave campus, including their university housing, for the remainder of the Spring Term.

35.     On March 12, 2020, GCU announced that because of the COVID-19 pandemic, all but a few in-person classes would be moved to an online-only format for its on-campus students, effective March 23 through the end of the Spring Term.  Thus, most in-person classes that continued were offered solely in an online format, with no in-person instruction and sometimes with little or no real-time instruction by faculty.

36.     GCU encouraged all students to return to their homes to complete their coursework online.  In addition, it suspended athletic events, fine arts performances, and other extra-curricular activities.

37.     On March 16, 2020, GCU announced that commencement ceremonies scheduled for April 30 and May 1 would be postponed until October.

38.     On March 17, 2020, GCU issued further mandates and protocols regarding social distancing for students who remain on campus.  Specifically, GCU canceled all large-group gatherings on campus and closed facilities such as fitness centers, the E-sports facility, commuter lounge, veterans center and other high-risk areas.

39.     On March 18, 2020, GCU updated its COVID-19 protocols, again "remind[ing] students that they are "highly encouraged to return to their homes to finish out the semester in an online learning environment if it is not imperative that they remain on campus" and announcing closures of additional campus facilities.  On March 20, 2020, GCU again urged students not to return to campus following Spring Break.

40.     Finally, on March 21, 2020, GCU told its students to go home, stating, "We

are asking all students – other than international students who can not travel to their home countries and students who have special circumstances – to leave campus as soon as possible."  GCU explained that it would not be safe to remain on campus and that if any stay-at-home order issued, students would be restricted to just their rooms, the campus grocery/convenience store and the Health and Wellness Clinic.  Further, it warned that students remaining on campus should expect a significant cutback of food services beginning Monday March 23, 2020.

41.     The March 21, 2020 announcement also stated "Students who have already left campus should stay home,"[8] but that students that had not already gathered their belongings were "[permitted to] return any time before April 23 to collect their things."[9] The most reasonable interpretation of this announcement was that residents who were not international students or were not subject to special circumstances but had already left and gathered their belongings were not permitted to return to their residences on campus.

42.     The effect of GCU's COVID-19-related protocol and messaging is that all students have effectively been evicted from campus, unless they truly had no other place to go.  For students who would remain on campus, services would be extremely limited. Despite this, GCU students have not been granted appropriate refunds of their room and board costs and fees, even though they were no longer able to use the services for which they had paid.

43.     On March 23, 2020, GCU announced limited credits would be offered to students who moved out of their on-campus housing by March 25, 2020.  The credit amounts range from $260 to $450 depending on dorm location and occupancy.  After all outstanding balances on a student's account have been paid, GCU will mail checks to students.  Students are only eligible for the credit if they moved out of their on-campus

---

[8] https://www.gcu.edu/sites/default/files/media/documents/march-21.pdf

[9] *Id.*

housing before March 26, 2020 and if they clarify their personal departure plan through the housing portal by end of the day on March 25, 2020.

44.     The housing credits offered to GCU students are insufficient because they do not return to them the full pro-rated, unused portion of their room and board payment for the Spring Term.

45.     Students have taken to an online petition to return the appropriate refund of room and board.[10]  Despite the demand, GCU has failed to issue any additional refund for the unused portion of the room and board payments.

46.     GCU also announced that in lieu of providing any refund of meal costs, that for non-graduating students who are leaving campus but returning in the Fall, any Dining Dollars will roll over to next year.

47.     The rollover of Dining Dollars is insufficient because it does not refund the amounts paid now.  For students receiving financial aid, the rollover would require them to carry debt that they should not have to carry and might adversely affect their aid eligibility for the next academic year.  Further, many students may not need the rolled over Dining Dollars, for example, because they will be living off-campus in the Fall and would not have been required to or chosen to purchase a meal plan for Fall.

48.     GCU has not offered or provided students refunds of the miscellaneous fees they paid that were unused or for which they had not received a benefit.

49.     As a result of transitioning its in-person courses to an online-only format, and the limited availability of Defendant's on-campus facilities, Defendant did not deliver the educational services, facilities, access, experience and/or opportunities that Plaintiffs and the putative class contracted and paid for.  The online learning options offered to GCU students were subpar in practically every aspect compared to the on-campus in-person classes, including due to the lack of facilities, equipment, materials, and access to faculty.

---

[10] https://www.change.org/p/grand-canyon-university-refund-grand-canyon-university-students-the-unfulfilled-cost-of-room-board?recruited_by_id=ee07c9b0-cf4d-11e9-8c54-5ba16a55400e

Students were deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.  The remote learning options were in no way the equivalent of the in-person education that Plaintiffs and the putative class members contracted and paid for.

50.     Plaintiffs and the putative class are therefore entitled to a refund of all tuition and fees for services, facilities, equipment, access and/or opportunities that Defendant has not provided.  Even if GCU claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it did not provide.

51.     GCU students paid a higher price for in-person education than they would have paid for an online education.  This is illustrated clearly by the vast price difference in GCU's in-person, on-campus programs versus GCU's own online learning programs.

52.     At no point prior to the contract being formed did Defendant disclaim that the in-person classroom instruction could be replaced with online learning.

53.     On campus courses and face-to-face classes are reasonably understood, and were understood by Plaintiffs, to be held and taught in-person, and not held and taught remotely via computer screen or otherwise.

54.     Through this lawsuit Plaintiffs seek, for themselves and Class members, Defendant's disgorgement of the pro-rated portion of on-campus tuition, student fees and the cost of room and board that Defendant has not provided and not adequately refunded, despite in-person classes being moved online and campus facilities and services being severely limited, or not offered at all.  Plaintiffs seek return of these amounts on behalf of themselves and the Class as defined below.

## <u>CLASS ALLEGATIONS</u>

55.     Plaintiffs seek to represent a class defined as all people who paid GCU on-campus tuition, room and board costs, and/or fees for in-person educational services and facilities that GCU failed to provide during the Spring Term, and whose tuition, costs, and/or fees have not been refunded (the "Class").  Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations,

trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

56.     Plaintiffs also seek to represent a subclass consisting of Class members who reside in Arizona (the "Subclass").

57.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

58.     **Numerosity.**   The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.   Upon information and belief, Plaintiffs reasonably estimate that there are tens of thousands of members in the Class and Subclass.   Although the precise number of Class members is unknown to Plaintiffs, the true number of Class members is known by Defendant and may be determined through discovery.   Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

59.     **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members.   These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendant accepted money from Class and Subclass members in exchange for the promise to provide services and facilities;

(b)     whether Defendant has provided the services and facilities for which Class and Subclass members contracted;

(c)     whether Class and Subclass members are entitled to a refund for that portion of the tuition, room and board, and fees that was contracted for services and facilities that Defendant did not provide;

(d)     whether Defendant has unlawfully converted money from Plaintiffs, the Class and Subclass;

(e)     whether Defendant is liable for unjust enrichment;

(f)     whether Defendant is in possession of money received from Plaintiffs, the Class and Subclass which in equity and good conscience should be paid over to the latter; and

(g)     whether Plaintiffs require an accounting to ascertain the proper amount Defendant owes to Plaintiffs, the Class and Subclass.

60.     **Typicality.**  Plaintiffs' claims are typical of the claims of the other members of the Class in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendants that are unique to Plaintiffs.

61.     **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Class and Subclass.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclass.

62.     **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy.   The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these

issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

63.     In the alternative, the Class and Subclass may also be certified because:

(a)     the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I
### Breach of Contract
### (On Behalf of Plaintiffs, the Class, and Subclass)

64.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

65.     Plaintiffs bring this claim on behalf of themselves and members of the Class and Subclass against Defendant.

66.     Plaintiffs and Defendant entered into a contractual relationship where Plaintiffs would provide payment in the form of tuition and fees, and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services.  The terms of the parties' contractual relationship are set forth in publications from GCU, including but not limited to the Spring Semester 2020 Course Catalog,[11] the Course Finder,[12] the Academic Rules,[13] and the Student Portal.

---

[11] https://www.gcu.edu/sites/default/files/media/documents/academics/catalog/2020-21/Academic-Catalog-Spring-2020.pdf

67.     When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Term, Plaintiffs and Class Members viewed the Course Catalog, the Course Finder, the Academic Rules, the Student Portal, and other publications to make specific course selections prior to registering and paying tuition and fees for those selected courses.  Defendant's Course Catalog and Student Portal constitutes an offer to enter a contractual agreement.

68.     The Student Portal provided Plaintiffs and Class Members with information regarding the courses offered, the instructor, the days and times during which the courses would be held, and the on-campus location (including the building and room number) where the courses would be held.

69.     Indeed, the Course Finder allowed students to search and register for classes based on whether the classes would be taught "On Campus."   Other GCU materials expressly refer to "face-to-face class[es]," *see infra*.

70.     Other publications from GCU also reference the in-person nature of the Spring Term course offerings, including course specific syllabi and the Academic Rules,[14] which detail the policies, procedures, and expectations of GCU students.  The Academic Rules describe the policies regarding classroom absences.  Students are informed that there are different attendance policies for online and on-campus students.  On-campus students are notified that in the event of an absence:

> [S]tudents must notify the instructor in advance.   If a **face-to-face class** absence (or partial absence) is necessary, the following guidelines apply:
>
> > Partial   Absence:    At   the   course   instructor's   discretion,   partial

---

[12] https://www.gcu.edu/individual-courses/single-courses

[13] https://www.gcu.edu/sites/default/files/media/documents/academics/handbook/2020-21/University-Policy-Handbook-Spring-V4.pdf

[14] https://www.gcu.edu/sites/default/files/media/documents/academics/handbook/2020-21/University-Policy-Handbook-Spring-V4.pdf

attendance may result in a deduction of participation points.

One Absence:  One class absence will result in the loss of participation points and, in-class activity points if applicable.

An absence (or partial absence) does not preclude students from completing assignments as expected or according to completion timelines.[15] (emphasis added).

71.     On campus courses and face-to-face classes are reasonably understood, and were understood by Plaintiffs, to be held and taught in-person, and not held and taught remotely via computer screen or otherwise.

72.     Through the admission agreement, the consultation with GCU's publications, and payment of on-campus tuition, fees, and room and board costs, Plaintiffs and each member of the Class and Subclass entered into a binding contract with Defendant.

73.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services and facilities, all as set forth above. Plaintiffs, Class, and Subclass members fulfilled their end of the bargain when they paid monies due for the Spring Term.  Tuition, fees, and room and board costs for the Spring Term were intended to cover in-person educational services and on-campus facilities from January through April 2020.  In exchange for the monies paid, Class and Subclass members were entitled to in-person educational services as well as regular access and use of on-campus facilities through the end of the Spring Term.

74.     Defendant materially breached the parties' contractual agreement by failing to provide in-person education services for the entirety of the Spring Term.  The provisions of the contract breached by Defendant include, but are not limited to, the provision setting forth the details of in-person educational services as described in the Student Portal.  The Student Portal indicated classes would be administered in an in-person, on-campus setting. The Student Portal did not make any reference to the administration of these courses in an

---

[15] *Id*. at 46.

online format.

75.     Defendant has failed to provide the contracted for services and facilities, and has otherwise not performed under the contract as set forth above.  Defendant has retained monies paid by Plaintiffs and the Class for their Spring Term tuition, fees, and room and board costs, without providing them the benefit of their bargain.

76.     Plaintiffs and members of the Class and Subclass have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the education, experience, services, and facilities to which they were promised and for which they have already paid.

77.     As a direct and proximate result of Defendant's breach, Plaintiffs, the Class, and Subclass are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and costs that were collected by Defendant for services and facilities that Defendant has failed to deliver. Defendant should return the pro-rated portion of any Spring Term on-campus tuition, fees, and room and board costs for education services and campus facilities not provided since GCU ceased in-person classes, canceled on-campus events, and closed campus facilities. In-person educational services were not provided for approximately 50% of the Spring Term.

78.     Defendant's performance under the contract is not excused due to COVID-19.   Indeed, Defendant should have refunded the pro-rated portion of any education services and facilities not provided.  Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services and facilities it did not provide.

## COUNT II
### Unjust Enrichment
### (On Behalf of Plaintiffs, the Class, and Subclass In The Alternative)

79.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

80.     Plaintiffs bring this claim on behalf of themselves and the members of the

Class and Subclass against Defendant.

81.     Plaintiffs and members of the Class and Subclass conferred a benefit on Defendant in the form of monies paid for Spring Term on-campus tuition, fees, and room and board costs in exchange for certain promises, services and facilities.  Tuition, fees, and room and board costs for the Spring Term were intended to cover in-person educational services and on-campus facilities from January through April 2020.  In exchange for the monies paid, Class and Subclass members were entitled to in-person educational services as well as regular access and use of on-campus facilities through the end of the Spring Term.

82.     Defendant voluntarily accepted and retained this benefit by accepting payment.

83.     Defendant has retained this benefit, even though Defendant has failed to provide the education, experience, facilities and services for which the tuition, fees, and costs were collected, making Defendant's retention unjust under the circumstances.

84.     Accordingly, Defendant should return the pro-rated portion of any Spring Term tuition, fees, and costs for education services and on-campus facilities not provided by GCU.

85.     It would be unjust and inequitable for Defendant to retain the benefit, and Defendant should be required to disgorge this unjust enrichment.

**COUNT III**
**Conversion**
**(On Behalf of Plaintiffs, the Class, and Subclass)**

86.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

87.     Plaintiffs bring this claim on behalf of themselves and the members of the Class and Subclass against Defendant.

88.     Plaintiffs and members of the Class and Subclass have an ownership right to the in-person educational services and on-campus facilities they were supposed to be provided in exchange for their Spring Term on-campus tuition, fees, and room and board

payments to Defendant.

89.     Defendant intentionally interfered with the rights of Plaintiffs, the Class, and Subclass when it moved classes to an online format, discontinued in-person educational services for which tuition and fees were intended to pay, and closed or limited campus facilities.

90.     Plaintiffs and members of the Class and Subclass demand the return of the pro-rated portion of any Spring Term on-campus tuition, fees, and room and board costs for in-person education services and campus facilities not provided by GCU.

91.     Defendant's retention of the monies paid by Plaintiffs and members of the Class and Subclass without providing the educational services and facilities for which they paid, deprived Plaintiffs, Class and Subclass members of the benefits for which the monies were paid.

92.     This interference with the services and facilities for which Plaintiffs and members of the Class and Subclass paid damaged Plaintiffs and Class members in that they paid monies for services and facilities that were not provided.

93.     Plaintiffs, Class, and Subclass members are entitled to the return of pro-rated portion of any Spring Term on-campus tuition, fees, and room and board costs for education services and facilities not provided by GCU.

### COUNT IV
### Money Had And Received
### (On Behalf Of Plaintiffs, The Class, And Subclass)

94.     Plaintiffs hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

95.     Plaintiffs bring this claim on behalf of themselves and the members of the Class and Subclass against Defendant.

96.     Plaintiffs and members of the Class and Subclass paid monetary funds to Defendant for tuition and fees for the Spring Term.

---

97.     Defendant has retained the monies paid by Plaintiffs and members of the Class and Subclass for the Spring Term while not providing in-person educational services, activities, opportunities, resources, and facilities for which those monies were paid.

98.     Defendant is in possession of and holds money that belongs to Plaintiffs and the members of the Class and Subclass in equity and good conscience.

99.     Defendant has been unjustly enriched by its retention of the funds Plaintiffs and the members of the Class and Subclass paid Defendant for tuition and fees, and it is unconscionable for Defendant to retain funds to which it is not entitled.

100.    Defendant's unlawful retention of Plaintiffs', Class and Subclass Members' funds has damaged Plaintiffs and the members of the Class and Subclass.

101.    Defendant owes Plaintiffs and members of the Class and Subclass for money had and received, including, but not limited to, the amount of Plaintiffs' and Class Members' pro-rated tuition and fees for the Spring Term.

## COUNT V
### Accounting
### (On Behalf Of Plaintiffs, The Class And Subclass In The Alternative)

102.    Plaintiffs hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

103.    Plaintiffs bring this claim on behalf of themselves and the members of the Class and Subclass against Defendant.

104.    Plaintiffs and members of the Class and Subclass have a special relationship with Defendant.  As an education and housing provider to Plaintiffs, Defendant is not merely in privity with Plaintiffs but also owes Plaintiffs and members of the Class and Subclass certain duties regarding the collection of private information amongst other responsibilities that originate with State and Federal Law.

105.    Defendant owes some balance to Plaintiffs and members of the Class and Subclass that can only be ascertained by an accounting.  Without an accounting, Plaintiffs

have a legal inability to discover the exact amount owed to Plaintiffs and members of the Class and Subclass for Defendant's failure to provide an in-person education to Plaintiffs and members of the Class and Subclass.  An accounting would allow Plaintiffs to discover the precise amount that Defendant owes Plaintiff and members of the Class and Subclass.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seek judgment against Defendant, as follows:

(a)     For an order certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass;

(b)     For an order finding in favor of Plaintiffs and the Class and Subclass on all counts asserted herein;

(c)     For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For injunctive relief as pleaded or as the Court may deem proper; and

(g)     For an order awarding Plaintiffs and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: August 31, 2020       **WARD, KEENAN & BARRETT, P.C.**

By: */s/ Gerald Barrett*

Gerald Barrett
Taylor Secemski
3838 N. Central Avenue, Suite 1720
Phoenix, Arizona 85012
Telephone: (602) 279-1717
Facsimile: (602) 279-8908
E-mail: gbarrett@wardkeenanbarrett.com
E-mail: tsecemski@wardkeenanbarrett.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (admitted *Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-mail: jmarchese@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (admitted *Pro Hac Vice*)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133-5402
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com

**BENDAU & BENDAU PLLC**
Clifford P. Bendau, II (AZ No. 030204)
Christopher J. Bendau (AZ No. 032981)
P.O. Box 97066
Phoenix, Arizona 85060
Telephone AZ: (480) 382-5176
Fax: (480) 304-3805
Email: cliffordbendau@bendaulaw.com
chris@bendaulaw.com

**CARLSON LYNCH LLP**
Gary F. Lynch*
Edward W. Ciolko*
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222
P (412) 322-9243
F. (412) 231-0246
E. glynch@carlsonlynch.com
eciolko@carlsonlynch.com
* *Pro Hac Vice* Admission Pending

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2020, I electronically transmitted the foregoing to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Sean P. Healy
Kathryn Honecker
LEWIS BRISBOIS BISGAARD & SMITH LLP
Phoenix Plaza Tower II
2929 North Central Avenue, Suite 1700
Phoenix, Arizona 85012-2761
Sean.Healy@lewisbrisbois.com
Kathryn.Honecker@lewisbrisbois.com

Jon P. Kardassakis
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Jon.Kardassakis@lewisbrisbois.com

*Attorneys for Defendant*


s/  Mary Farley