**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Seth Hannibal-Fisher, et al., | No. CV-20-01007-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Grand Canyon University, | |
| Defendant. | |

Before this Court is Defendant Grand Canyon University's ("GCU") Motion to Dismiss First Amended Complaint. ("Motion"; Doc. 21.) Plaintiffs, Seth Hannibal-Fisher and David Tran, filed a response. (Doc. 23.) GCU replied. (Doc. 27.) The Court is also in receipt of GCU's Request for Judicial Notice.[1] (Doc. 22.) Additionally, the Court has received a notice of supplemental authority from both GCU (Doc. 31 & 38) and Plaintiffs, (Doc. 34 & 41), and the Court also notes Plaintiffs' response to GCU's notice of supplemental authority (Doc. 34) and GCU's objection to Plaintiffs' response.[2] (Doc. 36.) Defendant requested oral argument, but the Court will rule without it, determining that it is unnecessary. *See* LRCiv. 7.2(f). For the reasons discussed below, GCU's Motion is granted in part and denied in part.

**I.    BACKGROUND**

---

[1] The Court denies GCU's request, finding that taking judicial notice of the four documents is unnecessary to resolve the Motion.

[2] The Court has ruled on Plaintiffs' response to GCU's notice of supplemental authority (Doc. 33) and GCU objection to that response (Doc. 36) in a separate order.

Plaintiffs filed this action seeking to represent a class of individuals who, because of GCU's response to the COVID-19 pandemic, "lost the benefit of the education and room and board for which they paid, as well as the services for which their fees were paid, without having their tuition, fees and costs refunded to them in sufficient amount, or at all." (FAC ¶ 1.) Plaintiffs' First Amended Complaint ("FAC") alleges the following:

Defendant GCU is a private university with its main campus located in Phoenix, Arizona. (FAC ¶ 22). Plaintiff Hannibal-Fisher is an undergraduate student at GCU enrolled in an on-campus degree program. (*Id.* ¶ 19.) For the Spring 2020 semester, Plaintiff Hannibal-Fisher paid approximately $8,250 in on-campus tuition, $1,409 in fees, and $3,500 for room and board costs to GCU. (*Id.*) Plaintiff Tran is a full-time undergraduate GCU student who paid to attend the Spring 2020 semester. (*Id.* ¶ 21.)

For the Spring 2020 term, on campus tuition cost $687.50 per credit for the Spring 2020 term. (*Id.* ¶ 29.) Online tuition was cheaper, ranging from $395 to $449 per credit. (*Id.* ¶ 29.) Plaintiffs also paid various fees for the Spring 2020 term. (*Id.* ¶ 30.)

In March 2020, in response to the COVID-19 pandemic, GCU instructed students to leave campus and begin attending class remotely. (*Id.* ¶ 34.) On March 12, 2020, GCU announced that as of March 23, 2020, all but a few in-person classes would be moved to an online-only format for its on-campus students through the end of the Spring 2020 term due to the COVID-19 pandemic. (*Id.* ¶ 35.) At that time, GCU also suspended athletic events, fine arts performances, and other extra-curricular activities and encouraged students to return home to complete their classes online. (*Id.* ¶ 36.) On March 17, 2020, GCU canceled all large group gatherings on campus and closed facilities such as fitness centers, the E-sports facility, commuter lounge, veterans center, and other "high-risk" areas. (*Id.* ¶ 38.) On March 18, 2020, GCU reminded students that they were "highly encouraged to return to their homes to finish out the semester in an online learning environment if it [was] not imperative that they remain on campus." (*Id.* ¶ 39.) GCU closed additional campus facilities at this time. (*Id.*) On March 20, 2020, GCU urged students not to return following Spring Break. (*Id.*) On March 21, 2020, GCU issued the following

statement to students: "We are asking all students – other than international students who can not travel to their home countries and students who have special circumstances – to leave campus as soon as possible." (*Id.* ¶ 40.) In the same communication, GCU explained that if any stay-at-home order issued, students would be restricted to just their rooms, the campus grocery store, and the Health and Wellness Clinic. (*Id.*) Further, GCU warned that students remaining on campus could expect a significant cutback in food services beginning on March 23, 2020. The March 21, 2020 announcement stated, "Students who have already left campus should stay home," but allowed students who had not already collected their belongings to return to campus to do so any time before April 23, 2020. (*Id.* ¶ 41.)

The FAC alleges that Plaintiffs and GCU "entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and fees and [GCU], in exchange, would provide in-person educational services, experiences, opportunities, and other related services." (*Id.* ¶ 3.) Plaintiffs allege that the terms of the contract were set forth in publications from GCU, including "GCU's Spring Semester 2020 Course Catalog ("Course Catalog"), the Individual College Course Page ("Course Finder"), and the Student Portal." (*Id.* (internal references omitted).) These publications contained multiple references to in-person instruction. (*Id.* ¶¶ 5-9.)

Plaintiffs allege that the online classes offered by GCU to students were subpar in practically every respect compared to the on-campus in-person classes. (*Id.* ¶ 49.) Thus, Plaintiffs allege that GCU "did not deliver the educational services, facilities, access, experience, and/or opportunities that Plaintiff and the putative class contracted and paid for. (*Id.* ¶14.) Plaintiffs allege that they are entitled to a refund of all tuition and fees for services, facilities, equipment, access, and/or opportunities that Defendant has not provided. (*Id.* ¶ 50.) Plaintiffs contend that GCU did not provide adequate refunds for room and board costs and student fees. (*Id.* ¶ 15.) The FAC alleges five causes of action: (1) Breach of Contract, (2) Unjust Enrichment, (3) Conversion, (4) Money Had and Received, and (5) Accounting. (*Id.* ¶¶ 64-105.)

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," as "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 555 n.3 (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1202, at 94–95 (3d ed. 2004)). Thus, Rule 8's pleading

standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Courts "generally consider only the claims of a named plaintiff in ruling on a motion to dismiss a class action complaint prior to class certification." *Barth v. Firestone Tire and Rubber Co.*, 673 F.Supp. 1466, 1476 (N.D. Cal. 1987).

When ruling on a 12(b)(6) motion to dismiss, courts generally will not consider evidence outside the pleadings without converting the motion into a motion for summary judgment. *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). However, a court may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *Id.* at 908.

### III.   DISCUSSION

GCU moves to dismiss Plaintiffs' FAC under Rule 12(b)(6), Fed. R. Civ. P., arguing that Plaintiffs' have failed to sufficiently allege a claim for each of their five causes of action. (Doc. 21.)

#### A. Breach of Contract

To state a cause of action for breach of contract, the Plaintiff must plead facts alleging "(1) a contract exists between the plaintiff and defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to plaintiff." *Dylan Consulting Servs. LLC v. SingleCare Servs. LLC*, No. CV-16-02984-PHX-GMS, 2018 WL 1510440, at *2 (D. Ariz. Mar. 27, 2018). A plaintiff need not plead the terms of the alleged contract with precision, but "'the Court must be able generally to discern at least what material obligation of the contract defendant allegedly breached.'" *Qingdao Tang-Buy Int'l Imp. & Exp. Co., Ltd. v. Preferred Secured Agents, Inc.*, No. 15-CV-00624-LB, 2016 WL 6524396, at *3 (N.D. Cal. Nov. 3, 2016) (quoting *James River Ins. Co. v. DCMI, Inc.*, No. C 11-06345 WHA, 2012 WL 2873763, at *3 (N.D. Cal. July 12, 2012)). "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party

questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "Although neither physical attachment nor specific language is necessary to incorporate a document by reference, the incorporating instrument must clearly evidence an intent that the writing be made part of the contract." *United California Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 258 (App. 1983).

GCU argues that the Court should dismiss Plaintiffs' breach of contract claim for four reasons. (Doc. 21 at 6-13.) GCU contends that: (1) Plaintiffs fail to identify purported contracts with GCU; (2) Plaintiffs fail to identify the right to only take in-person classes; (3) Plaintiffs fail to adequately allege damages; and (4) Plaintiff Hannibal-Fisher was not evicted from his on-campus housing. (*Id.*)

### 1. Tuition

Plaintiffs did not attach any contract to their FAC and instead say "[t]he terms of the contract were set forth in GCU's Spring Semester 2020 Course Catalog, the Individual College Courses Page, and the Student Portal." (Doc. 23 at 2.) GCU attached a copy of the Enrollment Agreements for the two plaintiffs to its motion and Plaintiffs do not dispute the authenticity of the Enrollment Agreements. Plaintiffs' FAC does not specifically mention the Enrollment Agreement or Housing Contract. However, the Court determines that the FAC sufficiently references the agreements by alleging the existence of a contract between the parties, relies on them to make their claims, and does not dispute that they constituted a part of the contract between the parties in their opposition. *See Marder*, 450 F.3d at 448. Thus, the Court may consider the Enrollment Agreement and the Housing Contract even though they are outside of the pleadings.

GCU argues that a breach of contract cannot exist for tuition paid for in-person instruction because the Enrollment Agreement does not guarantee any set format for Plaintiffs' classes. (Doc. 21 at 8.) The Court agrees. The FAC alleges that Plaintiffs and GCU entered into a contract where "Plaintiffs would provide payment in the form of tuition, fees, and [GCU] in exchange, would provide in-person educational services…" (Doc. 17 ¶¶ 3, 66.) Plaintiffs also allege that both Plaintiffs paid tuition for in-person, on-

campus education, which cost over $200 more per credit hour than online classes. (*Id.* ¶¶ 9, 19-20, and 29.) Plaintiffs allege that they construed the terms of GCU publications, including the Student Portal, Course Finder, Policy Handbook, and Spring Term Calendar as offering in-person classes. However, the Enrollment Agreement, which, as explained above, the Court has decided to consider does not comport with Plaintiffs' allegations. It states in relevant part:

> The University reserves the right to make changes of any nature to the calendar, admission, degree requirements, fees, regulations, course offerings, programs, or academic schedules whenever they are deemed necessary or desirable, including changes or modifications of course content, class scheduling, offering patterns, cancelling of scheduled classes, or other academic activities.

(Doc. 21-2 at 35.) This language clearly contradicts Plaintiffs' allegations that GCU guaranteed in-person classes because, according to the plain language of the contractual term, GCU reserved the right to make changes of "any nature" to its class offerings. (*Id.*) What's more, no language in the Enrollment Agreement guarantees in-person instruction.

Plaintiffs do cite to a number of cases where Courts have found that course catalogs create contractual obligations. (Doc. 23 at 4.) However, in those cases it is unclear if there is a specific written contract or if the entirety of the agreement comes from the course catalogs and other publications. In *Villard v. Capella Univ.,* No. 617CV1429ORL41GJK, 2017 WL 9253388, at *2 (M.D. Fla. Dec. 21, 2017), *report and recommendation adopted*, No. 617CV1429ORL41GJK, 2018 WL 2011433 (M.D. Fla. Apr. 30, 2018), there is no express contract or any discussion of a disclaimer. Also, in *Madej v. Yale Univ.*, No. 3:20-CV-133 (JCH), 2020 WL 1614230, at *9 (D. Conn. Mar. 31, 2020), it is unclear if there was an express contract, but the university did not dispute the consideration of the catalogues and other materials. These are all cases outside of this jurisdiction that are not persuasive under Arizona law.

GCU argues that the Course Catalog and Policy Handbook are not part of the contractual agreement because they specially disclaim that they establish a contractual

relationship and they are not incorporated by reference into the contracts. Plaintiffs don't dispute that there is a disclaimer but argue that the disclaimer is invalid under Arizona law. Plaintiff cites to *Demasse v. ITT Corp.*, 194 Ariz. 500, 504 (Ariz. 1999), for the proposition that the disclaimer is invalid. In that case, there was a claim that an employer had breached the employment contract with its employee. There was no express contract, but the Court found an implied-in-fact contract based on the employee handbook. The handbook had disclaimers, but the Court found them not clear and conspicuous enough to prevent the formation of an implied-in-fact contract. However, this case is distinguishable because there is a written contract, the Enrollment Agreement. The Enrollment Agreement also specifically states that the "Grand Canyon University Policy Handbook does not establish a contractual relationship". (Doc. 11-1 at 11.)

Plaintiff does not address GCU's legal arguments that the course catalog, policy handbook and other documents are not incorporated into the enrollment agreements. In Arizona, a contract itself must "clearly evidence an intent" for the separate documents to "be made part of the contract." *United Cal. Bank v. Prud. Ins. Co.*, 681 P.2d 390, 410 (Ariz. App. 1983). "It is not necessary for a contract to specifically state that another writing is incorporated by reference; however, 'the context in which the reference is made must make clear that the writing is part of the contract.'" *ROI Properties Inc. v. Burford Capital Ltd.*, No. CV-18-03300-PHX-DJH, 2019 WL 1359254, at *3 (D. Ariz. Jan. 14, 2019) (quoting *United Cal. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 420 (Ariz. App. 1983).

Plaintiffs argue that, at a minimum, they have plausibly alleged the existence of an implied contract for in-person instruction. (Doc. 23 at 3.) However, the Court must reject this argument. Under Arizona law, "[t]here can be no implied contract where there is an express contract between the parties in reference to the same subject matter." *Chanay v. Chittenden*, 115 Ariz. 32, 35 (1977); *accord Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 408 (9th Cir. 1992) (finding that under Arizona law there could be no implied contract where there was an express contract). The Court finds that there can be no implied contract for in-person instruction because it appears that the

- 8 -

Enrollment Agreement constitutes an express contract on the same subject matter. Accordingly, the Court will dismiss Plaintiff's breach of contract claim as it relates to in-person instruction.[3]

### 2. Housing and Fees

GCU argues that Plaintiffs have not stated a plausible claim for breach of contract for housing and fees students paid to GCU. GCU first contends Plaintiff Hannibal-Fisher was not evicted from campus. GCU posits that its on-campus students had a choice: "they could either remain on campus or return home for the last four weeks of the semester." (Doc. 21 at 12.) However, the allegations in the FAC bely this argument. Plaintiffs allege that GCU instructed students on several occasions to leave campus and not return after March 12, 2020. (Doc. 17 ¶¶ 10-11.) The statement from GCU from March 21, 2020 states, "We are asking all students – other than international students who can not travel to their home countries and students who have special circumstances – to leave campus as soon as possible." (*Id.* ¶ 40.) The same statement says that students may *ask for a waiver* to stay on campus if they have extenuating circumstances and that if any stay-at-home order was issued, students would be restricted to their rooms, the grocery store, and the Health and Wellness Clinic. (*Id.* ¶¶ 20 n. 6, 40) (emphasis added). The same communication instructed students who had already left campus to stay home. (*Id.* ¶ 41.) The FAC states that "Mr. Hannibal-Fisher was not an international student or a student with any special circumstances and had already left and packed his belongings on March 13, 2020, he was not '[permitted to] return any time before April 23 to collect his things,' as mentions on the March 21, 2020 announcement from GCU." (*Id.* ¶ 20) (alterations original) (internal reference omitted). Accepting these allegations as true, students were essentially mandated to leave campus unless they had extenuating circumstances or were international students who could not travel home. Although GCU makes much of the fact that Plaintiff Hannibal-Fisher left campus on March 13, 2020 and did not return, he simply appears to have

---

[3] In light of the Court's dismissal of the Plaintiffs' breach of contract claim for tuition paid for in-person instruction, the Court need not address GCU's argument that Plaintiffs have failed to sufficiently allege damages for this claim. (Doc. 21 at 9-11.)

complied with GCU's strong recommendation, if not mandate, to go home and not return. GCU's argument would require the Court to weigh the evidence which is inappropriate at the motion to dismiss stage.

GCU also argues that Plaintiffs cannot bring a claim for fees and housing costs because those fees were nonrefundable after a week pursuant to the Housing Contract. Again, the Court rejects this argument. Although housing costs and fees were non-refundable after a week, this assumes that GCU would actually provide the housing services for which those funds were paid. As the FAC alleges that GCU did not provide the housing and services for which the funds were paid, this argument has no merit under the facts alleged. Accordingly, the Court determines that Plaintiffs have plausibly alleged a claim for breach of contract for its payments of housing costs and fees.

GCU lastly argues that Plaintiffs' claims fail as a matter of law because it was impossible for the University to perform.[4] *See Garner v. Ellingson*, 18 Ariz.App. 181, 182 (1972) ("It is well settled that when, due to circumstances beyond the control of the parties the performance of a contract is rendered impossible, the party failing to perform is exonerated.") Arizona law recognizes the defense of impracticability of performance and typically follows the Restatement in contract cases. *See 7200 Scottsdale Rd. Gen. Partners v. Kuhn Farm Mach., Inc.*, 909 P.2d 408, 412 (Ariz. App. 1995) (using the Restatement (Second) of Contracts (1981) to distinguish between the doctrines of impracticability of performance and frustration of purpose); *Campbell v. Pfeifer*, 2019 WL 4200610, at *2 n. 1 (Ariz. App. Sep. 5, 2019) ("We typically follow the Restatement in contract cases."). However, even if GCU can prove that the defense applies to this case, the Restatement recognizes that it is generally appropriate to allow a party who has performed to seek restitution. Restatement (Second) of Contracts § 272 cmt. b (1981). Thus, for the purposes of the motion, the Court rejects GCU's argument that Plaintiffs' breach of contract claims must be dismissed due to impossibility of performance.

---

[4] Pursuant to this argument, GCU asks the Court to take judicial notice of Governor Ducey's Stay-At-Home Order. The Court will reject this request because this Motion can be decided on the pleadings.

### B. Unjust Enrichment

To prevail on a claim of unjust enrichment under Arizona law, a Plaintiff must prove five elements: "'(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law.'" *Perez v. First Am. Title Ins. Co.*, 810 F.Supp.2d 986, 991 (D. Ariz. 2011) (quoting *Freeman v. Sorchych*, 226 Ariz. 242, 245 P.3d 927, 936 (App. 2011)). "A claim for unjust enrichment may exist where a person confers a benefit to his detriment on another and allowing the other to retain that benefit would be unjust." *Baughman v. Roadrunner Commc'ns, LLC*, No. CV-12-565-PHX-SMM, 2014 WL 3955262, at *4 (D. Ariz. Aug. 13, 2014) (citing *USLife Title Co. of Ariz. v. Gutkin*, 152 Ariz. 349, 354 (App. 1986)). Under Arizona law, unjust enrichment is a flexible equitable remedy which is "'available whenever the court finds that the defendant … is obliged by the ties of natural justice and equity to make compensation for the benefits received.'" *Isofoton, S.A. v. Giremberk*, No. CV-04-0798-PHX-ROS, 2006 WL 1516026, at *3 (D. Ariz. May 30, 2006) (quoting *Arnold & Assocs., Inc. v. Misys Healthcare Systems*, 275 F.Supp.2d 1013, 1024 (D. Ariz. 2003)) (internal quotation marks omitted). Under Rule 8(d)(2), Fed. R. Civ. P., a party may plead an unjust enrichment claim in the alternative even if they are alleging the existence of a contract governing the dispute. *See, e.g., Isofoton, S.A.*, 2006 WL 1516026, at *3; *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000) (allowing Plaintiff to pursue the alternate theory of unjust enrichment but barring double recovery).

The Court finds Plaintiffs have adequately pled a claim for unjust enrichment as it relates to tuition. GCU's Motion argues that Plaintiffs' unjust enrichment claim should be dismissed because "Plaintiffs allege no facts of an enrichment or impoverishment, let alone inequitable benefit." (Doc. 21 at 14.) GCU is only partially correct. As stated above, considering the Enrollment Agreement, Plaintiffs have not alleged a contractual entitlement to in-person instruction. However, under the facts alleged, students paid a higher rate for in-person classes than they did for online classes. According to the facts

alleged, Plaintiffs paid for in-person classes but only received online instruction, so they did not receive what they paid for. As pled, their impoverishment is directly linked to the enrichment of GCU because they received more than they should have for only providing online classes.

Similarly, Plaintiffs have adequately alleged an unjust enrichment claim for housing and costs and fees paid to GCU. Plaintiffs' FAC contends that they conferred a benefit on GCU in the form of fees and room and board costs in exchange for promises that GCU would provide services and facilities. (Doc. 17 ¶ 81.) The FAC also states that GCU retained the benefit even though it failed to provide facilities and services for which the money was collected. (*Id.* ¶ 83.) Further, the connection between the alleged enrichment and impoverishment is necessarily present based on the facts alleged. Plaintiffs also contend that GCU has improperly retained funds for services it did not provide, even if GCU did not have a choice but to cancel in-person classes and send students home for the semester. (*Id.* ¶ 49.)

Although there is another remedy at law available for housing and fees, Plaintiffs may properly allege unjust enrichment as an alternative theory of liability. *See Adelman*, 90 F. Supp. 2d at 1045. Further, the Court rejects GCU's argument that unjust enrichment cannot be pled as an alternative theory of liability. GCU relies on *Trustmark Ins. Co. v. Bank One, Arizona, NA* for this argument, but in that case, the Court did not allow the plaintiff to pursue its unjust enrichment claim because it was not bringing the claim in the alternative. 202 Ariz. 535, 543, ¶ 37 (App. 2002). Here, Plaintiffs are bringing their unjust enrichment claim in the alternative, making it proper. Thus, the Court finds that Plaintiffs have not pled an unjust enrichment claim for money spent for tuition for in-person instruction, but have done so for money paid for housing costs and fees.

### C. Conversion Claim

Conversion is defined as "'an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another.'" *Case Corp. v. Gehrke*, 208 Ariz. 140, 143 (App. 2004) (quoting *Sears Consumer Fin. Corp. v. Thunderbird*

1    *Prods.*, 166 Ariz. 333, 335 (App. 1990)). In order to maintain an action for conversion, "a
2    plaintiff must have had the right to immediate possession of the personal property at the
3    time of the alleged conversion." *Id.* (citations omitted). A conversion claim cannot be
4    maintained to collect on a debt that could be satisfied by money generally, but money can
5    be the subject of a conversion claim if they money "'can be described, identified or
6    segregated, and an obligation to treat it in a specific manner is established.'" *Id.* (quoting
7    *Autoville, Inc. v. Friedman*, 20 Ariz.App. 89, 91-92 (1973)). Arizona has no tort of
8    conversion of real property. *Brosnahan v. JP Morgan Chase Bank*, No. CV09-8224-PCT-
9    JAT, 2010 WL 4269562, at *4 (D. Ariz. Oct. 25, 2010) (citing *Strawberry Water Co. v.
10   Paulsen*, 220 Ariz. 401, 207 P.3d 654, 659 (App. 2008)).

11          GCU argues that Plaintiffs' claim for conversion should be dismissed for six
12   independent reasons. (Doc. 21 at 14-15.) The Court will not address each of GCU's
13   independent arguments, but it does find one persuasive. GCU argues that Plaintiffs cannot
14   bring their conversion claim because they seek to collect on a debt that could be paid by
15   money generally. *See Case Corp.*, 208 Ariz. at 143; *see also Koss Corp. v. Am. Exp. Co.*,
16   233 Ariz. 74, 90, ¶ 54 (App. 2013). In response, Plaintiffs argue that they are, indeed,
17   asking for the return of the exact money they paid. However, Plaintiffs' argument fails
18   because they cannot explain how their alleged harm could not be remedied by the payment
19   of money generally. Further, Plaintiffs have not alleged that the money they paid can be
20   "described, identified, or segregated" and have not identified an obligation to treat the
21   money paid in a specific manner. GCU points out that in *Autoville*, the Arizona Court of
22   Appeals found that the plaintiff did not have an ownership interest in the proceeds of the
23   sale of cars when the car dealership could discharge this debt to plaintiff "from a source
24   other than the sales proceeds." 20 Ariz.App. at 92. The same principle applies here; there
25   is no reason that Plaintiffs' alleged harm could not be remedied by a payment from GCU's
26   general account. An amendment to Plaintiffs' conversion claim would be futile because the
27   Court doubts the ability of the Plaintiffs' to show that GCU had an obligation to treat the
28   money in a specific manner. Accordingly, Plaintiffs' conversion claim must be dismissed

with prejudice.

### D. Money Had and Received Claim

Money had and received is an equitable claim, which requires a showing that "the defendant has received or obtained possession of money of the plaintiff which in equity and good conscience he ought to pay over to the plaintiff." *Copper Belle Mining Co. of W. Virginia v. Gleeson*, 14 Ariz. 548, 551 (1913); *McCarrell v. Turbeville*, 51 Ariz. 166, 173 (1938); *Dream Team Holdings LLC v. Alarcon*, No. CV-16-01420-PHX-DLR, 2017 WL 3460806, at *3 (D. Ariz. Aug. 11, 2017). The action is akin to an action for unjust enrichment. *Dream Team*, 2017 WL 3460806, at *3. The general rule is that "a party cannot recover money voluntarily paid with a full knowledge of the facts." *Copper Belle Mining Co. of W. Virginia*, 14 Ariz. at 554. "Arizona's voluntary payment doctrine provides that '[e]xcept where otherwise provided by statute, a party cannot by direct action or by way of set-off or counterclaim recover money voluntarily paid with full knowledge of all the facts, and without any fraud, duress, or extortion.'" *Brown & Bain, P.A. v. O'Quinn*, No. 03-0923 PHX ROS, 2006 WL 449279, at *6 (D. Ariz. Feb. 22, 2006) (citing *Moody v. Lloyd's of London*, 61 Ariz. 534, 152 P.2d 951, 953 (Ariz. 1944)).

Examining the FAC, Plaintiffs have pled an action for money had and received. FAC contends that paid GCU tuition, fees, and room and board costs in exchange for promises that GCU would provide in-person education, services, and facilities. (Doc. 17 ¶ 81.) The FAC also states that GCU retained the benefit even though it failed to provide "education, experience, facilities, and services" for which the money was collected. (*Id.* ¶ 83.) Contrary to what GCU argues, taking the FAC's allegations as true, Plaintiffs did not pay with full knowledge of the facts. They paid GCU before knowing that GCU would instruct students to return home and move classes online. (*Id.* ¶¶ 28, 34-41.) Therefore, the Court finds that Plaintiffs have plausibly alleged a claim for money had and received.

### E. Accounting Claim

Under Arizona law, "actions for accounting are usually reserved to parties in a fiduciary relationship." *Wright v. Chase Home Fin., LLC*, No. CV-11-0095-PHX-FJM,

2011 WL 2173906, at *3 (D. Ariz. June 2, 2011) (citing *Mollohan v. Christy*, 80 Ariz. 141, 143-44, 294P.2d 375, 376-77 (1956)). A cause of action "cognizable at law" may require an equitable accounting "in rare cases where the accounts are too complicated for a jury to handle," but the legal remedy cannot be characterized as inadequate "'merely because the measure of damages may necessitate a look into petitioner's business records.'" *Cellco P'ship v. Hope*, No. CV11-0432-PHX-DGC, 2012 WL 260032, at *3 (D. Ariz. Jan. 30, 2012) (quoting *Dairy Queen v. Woods*, 369 U.S. 469 U.S. 469, 478 (1962)).

Plaintiffs' FAC alleges that GCU owes the Plaintiffs and members of the class an accounting which they claim is the only way to ascertain balances that GCU owes. (Doc. 17 ¶¶ 102-105.) The FAC alleges, "Without an accounting, Plaintiffs have a legal inability to discover the exact amount owed to Plaintiffs and members of the Class and Subclass for Defendant's failure to provide an in-person education to Plaintiffs and members of the Class and Subclass." (*Id.* ¶ 105.) GCU argues that Plaintiffs' accounting claim fails because (1) "Plaintiffs' attempt to use an accounting to measure damages is improper and unnecessary given discovery can uncover such information" and (2) accounting is a "'relatively rare proceeding'" which is typically reserved to parties in a fiduciary relationship. (Doc. 21 at 16 (quoting *Mezey v. Fioramonti*, 65 P.3d 980, 984-85 (Ariz. App. 2003).) In response, Plaintiffs argue that dismissing the accounting claim is premature at this stage because "[u]ntil discovery is performed, or until an accounting is done, there is not way for this Court to determine of the complexities of Defendant's accounts.

The Court agrees that Plaintiffs' accounting claim should be dismissed. Although Plaintiffs' accounting claim alleges that GCU has a "special relationship" with students under federal and state law as a housing provider, they fail to explain exactly what that special relationship is or under what federal or state law the relationship originates. (Doc. 17 ¶ 104.) Even if a special relationship did exist, Plaintiffs fail to explain how that special relationship would entitle them to an accounting. The FAC is devoid of any allegations which demonstrate that GCU owed students a fiduciary relationship, and the Court will not find one in the absence of such allegations. There appears to be no reason why Plaintiffs

cannot use discovery to determine the complexity of GCU's accounts and how much GCU owed to Plaintiffs and potential class members. Accordingly, the Court will dismiss Plaintiffs' claim for an accounting.

## IV. LEAVE TO AMEND

When a motion to dismiss based on Rule 12(b)(6) is granted, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

Here, it appears that Plaintiffs' claims for breach of contract for tuition is unlikely to be cured by the allegation of other facts. However, in accordance with the well-settled law in this circuit, because "it is not 'absolutely clear' that [Plaintiff] could not cure [the Complaint's] deficiencies by amendment," the Court will give them the opportunity to do so. *See Jackson v. Barnes*, 749 F.3d 755, 767 (9th Cir. 2014) (citations omitted); Fed. R. Civ. P. 15(a)(2) ("leave to amend should be "freely" given "when justice so requires[]"). Plaintiffs' Amended Complaint must address the deficiencies identified above and should follow the form detailed in Rule 7.1 of the Local Rules of Civil Procedure ("LRCiv"). Within thirty (30) days from the date of entry of this Order, Plaintiff may submit an amended complaint. Plaintiffs must clearly designate on the face of the document that it is the "First Amended Complaint." The amended complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original Complaint by reference.

## V. CONCLUSION

For the reasons discussed above,

**IT IS ORDERED** granting in part and denying in part Defendant's Motion to Dismiss. (Doc. 21.) The Motion is denied as to Plaintiffs' breach of contract claim for housing costs and fees, unjust enrichment claims, and money had and received claim and granted under Rule 12(b)(6) as to Plaintiffs' breach of contract claim for tuition, conversion claim, and accounting claim.

**IT IS FURTHER ORDERED** that Plaintiffs' claims for conversion and

1 accounting are dismissed with prejudice.

2 **IT IS FURTHER ORDERED** that Plaintiffs' claims for breach of contract for
3 tuition is dismissed without prejudice.

4 **IT IS FURTHER ORDERED** granting Plaintiffs leave to file an amended
5 complaint within sixty (60) days of the date this Order is entered.

6 **IT IS FURTHER ORDERED** denying Defendant's request for judicial notice.
7 (Doc. 22.)

8 Dated this 5th day of March, 2021.

_____
Honorable Susan M. Brnovich
United States District Judge