**BURSOR & FISHER, P.A.**
Joseph I. Marchese (admitted *Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: jmarchese@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (admitted *Pro Hac Vice*)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com

**\*Additional Counsel Listed Below**

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| SETH HANNIBAL-FISHER and DAVID TRAN, on behalf of themselves and all others similarly situated,<br><br>                                        Plaintiffs,<br><br>        v.<br><br>GRAND CANYON UNIVERSITY,<br><br>                                Defendant. | Case No. 2:20-cv-01007-SMB<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**<br><br>Hon. Susan M. Brnovich |

Pursuant to Federal Rules of Civil Procedure 23, Plaintiffs Seth Hannibal-Fisher and David Tran (collectively, "Plaintiffs") respectfully request that this Court issue a Certification Order, under Fed. R. Civ. P. 23, (i) certifying the claims in this action as a class action; (ii) confirming Plaintiffs as class representatives; (iii) appointing Plaintiffs' counsel Lynch Carpenter, LLP and Bursor & Fisher, P.A. as Class Counsel; and (iv) ordering the parties' counsel to meet and confer to develop appropriate notice to Class members. Plaintiffs seek certification of the following class:

> All Grand Canyon University students who paid on-campus tuition during the Spring 2020 semester and whose tuition has not been refunded (the "Class")[1].

As set forth in greater detail below, the Court should grant Plaintiffs' motion and certify the proposed Class because every member suffered the same harm when Defendant Grand Canyon University ("GCU" or "Defendant") switched to remote, online-only learning and closed its campus to each member of the proposed Class at the same time. Furthermore, individual damages may be determined on a class-wide basis based on pro-rating the uniform difference in price between GCU's campus program and less expensive online program, based on the percentage of the Spring 2020 term that was uniformly transitioned to remote online instruction for all students.  This level of uniformity makes this case especially well-suited for resolution as a class action under Rule 23. In support of this motion, Plaintiffs submit that all of the requirements of Rule 23(a) and Rule 23(b)(3) have been met. A discussion of each of the class certification prerequisites, and how they are met in this case, is set forth in this Motion and Memorandum filed in support thereof and supported by all attached exhibits, as well as all pleadings and records on file and any such other evidence as may be presented at the time of the hearing.

///

///

///

---

[1] Plaintiffs have amended their Class definition as proposed in the First Amended Complaint, which they have expressly reserved the right to do. ECF 17 ("FAC") ¶ 57.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM IN SUPPORT**

This memorandum of points and authorities is submitted in support of Plaintiffs' Motion for Class Certification.

## I.    INTRODUCTION

This case addresses the question of who should bear the financial burden of the drastic switch in modality of instruction and services following the COVID-19 pandemic. Defendant seems to believe it can actively market its rich campus life, promise its students a variety of services and amenities, advertise its campus degree programs, showcase and tout the facilities to which enrolled students traditionally have access, but then fail to provide its students with access to campus or in-person education for a portion of the semester and stick students with the full cost. The students who constitute the proposed class disagree.

As such, the questions for class certification in this case address central issues that do not vary by student: can GCU charge students for in-person, on-campus educational services that it did not provide? And if not, how much should GCU refund to its students?

## II.    FACTUAL BACKGROUND

Defendant is a large, for-profit university. FAC, at ¶ 2. Each Class member, including Plaintiffs, paid the full cost of tuition for in-person education services for the Spring 2020 semester ("Spring Term"). *Id.*, at ¶¶ 9, 19, 21, 28, 75, 81, 97. Plaintiffs and the Class made these payments in advance of and in exchange for in-person and on-campus education, as detailed in Defendant's marketing, advertisements, and other public representations. *See e.g., id.,* at ¶¶ 5-8, 29 (GCU's Course Finder allowed students to search for and enroll in "On Campus" courses); Exhibit 1[2], at GCU-HB000526 (indicating the date that "face-to-face" classes ended for "Traditional Campus Students"); Exhibit 2 ("Students practice their spoken Spanish through face-to-face activities"); Exhibit 3, at GCU-HB000487 (admissions application asking prospective students if they want to attend via "Main Campus" or "Online"); *Id.*, at GCU-HB000499 (identifying "Campus atmosphere" as a reason students

---

[2] Referenced exhibits are attached to the Declaration of (Eddie) Jae K. Kim in support Plaintiffs' Motion for Class Certification and Appointment of Class Counsel.

may wish to attend GCU); Exhibit 4 (GCU "has a variety of offices and services on campus that provide resources to students, staff and faculty. […] Our goal is for all members of the GCU community to be able to enjoy all that our campus has to offer, including access to our facilities, events and more."); Exhibit 5 ("During your campus visit, you will also have the chance to dine at popular campus eateries, socialize with other future Lopes and meet current students — plus experience campus life by attending an athletic event, theatre performance and student engagement event or concert. By staying in one of our suite-style residence halls, you will get a feel for our 'home away from home.' Come experience Lope Life to see if GCU is the university where you can feel at home and achieve your academic goals, while preparing for your career."); Exhibit 6 ("Campus keeps getting better and better. Keep an eye out for the new pool, Herd Stop grocery store and new gym coming in 2020"); Exhibit 7 ("Experience life in Lope Country! Schedule a tour of GCU's beautiful campus today"); Exhibit 8 ("GCU designed the Cyber Center of Excellence, a **hands-on campus** makerspace, to give students real training.") (emphasis added); Exhibit 9 ("Visit an ACE Center on campus to get the most out of your college experience and receive assistance with coursework!"); Exhibit 10 ("With over 900 student members, @Esports_GCU is the premier gaming organization on campus!"); Exhibit 11 ("To accommodate a boom in enrollment **on the ground campus** from less than 1,000 students in 2008 to today's total of approximately 22,000, GCU has continued to expand the campus to include: […] More than 1 million square feet of classrooms, laboratories, libraries and office space") (emphasis added); Exhibit 12 (GCU's efforts to increase student engagement led to "GCU's national reputation today as a university with a campus life like no other."). These facts, along with GCU's clear delineation between its campus program versus its online program, demonstrate that GCU has historically offered its campus program students access to in-person, on-campus instruction for every prior term ever since it has offered is campus program.[3]

---

[3] According to legal dictionaries and academia, "on the ground campus", as referred to by GCU, refers to face-to-face teaching, not an online teaching format. Exhibit 11; *see* Charlotte P. Cochran, *Faculty Transitions to Online Instruction: A Qualitative Case Study*,

1   The Spring Term commenced on approximately January 6, 2020, and was set to

2   conclude approximately April 22, 2020. *Id.*, at ¶ 9. However, on March 12, 2020, Defendant

3   announced that, due to the ongoing COVID-19 pandemic, all but a few classes would move

4   to an online-only format for its on-campus program, effective March 23, 2022, through the

5   end of the Spring Term. *Id.*, at ¶¶ 10, 40-41. The tuition for in-person, on-campus education

6   is substantially higher than tuition for online education. *Id.*, at ¶¶ 29, 51. In-person, on-

7   campus tuition is approximately $687.50 per credit while online tuition is approximately

8   $440 per credit for GCU's Education and Science Programs, $395 per credit for its Theology

9   Programs, $449 per credit for its IT Programs, and $470 per credit for other online degree

10  programs. *Id.*, at ¶ 29. Despite shutting down its campus and mandating online-only classes,

11  Defendant has not offered any tuition reimbursement, *pro rata* or otherwise, to students who

12  paid for on-campus, in-person education during the Spring Term. *Id.*, at ¶¶ 13, 49.

13  By pocketing the students' money without providing the benefit of in-person, on-

14  campus education, Defendant received a windfall of millions of dollars. *See id.*, at ¶¶ 2, 29.

15  Defendant did not provide in-person, on-campus education for approximately 50% of the

16  Spring Term. *Id.*, at ¶ 16. While Defendant received a windfall, without justification,

17  Defendant has denied Plaintiffs and the Class the benefit of in-person, on-campus education.

18  *Id.*, at ¶¶ 10-15, 49.

19  ## III.   LEGAL STANDARD

20  A party seeking class certification must first satisfy all of the requirements of Fed. R.

21  Civ. P. 23(a). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Rule 23(a)

22  requires a showing that: "(1) the class is so numerous that joinder of all members is

---

23  Northcentral University, May 2015, at p. 6 ("face-to-face (i.e., on-ground) teaching format");
24  Thad Crews & Jeff Butterfield, *Data for Flipped Classroom Design: Using Student Feedback to Identify the Best Components from Online and Face-to-Face Classes*, 4 Higher Educ.
25  Studies 38, 40 (2014) (survey study asking students, "[t]hink back on the face-to-face (on-ground) classes"); https://www.lawinsider.com/dictionary/on-ground (last accessed Feb. 3,
26  2023) ("On-Ground means instruction delivered with the instructor and student in the same room at the same time"); Mordechai Gordon, *Synchronous Teaching and Learning: On-*
27  *Ground versus Zoom*, 6 Int'l. Journal Educ. and Human Devs. 11, 18 (2020) ("the synchronous Zoom instruction that many educators were recently required to employ cannot
28  be simply equated with face-to-face, on-ground teaching and learning.").

1   impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

2   defenses of the representative parties are typical of the claims or defenses of the class; and

3   (4) the representative parties will fairly and adequately protect the interests of the class." Fed.

4   R. Civ. P. 23(a)(1)– (4). Plaintiffs seeking class certification must show that they have met

5   the requirements in FRCP 23(a) and at least one subsection in FRCP 23(b). *Zinser v. Accufix*

6   *Rsch. Inst., Inc*., 253 F.3d 1180, 1186 (9th Cir. 2001). The district court has broad discretion

7   to certify a class when exercised within the framework of Rule 23. *Id*. "The plaintiff must

8   prove entitlement to class certification by a preponderance of the evidence." *Bobbitt v.*

9   *Milberg LLP*, No. CV-09-00629-TUC-RCC, 2021 WL 2002950, at *4 (D. Ariz. May 19,

10  2021).

11      **IV.    ARGUMENT**

12          **a.  The Class Satisfies the Requirements of Rule 23(a)**

13          Under Rule 23(a), a class action may be maintained when: "(1) the class is so

14  numerous that joinder of all members is impracticable; (2) there are questions of law or fact

15  common to the class; (3) the claims or defenses of the representative parties are typical of the

16  claims or defenses of the class; (4) the representative parties will fairly and adequately protect

17  the interests of the class." Fed. R. Civ. P. 23(a).

18              **i.  The Class is Numerous Because Joinder is Impracticable**

19          To certify the purported Class, this Court must determine whether Plaintiffs' proposed

20  "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

21  A proposed class that exceeds 40 members presumptively satisfies this requirement. *See Mix*

22  *v. Asurion Ins. Servs. Inc*., No. CV-14-02357-PHX-GMS, 2016 WL 7229140, at *8 (D. Ariz.

23  Dec. 14, 2016) ("A… class of at least forty members presumptively satisfies the numerosity

24  requirement.") (citation omitted). Here, the proposed Class is so numerous that the joinder

25  of all members is impracticable. The proposed Class is defined as:

26          All GCU students who paid tuition for the on-campus program during the
           spring 2020 term and whose tuition has not been refunded.
27

28

---

Defendant claims that approximately 20,000 students are enrolled in its campus program. Exhibit 11 ("To accommodate a boom in enrollment on the ground campus from less than 1,000 students in 2008 to today's total of approximately 22,000, GCU has continued to expand the campus to include: [...] More than 1 million square feet of classrooms, laboratories, libraries and office space"). Furthermore, this Court granted class certification in *Little* of essentially the same class of approximately 20,000 students seeking reimbursement of on-campus fees during the Spring Term, met the standard for numerosity - this is not a significant challenge. *See Little v. Grand Canyon Univ.*, No. CV-20-00795-PHX-SMB, 2022 WL 266726, at *7 (D. Ariz. Jan. 28, 2022). Accordingly, there are enough Class members to satisfy the numerosity requirement of FRCP Rule 23(a)(1).

### ii. There are Questions of Law and Fact Common to the Class

Rule 23(a)(2) requires that plaintiffs seeking class certification demonstrate that class members share "common questions of law or fact." Fed. R. Civ. P. 23(a)(2). "[A] common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Only a single common question is required. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359, (2011) ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do."). The "claims must depend upon a common contention [...] that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id*. at 350.

This case centers on Defendant's conduct, which was uniformly experienced by the entirety of the Class, at the same exact time, in the same manner, raising common issues of fact and law. The multiple common questions of law and fact predominate over any questions affecting solely individual Class members, including Plaintiffs. The First Amended Complaint alleges common legal or factual questions (FAC, at ¶ 59), which include, but are not limited to:

(a) whether Defendant accepted money from Class members, including Plaintiffs, in exchange for the promise to provide in-person, on-campus educational services;

(b) whether Defendant is liable for unjust enrichment; and

(c) whether Defendant is in possession of money received from Class members, including Plaintiffs, which in equity and good conscience should be paid over to the latter.

Given that the common questions of law and fact are "capable of classwide resolution," the commonality requirement of Rule 23(a)(2) is easily satisfied. *See Dukes*, 564 U.S., at 350. These common issues are subject to a common answer, proven through the introduction of common proof. Notably, GCU transitioned all students to online remote learning in the same manner, at the same time. FAC at ¶ 10.[4] The evidence which will be used to establish that GCU charged and collected tuition monies for on-campus education, and subsequently switched to online learning (which carries a lower price point) without providing any refund, is common among all students as Defendant charged students uniform fees per credit for in-person and online credits. FAC, at ¶ 29.[5] An individualized examination of the treatment of Plaintiffs or any Class member is not necessary to prove liability here. As such, commonality is established.

### iii.  Plaintiffs' Claims are Typical of the Class Members' Claims

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v.*

---

[4] *See* https://www.gcu.edu/sites/default/files/2022-05/March%2012%2C%202020%20-%20Remainder%20of%20the%20Spring%20Semester%20to%20Transition%20to%20Online.pdf (last accessed Feb. 3, 2023)

[5] *See* https://web.archive.org/web/20200426221603/https://www.gcu.edu/tuition/on-campus (last accessed Feb. 3, 2023) (on-campus tuition for 2019-2020 was $687.50 per credit hour) *compare with* https://web.archive.org/web/20200426221603/https://www.gcu.edu/tuition/online-evening (last accessed Feb. 3, 2023) (online tuition for 2019-2020 was approximately $470.00 per credit hour).

1    *Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal citations omitted). "The test of typicality is

2    whether other members have the same or similar injury, whether the action is based on

3    conduct which is not unique to the named plaintiffs, and whether other class members have

4    been injured by the same course of conduct." *Id.* (internal citations and quotations omitted).

5    "Thus, [t]ypicality refers to the nature of the claim or defense of the class representative, and

6    not to the specific facts from which it arose or the relief sought." *Id.* (internal citations and

7    quotations omitted).

8        In the instant action, Plaintiffs and the other Class members paid the cost of in-person,

9    on-campus tuition to Defendant for the benefit of receiving their education in-person and on-

10   campus, instead of the lower tuition rate of Defendant's online programs. FAC at ¶¶ 5-9, 28-

11   29. GCU stopped providing in-person, on-campus instruction and educational services to

12   Plaintiffs and each member of the Class in March of 2020. *Id.*, at ¶ 10. Plaintiffs (i) enrolled

13   as on-campus students at GCU, (ii) registered for classes and complied with the school's

14   policies and procedures to remain in good standing, and (iii) paid their tuition for on-campus,

15   in-person instruction. *Id.*, at ¶¶ 3-9, 28. Plaintiffs and other Class Members were denied the

16   on-campus, in-person educational services that GCU promised to provide after it closed its

17   campus and switched to fully remote online learning. *Id.*, at ¶¶ 10-12.

18       Moreover, the members of the proposed Class have no individual interests in

19   controlling the litigation because, unlike a tort claim, all of their claims share a common set

20   of facts. Defendant committed their unlawful acts and representations (or absence thereof)

21   generally concerning each Class member. Accordingly, there is no individual advantage to

22   proceeding separately. Instead, there is a distinct disadvantage as the individual damages of

23   any one Class member may be relatively small when compared with the potential costs of

24   bringing this action, making the expense and burden of this litigation unjustifiable for

25   individual actions. *See* FAC at ¶ 28. Thus, their claims are uniformly typical and ideal for

26   disposition by class action.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### iv.  Plaintiffs and Their Counsel will Adequately Represent the Class

Rule 23(a)(4) requires that the class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy [of representation] inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 607 (9th Cir. 2018) (citing *Amchem*, 521 U.S. at 625). "This requirement is satisfied where (1) the plaintiffs have no conflict of interest with the proposed class, and (2) the plaintiffs are represented by qualified and competent counsel. *See Dukes*, 509 F.3d at 1185*." Bogner v. Masari Invs.*, *LLC*, 257 F.R.D. 529, 532 (D. Ariz. 2009). There is no evidence of any conflicts of interest between Plaintiffs and members of the Class. FAC at ¶ 61 ("Plaintiffs will fairly and adequately protect the interests of the Class"). Plaintiffs were undergraduate students on campus during the Spring Term. *Id*. at ¶¶ 19, 21. GCU charged Plaintiffs and the Class a uniform tuition for the Spring Term. *Id.*, at ¶ 29 ("Approximate on-campus tuition at GCU for the Spring Term costs $687.50 per credit."); https://web.archive.org/web/20200426221603/https://www.gcu.edu/tuition/on-campus (last accessed Feb. 3, 2023) (the average student pays $8,600.00 in tuition or $687.50 per credit hour). Plaintiffs seek, for themselves and on behalf of the Class, the return of a portion of tuition prorated for the portions of the Spring Term when GCU closed its campus and switched to remote online-learning. *Id.*, at ¶¶ 84, 101. Given the identical nature of the claims between Plaintiffs and the Class members, there is no potential for conflicting interests between the named Plaintiffs and the Class.

Further, Plaintiffs' counsel is adequate. *Id.*, at ¶ 61. Counsel has considerable expertise in complex litigation, including specific expertise as to this area of litigation, and has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation. Lynch Carpenter, LLP, has been appointed as interim lead counsel,

1

2

3

4

5

and as Class Counsel, in analogous cases across the country[6]. *See* Exhibit 14. Similarly, Bursor & Fisher, P.A., has significant complex litigation experience[7], including cases analogous to here, and has the financial and legal resources to meet those burdens associated with this litigation. *See* Exhibit 15. Accordingly, the adequacy of representation requirement of Rule 23(a)(4) is satisfied.

6

7

8

9

10

11

12

13

14

Rule 23(a)(4) requires that the Class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation is satisfied if the named representatives appear 'able to prosecute the action vigorously through qualified counsel' and if the representatives have no 'antagonistic or conflicting interests with the unnamed members of the class.'" *Winkler v. DTE, Inc.*, 205 F.R.D. 235, 242 (D. Ariz. 2001) (quoting *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). "[C]ourts have generally declined to consider conflicts, particularly as they regard damages, sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." *Id.* (internal citations and quotations omitted).

15

### b. The Class is Ascertainable

16

17

18

Here, the class is defined as:

All GCU students who paid tuition for the on-campus program during the spring 2020 term and whose tuition has not been refunded.

19

20

21

22

23

24

25

26

27

28

---

[6] *See, e.g., Felix, et al. v. Roosevelt Univ.*, No. 20-cv-4793 (N.D. Ill. Nov. 12, 2020); *Pfingsten, et al. v. Carnegie Mellon Univ.*, No. 20-cv-00716 (W.D. Pa. Aug. 26, 2020); *Ryan, et al. v. Temple Univ.*, No. 20-cv-02164 (E.D. Pa. Aug. 21, 2020); *Polley, et al v. Northwestern Univ.*, No. 1:20-cv-04798 (N.D. Ill. Nov. 2, 2020); *Kincheloe, et al v. Univ. of Chicago*, No. 1:20-cv-3015 (N.D. Ill. Feb. 1, 2021); *Vakilzadeh, et al. v. The Trustees of The California State University*, No. 20STCV23134 (Los Angeles Sup. Ct); *Levin, et al. v. The Board of Regents of the University of Colorado*, No. 2020CV31409 (Denver Dist. Ct. Feb. 3, 2021); and *Okolo v. Maryville University of St. Louis*, No. 20SL-CC02850 (21st Judicial Circuit Ct., St. Louis County, MO Feb. 9, 2021); *Waitt v. Kent State University*, No. 2020-00392JD (OH Ct. of Cl. Mar. 2, 2022); and *Duke v. Ohio University*, No. 2021-00036JD (OH Ct. of Cl. Mar. 9, 2022).

[7] *See, e.g., Qureshi v. American Univ.*, No.1:20-cv-01141-CRC (D.D.C. July 31, 2020); *Desai v. Carnegie Mellon Univ.*, No. 2:20-cv-00844-CB (W.D. Pa. Aug. 26, 2020); *Stellato v. Hofstra Univ.*, No. 2:20-cv-01999 (E.D.N.Y. Sept. 18, 2020); *Wright v. Southern New Hampshire Univ.*, No.  20-cv-609-LM (D.N.H. Apr. 26, 2021).

In *Little,* the court found that "GCU can readily ascertain the identity of class members from its records, which should show which students stayed on campus after the campus closure and the amount of fees that each student paid." *Little*, No. CV-20-00795-PHX-SMB, 2022 WL 266726, at *5. Here, also, the Class can be readily ascertained and identified from GCU's records, which show which students paid tuition for the on-campus program during the Spring 2020 term. *See* Exhibit 13; *see also Gustafson v. Goodman Mfg. Co. LP*, No. CV-13-08274-PCT-JAT, 2016 WL 1029333, at *6 (D. Ariz. Mar. 14, 2016) ("A class definition should be precise, objective, and presently ascertainable… so the Court can determine whom will be bound by the judgment.") (citations and quotation omitted). Accordingly, the Court can reach the same conclusion here, and as such, Rule 23(a)(4) is satisfied.

### c.  The Class Satisfies the Requirements of Rule 23(b)(3)

Under Rule 23(b)(3), a Class may be certified if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). For the reasons set forth below, Plaintiffs satisfy both the predominance and superiority requirements.

### i.  Common Issues Predominate.

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id*. at 453–454 (internal quotation marks and citation omitted).

Here, the common issues that exist in this case—whether Defendant unlawfully retained monies from Plaintiffs and the members of the Class and unjustly enriched itself after failing to provide them with in-person, on-campus instruction after March of 2020—

clearly predominate over any individual issues that may exist. Each Class member suffered the same harm for the same amount of time due to the same actions or inactions of Defendant. FAC at ¶¶ 9-10, 14-16, 29. Further, the arrangements between each of Defendant's students and Defendant—tuition in exchange for receiving in-person, on-campus instruction—are effectively identical. FAC at ¶¶ 9-10, 14-16, 29; *see* Exhibit 13. Furthermore, the amount of tuition for the campus program that the Class members paid is uniformly higher than the tuition for the online program. *Id.* at ¶ 29, 51.

Similarly, the nature of Defendant's switch to remote online-only education is the same for each member of the Class. FAC at ¶¶ 10-12. Defendant failed to provide any in-person, on-campus instruction, **and** Defendant elected to maintain the entire amount of fees despite its actions. *Id.*, at ¶¶ 10-13. Further, Defendant's excuse for its actions remains identical in that it relates to the COVID-19 pandemic. *Id.*, at ¶ 15; *see* https://www.gcu.edu/sites/default/files/2022-05/March%2012%2C%202020%20-%20Remainder%20of%20the%20Spring%20Semester%20to%20Transition%20to%20Online.pdf (last accessed Feb. 3, 2023) (announcing transition to remote education for the rest of the Spring Term).

The calculation of damages will also not overwhelm questions common to the Class in this case. Class-wide damages can be provided directly, based upon information in possession of Defendant, including the difference in the amount of the standardized tuition rates charged and received between the campus program and the online program. *See* FAC at ¶¶ 29, 51 (in-person, on-campus tuition is approximately $687.50 per credit while online tuition is approximately $440 per credit for GCU's Education and Science Programs, $395 per credit for its Theology Programs, $449 per credit for its IT Programs, and $470 per credit for other online degree programs); *see also* Exhibit 13. Therefore, damages may be calculated as the difference in the amount of the standardized tuition between the campus program and online program, and then pro-rating this amount by the percentage of the spring 2020 term that all in-person instruction was transitioned to online instruction.

Indeed, multiple courts in this district have ruled that unjust enrichment claims are suitable for class certification. *See Perez v. First Am. Title Ins. Co.*, No. CV-08-1184-PHX-DGC, 2009 WL 2486003, at *6 (D. Ariz. Aug. 12, 2009), *amended*, No. CV-08-1184-PHX-DGC, 2010 WL 1507012 (D. Ariz. Apr. 14, 2010) (certifying class pursuing unjust enrichment claim when the class members were subject to uniform conduct by the defendant); *Salt River Pima-Maricopa Indian Cmty. v. United States*, 266 F.R.D. 375, 376-378 (D. Ariz. 2010) (same).  In fact, multiple courts have also granted class certification of nearly identical unjust enrichment claims seeking partial refund of tuition as a result of the transition from in-person instruction to remote instruction during the Spring 2020 term.  In *Eddlemon v. Bradley University*, plaintiff alleged claims for breach of contract or unjust enrichment on behalf of himself and a class of students. No. 1:20-CV-01264, 2022 WL 3227865, at *1 (C.D. Ill. July 22, 2022). The court compared the facts before it to the Court's analysis in *Little* and found that:

> [a]s in *Little*, common questions predominate over individual questions. Here, ***[p]laintiff presents common questions as to whether [d]fendant*** breached its contract with its students or ***was unjustly enriched by retaining full Activity Fee payments despite only providing eight weeks of on on-campus activities in a 15-week semester***. This is a question common to the class that [p]laintiff seeks to certify. Additionally, based on [p]laintiff's proposed class definition, [p]laintiff estimates that there are approximately 4,622 students included in the Activity Fee Class. Owing to the common issues shared and the large class size, a class action will reduce litigation costs and promote greater efficiency. Therefore, this court finds that [p]laintiff has satisfied the predominance and superiority requirement of Rule 23(b)(3) for the Activity Fee Class.

*Id.*, at * 9 (emphasis added); *see also Ham v. Swift Transp. Co.*, 275 F.R.D. 475, 487 (W.D. Tenn. 2011) ("Plaintiffs explain that their unjust enrichment claim is based on the theory that, even if [the school] breached no express contractual term, [the school] students nonetheless conferred a monetary benefit on [the school] in conjunction with the training program, and a portion of the consideration provided by the students was applied to CDL testing. The Court agrees with Plaintiffs that this theory is equally applicable and common to

1   all members and that it would not require consideration of individualized facts to such an

2   extent as to militate against classwide adjudication of the claim. Additionally, as Plaintiffs

3   note, courts allow class certification of unjust enrichment claims where the basis of the claim

4   is the same for all class members."); *Arredondo v. Univ. of La Verne*, No.

5   220CV07665MCSRAO, 2022 WL 3222376, at *5 (C.D. Cal. Aug. 2, 2022) (concluding "that

6   it would be unjust for Defendant to retain the monetary benefits specific to in-person classes,"

7   and denying defendant's motion to decertify the court's prior grant of class certification of

8   the unjust enrichment claims regarding tuition refund); *Wright v. S. New Hampshire Univ.*,

9   565 F. Supp. 3d 193, 205 (D.N.H. 2021) (finding class claims for breach of contract, unjust

10   enrichment, and conversion were likely susceptible to class-wide proof); *Basso v. New York*

11   *Univ.*, 363 F. Supp. 3d 413, 424 (S.D.N.Y. 2019) (certifying class alleging claim for unjust

12   enrichment due to the retention of tuition without providing benefits to the students).[8] In

13   short, Plaintiffs will be able to present evidence at trial supporting class-wide proof of

14   damages and will retain an expert to make the necessary calculations.

15   ## ii.  A Class Action is Superior for Managing this Case

16   The superiority requirement requires the court to determine whether a class action is

17   superior to other methods of adjudication.  "The rule provides a non-exhaustive list of factors

18   relevant to the superiority inquiry: (A) the class members' interests in individually

19   controlling the prosecution or defense of separate actions; (B) the extent and nature of any

20   litigation concerning the controversy already begun by or against class members; (C) the

21   desirability or undesirability of concentrating the litigation of the claims in the particular

22   forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)."

23   *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 713 (9th Cir. 2010).  Superiority is

24   a flexible inquiry. In the present case, each factor weighs in favor of superiority. Plaintiffs

25

26   ---
    [8] *See also In re Suffolk Univ. Covid Refund Litig.*, No. CV 20-10985-WGY, 2022 WL
    2713732, at *2 (D. Mass. July 13, 2022) (denying defendant's motion for summary judgment
27   on the students' unjust enrichment claim for tuition); *Jones v. Administrators of Tulane Educ.*
    *Fund*, 51 F.4th 101, 118 (5th Cir. 2022) (reversing dismissal of students' unjust enrichment
28   claim for tuition).

1  and the other Class members, due to Defendant's misconduct, experienced almost identical

2  circumstances. FAC at ¶¶ 5-16, 28-29. Seeing that these cases involve a relatively small

3  amount of damages compared to the enormous investment of time and money that it will take

4  to litigate them, individual plaintiffs have little interest in and gain little benefit from

5  initiating separate actions. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S.

6  455, 478 (2013) ("The policy at the very core of the class action mechanism is to overcome

7  the problem that small recoveries do not provide the incentive for any individual to bring a

8  solo action prosecuting his or her rights.") (citations omitted).

9  Even if Class members could afford individual litigation, the Court system could not.

10  As noted herein, at least 20,000 persons may meet the definition of the Class as proposed.

11  *See Little*, at *7. Due to the large number of people meeting the Class definition,

12  individualized litigation creates a potential for inconsistent or contradictory judgments, and

13  increases the delay, and expense to all parties and the court system. By contrast, the class

14  action device presents far fewer management difficulties and provides the benefits of single

15  adjudication, an economy of scale, comprehensive supervision by a single court, and the

16  finality of the litigation.

17  Accordingly, a class action is a superior procedure for managing this case, and Rule

18  23(b)(3)'s superiority requirement is satisfied.

19  **V.   CONCLUSION**

20  For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant

21  their motion, certify the proposed Class, and appoint their choice of counsel as Class Counsel.

22

23  Dated: February 3, 2023                Respectfully submitted:

24                                                       **LYNCH CARPENTER, LLP**

25

26  By: ___*/s/ (Eddie) Jae K. Kim*_____
    (Eddie) Jae K. Kim

27  117 East Colorado Blvd, Suite 600
    Pasadena, CA 91105

28  Telephone: (619) 762-1900

1

2

Facsimile: (619) 756-6991
ekim@lcllp.com

3

**LYNCH CARPENTER, LLP**
Gary F. Lynch
Edward W. Ciolko
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
gary@lcllp.com
eciolko@lcllp.com

4

5

6

7

8

9

10

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (admitted *Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: jmarchese@bursor.com

11

12

13

14

15

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (admitted *Pro Hac Vice*)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com

16

17

18

19

20

**WARD, KEENAN & BARRETT, P.C.**
Gerald Barrett
3838 N. Central Avenue, Suite 1720
Phoenix, Arizona 85012
Telephone: (602) 279-1717
Facsimile: (602) 279-8908
E-mail: gbarrett@wardkeenanbarrett.com

21

22

23

24

25

**BENDAU & BENDAU PLLC**
Clifford P. Bendau, II (AZ No. 030204)
Christopher J. Bendau (AZ No. 032981)
P.O. Box 97066
Phoenix, Arizona 85060
Telephone AZ: (480) 382-5176

26

27

28

Fax: (480) 304-3805
Email: cliffordbendau@bendaulaw.com
chris@bendaulaw.com

*Attorneys for Plaintiffs*