# Exhibit A

**FILED**

**AUG 0 8 2023**

**JOAN M. GILMER**
**CIRCUIT CLERK, ST. LOUIS COUNTY**

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

RAPULUCHUKWU C. OKOLO, et al.,

      Plaintiff(s),

v.

MARYVILLE UNIVERSITY OF SAINT
LOUIS,

      Defendant(s).

Cause No.:    20SL-CC02850

Division:    6

## JUDGMENT AND ORDER

Before the Court is "PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND SUGGESTIONS IN SUPPORT." Upon due consideration of the same, including the briefing of the Parties and the arguments of counsel, the Motion is hereby GRANTED. Accordingly, the Class is certified as follows:

A.  The Class is defined as follows, "All undergraduate students who paid tuition and/or Mandatory Fees, or on whose behalf such payments were made, and were enrolled in one (1) or more of Defendant's on-campus courses during the Spring 2020 semester and whose tuition and/or One Fee were not refunded (the "Class");"

B.  Plaintiff Samuel Dean is appointed as class representative;

C.  Plaintiffs' counsel Lynch Carpenter, LLP, Leeds Brown Law, P.C., and the Sultzer Law Group, P.C. shall serve as Class Counsel with Tiffany Yiatras of Consumer Protection Legal, LLC, serving as local counsel and liaison with the Court; and

D.  Within thirty (30) days of this Order, the Parties shall confer and submit to the Court a proposed notice process, including a proposed public order, a proposed notice of pendency, and a schedule to complete the remaining discovery.

SO ORDERED.

_____
JUDGE JOHN N. BORBONUS

August 8, 2023

**IN THE TWENTY FIRST JUDICIAL CIRCUIT**
**ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| RAPULUCHUKWU C. OKOLO AND SAMUEL DEAN, on behalf of themselves and all others similarly situated, | Case No. 20SL-CC02850 |
| Plaintiffs, | |
| vs. | |
| MARYVILLE UNIVERSITY OF SAINT LOUIS, | |
| Defendant. | |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND SUGGESTIONS IN SUPPORT

Plaintiffs Rapuluchukwu C. Okolo and Samuel Dean ("Plaintiffs"), pursuant to Rule 52.08 of the Missouri Rules of Civil Procedure, hereby move this Court for an order: (1) certifying the classes; (2) appointing Plaintiffs as Class Representatives; (3) appointing Plaintiffs' counsel Lynch Carpenter, LLP, Leeds Brown Law, P.C., and the Sultzer Law Group, P.C. as Class Counsel with Tiffany Yiatras of Consumer Protection Legal, LLC, serving as local counsel and liaison with the Court[1]; and (4) require the parties to confer on a notice process to be submitted to the Court within twenty-one (21) days including a proposed public order, a proposed notice of pendency, and a schedule to complete the remaining discovery. Plaintiffs seek certification of the following Classes:

> All graduate students who paid tuition and/or Mandatory Fees and were enrolled in Defendant's on-campus program during the Spring 2020 semester and whose tuition and/or One Fee were not refunded (the "Graduate Class").

> All undergraduate students who paid tuition and/or Mandatory Fees and were enrolled in Defendant's on-campus program during the Spring 2020 semester and whose tuition and/or One Fee were not refunded (the "Undergraduate Class").

---

[1] If the appointment of a Chair is necessary, Plaintiffs request that the Court continue its appointment of Lynch Carpenter, LLP, pursuant to the Court's prior order, with Mr. (Eddie) Jae K. Kim serving as Chair. *See* Order Consolidating Actions (filed Feb. 9, 2021).

As set forth in greater detail below, the Court should grant Plaintiffs' motion and certify the proposed Classes because every member suffered the same harm when Defendant Maryville University of Saint Louis ("Defendant" or "Maryville") was unjustly enriched by retaining the pre-paid tuition and/or Mandatory Fee payments from the proposed Classes. The uniformity of Defendant's conduct renders this case well-suited for class adjudication. In support of this motion, Plaintiffs incorporate the memorandum in support set forth below as if fully stated herein, the Declaration of (Eddie) Jae K. Kim ("Kim Decl.") and all attached exhibits filed in support thereof, and any other pleadings and records on file and/or evidence presented at the time of the hearing.

## SUGGESTIONS IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION

This memorandum of points and authorities is submitted in support of Plaintiffs' Motion for Class Certification.

## I.    INTRODUCTION

This case, and those like it, addresses the question of who should bear the financial burden of the fundamental switch in modality of instruction and services as a result of the COVID-19 pandemic. Defendant seems to believe it can actively market its rich campus life, promise its students a variety of services and amenities, advertise its campus degree programs, charge more for its on-campus program than online-only programs, and showcase and tout the facilities to which enrolled students traditionally have access, but then fail to provide its students with access to campus or in-person educational services for a material portion of the semester and stick students with the full cost. The students who constitute the proposed Classes disagree.

However, regardless of which side is correct on the merits, the questions for class certification in this case address central issues that do not vary by student: can Defendant charge students for in-person, on-campus educational services that it did not provide? And if not, how

much should Defendant refund to its students?

## II.     FACTUAL BACKGROUND

Defendant is a private campus-based university with its principal campus located in Saint Louis, Missouri that has attracted thousands of students from across the country. Am. Class Action Pet. ("FAC"), at ¶ 26 (filed March 8, 2021); Ex.[2] 1 (over 3,600 students enrolled during the Spring 2020 semester across the undergraduate and graduate, on-campus programs). Defendant has been providing traditional on-campus instruction since 1870, and only added online programs recently sometime during the past 5-20 years. *See* Ex. 2, at 45:15-48:13; Ex. 3 (MU0023736-56). Accordingly, traditional students have always expected to receive in-person instruction and access to on-campus facilities, services and activities, as has been provided to traditional students over the prior 150 years. *Id.* Maryville's marketing, website, application and enrollment materials consistently, uniformly and relentlessly confirms this fact. *See e.g.,* Ex. 4 at 83:25-84:5, 84:17-23 (Defendant marketed its campus and campus facilities); Ex. 5 at 27:4-28:18 (Defendant's marketing message includes campus life, on-campus student activities, access to labs, and the surrounding community); *Id.*, at 29:23-30:5 (a campus visit "gives [students] more of a perspective of what it would maybe possibly be like as a student at Maryville"); Ex. 6 ("Whether you want to develop leadership acumen, explore academic interests, or simply get together with new friends and have a great time, life at Maryville delivers."); *Id.* ("80+ student organizations" and "1,000+ campus events"); Ex.7 ("Who or what influenced you to apply to Maryville? Campus Visit"); Ex. 8 (OKOLO_0081-82) (separate applications for online programs and on-campus programs); Ex. 9 (OKOLO_0083) (website allowing students to search for courses and filter by format, i.e.,

---

[2] Referenced exhibits are attached to the Kim Decl. in support of Plaintiffs' Motion for Class Certification, unless otherwise indicated.

on-campus or online).

Each member of the Classes, including Plaintiffs, paid the full cost of tuition and/or mandatory fees for in-person education and access to on-campus facilities and services for the Spring 2020 semester after enrolling in an on-campus program. FAC, at ¶¶ 15-21, 29; Ex. 10; Ex. 11. Plaintiffs and the Class made these tuition and fee payments in advance of and in exchange for in-person and on-campus education, as detailed in Defendant's official policy documents, its marketing, advertisements, and other public representations. Defendant's recruitment manager, Mr. Antonio Quiles-Matias, testified that Defendant advertised its campus in automated communications with potential students. Ex. 4 at 27:8-23 (Defendant sent automated communications to potential students); Ex. 12 ("Use Salesforce CMR and mobile devices to manage, track, analyze and communicate with prospective students."). These communications are tracked and accumulated in reports by Defendant using Salesforce CRM, which includes information about each student. Ex. 4 at 29:19-30:23

Further, Defendant encouraged students to consider a Maryville degree as an investment in themselves and their personal development. Ex. 13 (Reason No. 4 to apply to Maryville: "Investment[:] The value of a Maryville degree ranks in the top 10% of major universities nationwide."); Ex. 5 ("At Maryville, you'll find a place that will challenge you academically and socially—a place that will help to expand your worldview and consider a variety of perspectives, and a place that will transform and push you so that you enter the next phase of your life prepared and confident."); Ex. 15 ("Find your field of study among 75+ programs, designed to give you the knowledge, tools, and experience to live successfully.").

For the Spring 2020 semester, Defendant charged Plaintiffs and members of the Classes approximately $781 per credit hour for undergraduate students and approximately $797 per credit

hour for graduate students for the traditional on-campus programs.[3] Ex. 15. Plaintiffs and members

of the Class were also assessed a mandatory "One Fee," which is a:

> comprehensive fee that may cover the following student services and resources,
> dependent upon a student's program of enrollment and instructional delivery
> method: orientation; clinical processing; student activities; fitness facilities; health
> and wellness center; library; technology; transcripts; course fees, lab fees, and
> graduation.

*Id.* Undergraduate, full-time students were assessed the One Fee in the amount of $1,200 per

semester, and graduate, full-time students were assessed the One Fee in the amount of $1,200 per

semester. *Id.* While Defendant markets its online program as "similar in the quality of education,

the quality of instruction; and the ultimate degree attainment of each program is similar", as the

traditional on-campus programs (Ex. 5 at 49:6-50:6), Defendant actually charged a different tuition

and One Fee rate for online-only programs. Defendant charged $500 per credit hour of tuition for

undergraduate students enrolled in an online program as well as the One Fee at a rate of $350 per

semester for undergraduate online program students and $650 per semester for graduate online

program students. *Id.*; Ex. 16. These facts demonstrate that Defendant has historically offered its

campus program students access to in-person, on-campus instruction for students pursuing

personal development in a traditional on-campus program and has charged a higher cost for that

benefit (of being in person/on campus.)

The Spring 2020 semester commenced on January 13, 2020, and was set to conclude on

May 1, 2020. Ex. 17. However, on March 10, 2020, Defendant announced that it would transition

---

[3] Full-time tuition for undergraduate students during the Spring 2020 semester was $13,035 per
semester. Ex. 15. Graduate students had varying tuition rates depending on the program. *Id.* For
example, students were charged $714 per credit hour in the MBA, MHA, and MA.COMM
programs. *Id.* Students were charged $813 per credit hour in the graduate nursing program and the
MAED program students charged $449 per credit hour. *Id.* As a final example, students in the
MOT and MS.SPLP programs paid $13,035 per semester if they were full-time. *Id.*

to an online-only format for its on-campus program, due to the ongoing COVID-19 pandemic, effective March 16, 2020. Ex. 18; Ex. 19. Defendant also limited access to its campus. Ex. 19. Despite not delivering the benefit of in-person education and a campus learning environment, Defendant refused to issue any *pro rata* reimbursement for the Spring 2020 semester's tuition or the One Fee. FAC, at ¶ 2. However, in recognition of the changed educational format, Defendant lowered its tuition by 5% for the Fall 2020 semester. Ex. 20.

Plaintiffs allege that by pocketing the students' money without providing the benefit of in-person, on-campus education, Defendant received a windfall of millions of dollars. *See* Ex.[4] 1; Ex. 15; Ex. 16. Defendant did not provide in-person, on-campus education for approximately 50% of the Spring 2020 semester. *See* Ex. 17; Ex. 18; Ex. 19. While Defendant received a windfall, without justification of said windfall, Defendant has denied Plaintiffs and the Classes the benefits it promoted to encourage students to choose (and for Maryville to charge more for) an in-person, on-campus education. *See* Ex. 18; Ex. 19. Thus, Plaintiffs and the Classes brought claims for unjust enrichment and violation of the Missouri Merchandising Practices Act ("MMPA"). FAC, at ¶¶ 108-130.

Moreover, these uniform facts are applicable to all members of the Classes and support certification of the proposed Classes.

## III.   LEGAL STANDARD

Whether a class should be certified is "based primarily upon the allegations in the petition." *Elsea v. U.S. Eng'g Co*., 463 S.W.3d 409, 417 (Mo. App. 2015). Moreover, in a "class certification determination, the court assumes the named plaintiffs' allegations are true." *Hale v. Wal-Mart*

---

[4] Referenced exhibits are attached to the Kim Decl. in support of Plaintiffs' Motion for Class Certification.

*Stores, Inc*., 231 S.W.3d 215, 224 (Mo. App. 2007). A class is properly certified if the evidence in the record, taken as true, satisfies each requirement to certify a class under Rule 52.08. *Id*. While the instant case is a quintessential case to be certified as a class action, "courts should err in close cases in favor of certification because the class can be modified as the case progresses." *Meyer ex rel. Coplin v. Fluor Corp*., 220 S.W.3d 712, 715 (Mo. banc 2007).

A class is properly certified when it meets the requirements of Rule 52.08(a) and the requirements of Rule 52.08(b)(1), (2) or (3). Rule 52.08(a) requires that the class be sufficiently numerous (numerosity), that questions of law or fact are common to the class (commonality), that the claims or defenses of the class representatives are typical of the claims or defenses of the class (typicality), and the class representatives will adequately represent the interest of the class (adequacy). Mo. S. CT. R. 52.08(a)(1)-(4). Further, "[t]he requirements for an MMPA class action are prescribed in section 407.025 and are essentially identical to the requirements under Rule 52.08" *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 81 (Mo. Ct. App. 2011).[5]

Here, Plaintiffs seek to certify a Rule 52.08(b)(3) class. Rule 52.08(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" (predominance) and that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy" (superiority). Mo. S. CT. R. 52.08(b)(3). Plaintiffs satisfy all of the requirements of Rules 52.08(a) and 52.08(b)(3).

---

[5] "An action may be maintained as a class action […] if: (1) The class is so numerous that joinder of all members is impracticable; (2) There are questions of law or fact common to the class; (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) The representative parties will fairly and adequately protect the interests of the class; and, in addition […] (7) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Mo. Ann. Stat. § 407.025 (West)

This case should therefore be certified as a class action.

## IV.    THE PROPOSED CLASSES MEET THE REQUIREMENTS FOR CERTIFICATION UNDER RULE 52.08(a)

### A.  Numerosity is Satisfied

Rule 52.08(a)(1) of the Missouri Rules of Civil Procedure requires that the class be "so numerous that joinder of all members is impracticable." Mo. Sup. Ct. R. 52.08. A court may accept "common sense assumptions" about the number of members in the proposed class. *Dale v. DaimlerChrysler Corp*, 204 S.W.3d 151, 167 (Mo. Ct. App. 2006) (internal citations omitted). Classes of approximately 80 people are sufficient to satisfy the numerosity requirement. *See Frank v. Enviro-Tech Servs.*, 577 S.W.3d 163, 168 (Mo. Ct. App. 2019). Here, over 3,600 students were enrolled in Defendant's on-campus undergraduate and graduate programs during the Spring 2020 semester. Ex. 1. Accordingly, there can be no dispute that numerosity is readily satisfied.

### B.  There are Common Questions of Law or Fact

Rule 52.08(a)(2) requires that there be "questions of law or fact common to the class." Mo. Sup. Ct. R. 52.08(a)(2). The rule "does not require that all issues in the litigation be common, only that common questions exist." *Elsea*, 463 S.W.3d at 419. Commonality exists if "a single common issue [overrides] the litigation, despite the fact that the suit also entails numerous remaining individual issues." *Id*., quoting *Meyer*, 220 S.W.3d at 716 (emphasis omitted). In other words, what matters most in class certification "is not the raising of common questions, but the ability of a classwide proceeding to generate common answers apt to drive resolution of the litigation." *Id*. (internal quotation and citations omitted).

Here, there are common questions of law and fact that may be generate common answers for the members of the Classes. The FAC alleges common legal or factual questions, which include but are not limited to:

8

- whether Defendant accepted money in the form of pre-paid tuition and One Fee payments from Plaintiffs and the Classes in exchange for the benefit of an in-person and on-campus, live educational services, as well as access to certain on-campus facilities, services, and activities throughout the Spring 2020 semester; *See* FAC, at ¶ 76.

- whether Defendant is liable for unjust enrichment; *See* FAC, at ¶ 76.

- whether Defendant's decision to not give a *pro rata* refund to Plaintiffs and the Class who purchased in-person education and access to campus facilities, services, and activities from the University and did not receive these benefits during part of the Spring 2020 Semester was in violation of the Missouri Merchandising Practices Act, 407.010, *et seq.*; and

- the amount of damages and other relief to be awarded to Plaintiffs and the Class. *See* FAC, at ¶ 76.

Given that the common questions of law and fact are able to "generate common answers," the commonality requirement is satisfied. *See Elsea*, 463 S.W.3d at 419.

**C.  Plaintiffs' Claims are Typical of the Classes**

Rule 52.08(a)(3) of Missouri Rules of Civil Procedure requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Mo. Sup. Ct. R. 52.08(a)(3). This means: "1) the representative's and the class members' claims arise from the same event or course of conduct by the defendant, 2) the conduct and facts give rise to same legal theory, and 3) the underlying facts are not markedly different." *Plubell v. Merck & Co.*, 289 S.W.3d 707, 715 (Mo. App. 2009) (internal citations omitted).

Here, all three elements of typicality are easily satisfied. Plaintiffs and the other members

of the Classes paid the cost of in-person, on-campus tuition to Defendant for the benefit of receiving their education in-person and on-campus, instead of the lower tuition rate of Defendant's online programs. FAC, at ¶¶ 15-25, 29; Ex. 10; Ex. 11; Ex. 21 at 60:11-61:2.  Plaintiff Okolo was enrolled as a graduate student, and Plaintiff Dean was enrolled as an undergraduate student. Ex. 21 at 70:24-71:8; *see* Ex. 22 at 107:13-16. Defendant marketed its campus facilities, services, and learning environment as a benefit to any student who enrolled in an on-campus program. *See e.g.,* Ex. 4 at 83:25-84:5, 84:17-23 (Defendant marketed its campus and campus facilities); Ex. 5 at 27:4-28:18 (Defendant's marketing message includes campus life, on-campus student activities, access to labs, and the surrounding community); *Id.*, at 29:23-30:5 (a campus visit "gives [students] more of a perspective of what it would maybe possibly be like as a student at Maryville"); Ex. 6 ("Whether you want to develop leadership acumen, explore academic interests, or simply get together with new friends and have a great time, life at Maryville delivers."); *Id.* ("80+ student organizations" and "1,000+ campus events"); Ex. 7 ("Who or what influenced you to apply to Maryville? Campus Visit"); Ex. 8 (separate applications for online programs and on-campus programs); Ex. 9 (website allowing students to search for courses and filter by format, i.e., on-campus or online); Ex. 21 at 60:11-62:12 (Plaintiff Okolo describing advertised benefits of Maryville's campus including, "all the events, the majority, if not all, every single event, was no cost."); *Id.*, at 35:15-25 (Plaintiff Okolo describing the advertising materials she received including, a "pamphlet into what the campus community had to offer."); *Id.*, at 41:25-42:7 (Plaintiff Okolo describing Maryville's YouTube videos as advertising a "very intimate campus.").

Plaintiffs (i) enrolled as on-campus students at Maryville, (ii) registered for in-person, on-campus classes, and (iii) paid their tuition for on-campus, in-person instruction. FAC, at ¶¶ 15-25, 44, 88; Ex. 21 at 60:11-61:2, 74:19-; Ex. 22 at 86:11-20. However, Defendant stopped providing

in-person, on-campus instruction and educational services to Plaintiffs and members of the Classes in March of 2020. FAC, at ¶¶ 48-55; Ex. 18; Ex. 19. Plaintiffs and other Class Members were denied the on-campus, in-person educational services that Defendant promised to provide after it closed its campus and switched to fully remote online learning. FAC, at ¶¶ 48-55; Ex. 21 at 190:5-191:1 ("Due to the disruption in courses, that was -- that benefit was then removed, which forced me to take a part of classes and courses and everything that I would be doing in an in-person environment online"); Ex. 22 at 12:17-13:1.

Additionally, other Maryville students tell a similar story via the hundreds of signatures on the petition at Change.org requesting a partial tuition refund. Ex. 23. Moreover, Defendant committed its unlawful acts and representations (or absence thereof) generally concerning each member of the Classes. Thus, Plaintiffs' claims are uniformly typical of the Classes' claims.

### D.  Plaintiffs' and Their Counsel are Adequate Representatives

Rule 52.08(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." Mo. Sup. Ct. R. 52.08(a)(4). Under Missouri law, adequacy of a class representative depends upon non-antagonistic interests between the absent class members and the class representative. *Elsea v. U.S. Eng'g Co.*, 463 S.W.3d 409, 421 (Mo. Ct. App. 2015); *Lucas Subway MidMo, Inc. v. Mandatory Poster Agency, Inc.*, 524 S.W.3d 116, 130 (Mo. Ct. App. 2017). Class counsel must also be qualified and competent enough to handle the class litigation. *Id.*

Here, Plaintiffs clearly understand their responsibility as class representatives as they both sat for their depositions, which lasted the better part of the allotted seven (7) hours, frequently consult with counsel, and responded to numerous discovery requests. *See*, *generally,* Ex. 21 (Plaintiff Okolo testifying about her discovery responses and role in case during her deposition); Ex. 22 (Plaintiff Dean testifying about his discovery responses and role in case during his

deposition). Throughout their depositions, as set forth above, Plaintiffs testified to the typicality of their claims to the Classes', which demonstrates that Plaintiffs do not have interests adverse to the Classes. *See*, *supra*, Section IV.C. Indeed, Plaintiffs seek the same prorated refund as the members of the Classes after remaining in good standing during the Spring 2020 semester, paying all tuition and the One Fee, and not receiving the benefit of an in-person education as well as access to on-campus facilities and services. Further, Plaintiffs' counsel is experienced class counsel who have, and will continue to, vigorously litigate this action on behalf of the Classes and Plaintiffs. *See* Kim Decl., at ¶¶ 2-10; Ex. 24; Ex. 25; Decl. Michael A. Tompkins, at ¶¶ 3-8, Ex. 1; Decl. Jason P. Sultzer, at ¶¶ 4-10, Ex. A. Therefore, class counsel and Plaintiffs are adequate representatives, and this requirement is satisfied.

## V.     THE PROPOSED CLASSES MEET THE REQUIREMENTS FOR CERTIFICATION UNDER RULE 52.08(b)(3)

In addition to satisfying the requirements of Rule 52.08(a), a class must also satisfy one of the requirements of Rule 52.08(b). Mo. Sup. Ct. R. 52.08(b). Plaintiffs are seeking certification under Rule 52.08(b)(3), which requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Mo. Sup. Ct. R. 52.08(b)(3). The Classes satisfy the requirements of Rule 52.08(b)(3).

### A.  Predominance is Satisfied

The predominance inquiry simply requires the court to determine whether the class seeks "to remedy a common legal grievance." *Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577, 580 (Mo. App. 2010) quoting *Dale*, 204 S.W.3d at 175. Predominance does not require that all questions of law or fact be common to the class, but that "common issues substantially

predominate over individual ones." *Id.*, at 581. To determine whether a question is common or individual, the court looks at the "nature of the evidence required to show the allegations of the petition." *Id.* A question is common, and therefore predominates, if the "same evidence" is necessary to answer the pertinent question of law or fact for each class member. *Id.*

"To establish the elements of an unjust enrichment claim, the plaintiff must prove that (1) he conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010); *see Autumn Lakes Ass'n v. Tran,* 655 S.W.3d 442, 449 (Mo. Ct. App. 2022).

To establish the elements of a claim for violation of the MMPA, a plaintiff must prove the following: "1) a use or employment of a deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or concealment, suppression, or omission of a material fact; (2) the unlawful act must occur in connection with the sale or advertisement of merchandise in trade or commerce; (3) the unlawful act must result in an ascertainable loss of money or real or personal property; and (4) the loss must occur to a person who purchases or leases merchandise primarily for personal, family, or household purposes." *Heckadon v. Universal Underwriters Ins. Co.*, 586 S.W.3d 789, 803 (Mo. Ct. App. 2019); *see Chochorowski v. Home Depot U.S.A., Inc.*, 295 S.W.3d 194, 197 (Mo. Ct. App. 2009). The MMPA does not require a prima facie showing of reliance. *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, No. 16-02709-MD-W-GAF, 2019 WL 1418292, at *25, n. 15 (W.D. Mo. Mar. 21, 2019).

Here, members of the Classes will present the same evidence to prove both claims, which supports the predominance of common questions over individual issues. This common evidence will answer the predominating, common issue among the Classes: whether Defendant unfairly,

unjustly, unethically, or otherwise unlawfully (a) failed to refund a *pro rata* share of the tuition and mandatory fees paid to the University to receive on-campus services, activities, and facilities and/or (b) retained the benefit of monies the Classes paid in tuition and the One Fee for in-person education and access to on-campus services, activities, and facilities when the classes transitioned to online educational services and students were restricted from accessing the on-campus services, activities, and facilities after March 16, 2020. This question clearly predominates over any individual issues that may exist. The common evidence that the Classes will present includes the same standardized documents and representations by Defendant throughout the application, enrollment, registration, payment processes and course of conduct. *See* Ex. 4 at 83:25-84:5, 84:17-23 (Defendant advertised its campus learning environment, on-campus services, on-campus activities, and facilities); *Id.*, at 27:8-23 (Defendant sent automated communications to potential students); *Id.*, at 58:1-9 (Defendant used separate application for online and on-campus programs over multiple years); Ex. 5 at 27:4-28:18; *Id.*, at 29:23-30:5; Ex. 6; Ex. 7; Ex. 8; Ex. 9; Ex. 21 at 60:11-62:12; *Id.*, at 35:15-25; *Id.*, at 41:25-42:7; Ex. 22 at 32:21-33:2. Defendant has records demonstrating that members of the Class received the same communications and uniform advertisements. Ex. 4 at 27:8-23 (Defendant sent automated communications to potential students); Ex. 12 ("Use Salesforce CMR and mobile devices to manage, track, analyze and communicate with prospective students.").

The same evidence will show that higher education degrees are pursued for personal fulfillment. *See* Ex. 13 (Reason No. 4 to apply to Maryville: "Investment[:] The value of a Maryville degree ranks in the top 10% of major universities nationwide."); Ex. 6 ("At Maryville, you'll find a place that will challenge you academically and socially—a place that will help to expand your worldview and consider a variety of perspectives, and a place that will transform and

14

push you so that you enter the next phase of your life prepared and confident."); Ex. 14 ("Find your field of study among 75+ programs, designed to give you the knowledge, tools, and experience to live successfully."); *see also* JAISON R. ABEL & RICHARD DIETZ, FEDERAL RESERVE BANK OF NEW YORK, AGGLOMERATION AND JOB MATCHING AMONG COLLEGE GRADUATES, 8 (Rev. Dec. 2012) ("We find that about 27 percent of undergraduate degree holders are working in a job that is directly related to their college major.").

Similarly, the Classes will present the same evidence concerning the closure of Defendant's campus and its transition to online-only instruction. Ex. 18; Ex. 19. Further, the Classes will present the same evidence concerning Defendant's unjust and unfair retention of the on-campus tuition and One Fee. *See* Ex. 15; Ex. 16. Any defense that Defendant may raise is common to all members of the Classes. *See Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 85 (Mo. Ct. App. 2011) (affirming certification of class alleging violation of MMPA); *Dale*, 204 S.W.3d at 181 (affirming certification of MMPA class after finding "nothing subjective about the two criteria of the class definitions attacked by the appellant […] They are straightforward and necessary in delineating the members of the defined classes."); *Plubell*, 289 S.W.3d at 714 (affirming certification of class alleging violation of MMPA); *Hale*, 231 S.W.3d at 226 (affirming certification of unjust enrichment class after reviewing certification of the same claim in other jurisdictions). Even if there were some minor differences in the advertisements that Plaintiffs and the members of the Classes received, Plaintiffs have set forth sufficient evidence to demonstrate that Defendant's marketing materials were substantially similar, if not identical. *See e.g.*, Ex. 13; Ex. 6; Ex. 26; Ex. 27; Ex. 28 (collecting Defendant's pamphlet labeled "Benefits of Applying" for 2016 through 2020). This uniformity supports certifying the Classes. *See In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.* ("*Dollar Gen.*"), No. 16-02709-MD-W-GAF, 2019 WL 1418292, at

*26 (W.D. Mo. Mar. 21, 2019) ("Because Plaintiffs have presented evidence that the alleged misrepresentations could be accepted as nearly uniform, individualized reliance inquiries are not necessary to establish class members' state consumer protection claims. As such, common issues of fact and law predominate over individual issues regarding consumer protection laws that have a reliance requirement."); *Id.,* at *25 n.15 (the MMPA does not even require a prima facie showing of individual reliance); *Id.*, at * 20 ("However, the evidence cited by Plaintiffs, if found to be persuasive, could be viewed as substantially similar, if not uniform, throughout the class period. This evidence, if accepted as showing uniform conduct by Defendants, could be used to show that the retention of the benefit was unjust and would serve as common evidence for all class members.").

Predominance is further satisfied here because Plaintiffs seek the same damages for themselves and the Classes – namely, a prorated amount of on-campus tuition and One Fee that the students enrolled in Defendant's on-campus program paid for the portion of the Spring 2020 semester that was delivered in an online-only format. *See Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1151 (W.D. Mo. 2020) (need a methodology based on the evidence available that demonstrates the common question has common answers); *Baker v. City of Florissant*, No. 4:16-CV-1693 NAB, 2023 WL 1434261, at *13 (E.D. Mo. Feb. 1, 2023) ("Plaintiffs' methodology for calculating damages can be applied to all class members, and the individual assessments of damages for each class member do not erode Rule 23(b)(3)'s predominance factor.").[6] Here, Plaintiffs have detailed their methodology for calculating damages based on several key data points: (1) the prorated period, *i.e.*, the period of the Spring 2020 semester in which COVID-19

---

[6] "Because Missouri Rule 52.08 and Fed. R. Civ. P. 23 are identical, we may consider federal interpretations of Rule 23 in interpreting Rule 52.08." *Craft v. Philip Morris Companies, Inc.*, 190 S.W.3d 368, 376 (Mo. Ct. App. 2005).

affected the services, (2) the cost of market alternatives and the difference between the alternatives and the tuition and/or One Fee that Plaintiffs and the Classes paid (for example, without limitation, comparing the cost of an online-only alternative provided by Defendant to the price students paid in the Spring 2020 semester, as discussed below), and (3) the nature of the structure and composition of tuition and the One Fee. Like the plaintiffs in *Dollar Gen.*, whose proposed refund or benefit-of-the-bargain damages methodology was in line with their theory that that consumers purchased motor oil with the expectation that it would be comparable to other brands of motor oil but received something else, Plaintiffs have proposed a damages methodology to calculate the benefit of in-person educational services and on-campus facilities and services that they and the members of the Classes did not receive despite paying the higher tuition and One Fee rates of the traditional on-campus program. *See* 2019 WL 1418292, at *20 ("this proposed model can be used to measure damages on a class-wide basis and Plaintiffs are not required to show that each class member will ultimately be entitled to these damages. Additionally, a benefit-of-the bargain model is in line with Plaintiffs' theory that consumers purchased the at-issue motor oil with the expectation that it would be comparable to name-brand oils but received an obsolete motor oil.") (internal citation omitted). Thus, here, a mathematical equation can easily be established, as part of merit and potentially expert discovery per the Court's scheduling order.

However, for class certification purposes, the following would be salient aspects to the calculation: Defendant's Spring 2020 semester began on January 13, 2020, and was scheduled to end on May 1, 2020, for a semester length of 109 days. *See* Ex. 17. However, on March 16, 2020, Defendant closed its campus and transitioned to remote education, which means that students lost in-person education and access to on-campus services, facilities, and activities for 47 days or 43% of the Spring 2020 semester. Ex. 18; Ex. 19; Ex. 17. At this stage, Plaintiffs' measure of damages

as to their tuition and One Fees can be approximated by comparing the tuition and One Fees that Plaintiffs and the Classes paid with the lower tuition and One Fees assessed to students in Defendant's online program. Defendant markets its online program as "similar in the quality of education, the quality of instruction; and the ultimate degree attainment of each program is similar", and therefore, Defendant deems its online programs to be apples-to-apples comparable to its traditional on-campus programs. Ex. 5 at 49:6-50:6. Yet, Defendant itself values its online-only education as worth approximately 40% less than its in-person, undergraduate education, as it costs less to not have to provide in-person instruction and access to the campus facilities, services and activities. *See* Ex. 15; Ex. 16. Likewise, Defendant itself values its One Fee as 70.8% less of the value than the in-person, undergraduate One Fee and 45.8% less than the in-person, graduate One Fee. *See* Ex. 15.

Additionally, other methodologies for calculating damages may be viable under Missouri quasi-contract law including restitution that would account for the financial benefits Maryville accrued because it retained its students' monies including investment income, cost-savings, reduced overhead, increased government aid, and other financial considerations – all of which will raise and fall on a class-wide level, not an individual student level. *See State ex rel. Am. Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 488 (Mo. 2003) ("The need for inquiry as to individual damages does not preclude a finding of predominance.") (citations omitted); *Craft v. Philip Morris Cos.*, 190 S.W.3d 368, 387 (Mo. Ct. App. 2005) ("The fact that there may be follow-up "mini trials" or similar procedures to address damages does not by itself make a class unmanageable.")

Finally, Plaintiffs' proposed methodology for calculating damages aligns with the standards for predominance under Missouri law and presents an objective and quantifiable methodology such that class-wide answers predominate over any individual ones for the Classes'

18

unjust enrichment and MMPA claims. This question clearly predominates over any individual issue that may exist. Other courts have also found that similar questions predominate and warrant class certification. *See e.g.*, *Wright v. S. New Hampshire Univ.*, 565 F. Supp. 3d 193, 205 (D.N.H. 2021) (finding class claims for unjust enrichment, and conversion were likely susceptible to class-wide proof); *Basso v. New York Univ.*, 363 F. Supp. 3d 413, 424 (S.D.N.Y. 2019) (certifying class alleging claim for unjust enrichment due to the retention of tuition without providing benefits to the students).[7]

Therefore, predominance is satisfied.

**B.  Class Adjudication is Superior to Individualized Actions**

In determining whether a class action is a superior method of adjudicating this dispute, the court considers the following factors when analyzing the superiority element:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
> (D) the difficulties likely to be encountered in the management of a class action.

Mo. S. CT. R. 52.08(b)(3)(A)-(D); *see generally Karen S. Little, L.L.C.*, 306 S.W.3d at 583. The ultimate question, however, is whether a class action is more efficient than other methods of adjudication. *Dale*, 204 S.W.3d at 182.

Here, each of the Rule 52.08(b)(3) factors establish that a class action is the most efficient mechanism of adjudicating this dispute. The over 3,600 individual students who may be members of the Classes do not have an interest in controlling the prosecution of separate actions because their potential recovery would be vastly outweighed by the costs of individual litigation. To that

---

[7] If necessary, Plaintiffs may utilize a damages expert to execute any computations setting forth Plaintiffs and the Classes' damages after the completion of all fact discovery.

end, Plaintiffs are unaware of any other litigation commenced by a member of one of the Classes. Further, it is desirable to concentrate the litigation of the claims in this forum because Defendant and its campus are based in this County. FAC, at ¶ 26; Answer, at ¶ 26 (filed Nov. 5, 2021). Finally, there are unlikely to be any difficulties encountered in the management of the class action because the Classes' claims are straightforward. Additionally, Mo. Rev. Stat. § 516.120 (2) provides a five-year period within which "[a]n action upon a liability created by a statute other than a penalty or forfeiture" may be brought. As such, if the Court were to deny certification of the classes, over 3,600 individuals could file individual suits through Spring of 2025 in an attempt to obtain a *pro rata* refund being sought in this litigation and rely on the Missouri Merchandising Practices Act to do so, which would enable such students to retain Counsel and seek attorneys' fees and expenses under the Act.

## VI.    CONCLUSION

The Classes meet all requirements of Rule 52.08 to be certified. The Classes meet the test for numerosity, commonality, and typicality. Plaintiffs are adequate class representatives and have hired attorneys who have significant experience and will vigorously litigate the action on behalf of members of the Classes. Further, in this case, virtually all evidence and claims are the same for all class members. Questions of law and fact predominate over individual questions. Finally, a class action is superior for the claims raised as opposed to over 3,600 individual actions involving the same discovery and evidence. The Classes must be certified, and Plaintiffs request the Court require the parties to confer on a notice process to be submitted to the Court within twenty-one (21) days including a proposed public order, a proposed notice of pendency, and a schedule to complete the remaining discovery.

Dated: <u>April 24, 2023</u>     By: <u>/s/     Tiffany M. Yiatras</u>

Tiffany M. Yiatras (MO Bar No. 58197)
**CONSUMER PROTECTION LEGAL, LLC**
308 Hutchinson Road
Ellisville, Missouri 63011-2029
Tele: 314-541-0317
Email: tiffany@consumerprotectionlegal.com

Gary F. Lynch (admitted *pro hac vice*)
Lynch Carpenter, LLP
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
gary@lcllp.com

(Eddie) Jae K. Kim (admitted *pro hac vice*)
Tiffine E. Malamphy (admitted *pro hac vice*)
Lynch Carpenter, LLP
117 East Colorado Blvd, Suite 600
Pasadena, CA 91105
(619) 756-6991
ekim@lcllp.com
tiffine@lcllp.com

Francis J. "Casey" Flynn, Jr., $52358
Law Office of Francis J. Flynn, Jr.
6057 Metropolitan Plz.
Los Angeles, California 90036
(314) 662-2836
casey@lawofficeflynn.com

Jason P. Sultzer (seeking admission *pro hac vice*)
Jeremy Francis (seeking admission *pro hac vice*)
The Sultzer Law Group, P.C.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
(845) 705-9460
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

Jeffrey K. Brown (seeking admission *pro hac vice*)
Michael Tompkins (seeking admission *pro hac vice*)
Brett R. Cohen (seeking admission *pro hac vice*)
Leeds Brown Law, PC
One Old County Road, Suite 347
Carle Place, New York 11514

(516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

**ATTORNEYS FOR PLAINTIFF AND THE
PROPOSED CLASS**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 24, 2023, I electronically filed the foregoing with the Clerk of the Court using the Court's electronic filing system, which will send a notice of electronic filing to all counsel of record.

/s/      Tiffany M. Yiatras

**IN THE 21st JUDICIAL CIRCUIT COURT**
**ST. LOUIS COUNTY, MISSOURI**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| RAPULUCHUKWU C. OKOLO AND SAMUEL DEAN, *on behalf of themselves and all others similarly situated,* ) ) ) ) | Case No. 20SL-CC02850 |
|                 PLAINTIFFS, ) ) | |
| v. ) ) | |
| MARYVILLE UNIVERSITY OF SAINT LOUIS, ) ) ) | |
|                 DEFENDANT. ) | |

## <u>DEFENDANT MARYVILLE UNIVERSITY OF SAINT LOUIS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>

Defendant Maryville University of Saint Louis ("Maryville") hereby files its opposition to

the Motion for Class Certification filed by Plaintiffs Rapuluchukwu C. Okolo and Samuel Dean.

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND .....................................................................................2

LEGAL STANDARD ................................................................................................7

ARGUMENT .............................................................................................................9

I.     Plaintiffs Have Failed to Prove All the Requirements of Section 52.08(a). ............9

     A.     The Proposed Classes Do Not Meet the Numerosity Requirement. ............9

     B.     The Proposed Classes Do Not Meet the Commonality Requirement. .......11

          1.     To Determine Whether the Same Evidence Will Establish a Prima Facie Case for Each Class Member, the Court Must Consider the Elements of Each Claim. ..........................................12

          2.     Common Evidence Does Not Provide the Answers to the Elements of the Unjust Enrichment Claim. ..................................13

          3.     Common Evidence Does Not Provide the Answers to the Elements of the MMPA Claim. ....................................................17

               (i)     A Student's Purpose for Purchasing an Education from Maryville Is Necessarily a Student-by-Student Determination. ..................................................................17

               (ii)     There Is No Uniform, Class-Wide Fraudulent Statement or Unfair Practice Allegedly Committed by Maryville. ..............................................................................20

               (iii)     Whether Putative Class Members Sustained an Ascertainable Loss Cannot Be Determined on a Class-Wide Basis. ..............................................................23

     C.     The Claims of the Named Plaintiffs Are Not Typical of the Classes, Nor Are Plaintiffs Adequate Class Representatives. ................................27

II.     Plaintiffs Have Failed to Prove Predominance of Common Claims and Superiority of the Class Action as Required by Section 52.08(b)(3). ...................29

CONCLUSION ..........................................................................................................34

# TABLE OF AUTHORITIES

## Cases

*Anderson v. High-Tech Institute*,
No. 11-0506-CV, 2013 WL 12203311 (W.D. Mo. Jan. 25, 2013). ...................................18

*Bergeron v. Rochester Institute of Technology*,
No. 20-CV-6283, 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020)...................................23

*Botts v. Johns Hopkins University*,
No. ELH-20-1335, 2021 WL 1561520 (D. Md. Apr. 21, 2021).......................................23

*Bratton v. Hershey Co.*,
No. 2:16-CV-4322, 2018 WL 934899 (W.D. Mo. Feb. 16, 2018). ..................................20

*Collinge v. IntelliQuick Delivery, Inc.*,
No. 2:12-CV-00824, 2015 WL 1292444 (D. Ariz. Mar. 23, 2015)..................................32

*Craft v. Philip Morris Cos.*,
190 S.W.3d 368 (Mo. App. 2005). .................................................................8, 17

*Dallas Airmotive, Inc. v. FlightSafety International, Inc.*,
277 S.W.3d 696 (Mo. App. 2008). .....................................................................24

*Dean v. Chamberlain University, LLC*,
No. 21-3821, 2022 WL 2168812 (6th Cir. June 16, 2022)..............................................16

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)...........................................................................................13

*Evans v. Brigham Young University*,
No. 1:20-CV-100, 2022 WL 596862 (D. Utah Feb. 28, 2022).........................................10

*Evans v. Brigham Young University*,
No. 22-4050, 2023 WL 3262012 (10th Cir. May 5, 2023)........................................10, 11

*Ford v. Rensselaer Polytechnic Institute*,
507 F. Supp. 3d 406 (N.D.N.Y. 2020)........................................................... 22-23

*Garcia De Leon v. New York University*,
No. 21 CIV 05005, 2022 WL 2237452 (S.D.N.Y. June 22, 2022).............................16, 29

*General Telephone Co. of Southwest v. Falcon*,
457 U.S. 147 (1982).....................................................................................8, 27

*Goldsmith v. Lee Enterprises, Inc.*,
57 F.4th 608 (8th Cir. 2023). .................................................................................3, 17, 24

*Jurgens v. Build.com, Inc.*,
No. 4:17-cv-00783, 2017 WL 5277679 (E.D. Mo. Nov. 13, 2017). .................................14

*Karen S. Little, L.L.C. v. Drury Inns, Inc.*,
306 S.W.3d 577 (Mo. App. 2010). .................................................................................11

*Kerr v. Vatterott Educational Centers, Inc.*,
439 S.W.3d 802 (Mo. App. 2014). .................................................................................18

*Little v. Grand Canyon University*,
No. CV-20-00795, 2022 WL 266726 (D. Ariz. Jan. 28, 2022). .......................... 16-17, 32

*Lucero v. Curators of University of Missouri*,
400 S.W.3d 1 (Mo. App. 2013). .................................................................................24

*MacDonald v. Thomas M. Cooley Law School*,
880 F. Supp. 2d 785 (W.D. Mich. 2012). .................................................................18, 19

*MacDonald v. Thomas M. Cooley Law School*,
724 F.3d 654 (6th Cir. 2013). .................................................................................18

*Miller v. Horn*,
254 S.W.3d 920 (Mo. App. 2008). .................................................................................3

*Missouri ex rel. Nixon v. Progressives Business Publications, Inc.*,
504 F. Supp. 2d 699 (W.D. Mo. 2007). .................................................................22

*Moore v. Scroll Compressors, LLC*,
632 S.W.3d 810 (Mo. App. 2021). .................................................................7, 9, 27, 28

*Nickel v. Stephens College*,
480 S.W.3d 390 (Mo. App. 2015). .................................................................................24

*Primary Care Pharmacy, LLC v. Express Scripts, Inc.*,
408 F. Supp. 3d 1034 (E.D. Mo. 2019)...........................................................................13

*Raimo v. Washington University in St. Louis*,
No. 4:02CV-00634, 2022 WL 796239 (E.D. Mo. Mar. 16, 2022). ...................................24

*Saey v. CompUSA, Inc.*,
174 F.R.D. 448 (E.D. Mo. 1997) .................................................................................17

*Sherwin-Williams Co. v. Novak's Collision Center, Inc.*,
No. 4:12CV02148, 2013 WL 5500107 (E.D. Mo. Oct. 3, 2013). ....................................21

*Smith v. Ohio State University*,
200 N.E.3d 1249 (Ohio App. 2022)...................................................................... 11-12

*Sparks v. PNC Bank*,
400 S.W.3d 454 (Mo. App. 2013). ...........................................................................13, 14

*Stagner v. Hulcher Services, Inc.*,
No. 16-1036-CV, 2017 WL 3166841 (W.D. Mo. July 25, 2017)....................................28

*State ex rel. Coca-Cola Co. v. Nixon*,
249 S.W.3d 855 (Mo. 2008). ...............................................................7, 10, 27, 32, 33

*State ex rel. Nixon v. Telco Directory Publishing*,
863 S.W.2d 596 (Mo. 1993). ...................................................................................22

*State ex rel. Webster v. Eisenbeis*,
775 S.W.2d 276 (Mo. App. 1989). ...........................................................................21

*Thompson v. Allergan USA, Inc.*,
993 F. Supp. 2d 1007 (E.D. Mo. 2014)..................................................................23, 24

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009). ...............................................................................32

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..............................................................................................8, 11

*White v. Just Born, Inc.*,
No. 2:17-CV-04025, 2018 WL 3748405 (W.D. Mo. Aug. 7, 2018). ...................18, 27, 28

*Williams v. HSBC Bank USA, N.A.*,
No. 2:15-cv-04144, 467 S.W.3d 836 (Mo. App. 2015)....................................................22

*Williams v. United Technologies Corp.*,
2015 WL 7738370 (W.D. Mo. Nov. 30, 2015)..............................................................20

## Statutes & Rules

Mo. Stat. § 52.08......................................................................7, 8, 27, 29, 33

Mo. Stat. § 407.025.................................................................................3, 7, 17, 33

Fed. R. Civ. P. 23 .................................................................................................8

## **INTRODUCTION**

Plaintiffs contend that the question that the Court will be called on to answer in their proposed class action is whether Maryville can "charge students for in-person, on-campus educational services that it did not provide." (Class Cert. Mot. at 2). That is not the correct question. If Maryville charged students for an in-person education but provided them with a replacement of an equal or greater value, then students were not harmed, and no claim can be asserted. The proper question, therefore, is whether the value of the education Maryville provided to students was of a greater, lesser, or qual value to what students paid.

Answering this question requires a highly individualized analysis into exactly what each student paid and exactly what each student received. That is not a uniform analysis, and the large variation between students means that many students paid *less* for in-person classes than the cost of online classes. Named Plaintiffs Okolo and Dean fall within that category.

Plaintiffs' Class Certification Motion should be denied because this case does not meet the requirements for class certification, primarily because the claims asserted require highly fact-specific determinations that turn upon the individual experiences and circumstances of each member of the purported classes. Moreover, Named Plaintiffs Dean and Okolo are not adequate class representatives because they have no actionable claim against Maryville.

Additionally, a class action would not be an efficient or advantageous vehicle in this case. As set forth herein, the two causes of action asserted lack legal merit, so there is a strong likelihood this action will be dismissed on summary judgment. If that occurs, all class members will be foreclosed from asserting claims in the future. Thus, a class action would not serve due process.

For these reasons, as more fully detailed within this Opposition, a class action should not be certified, and Plaintiffs' Class Certification Motion should be denied.

## **FACTUAL BACKGROUND**

Plaintiffs seek to obtain refunds of tuition and fees from Maryville for the Spring 2020 semester because the university, like every other school nationwide, was required to close to the public.  Acting promptly to adapt, Maryville adjusted and offered virtual courses with professors teaching live, which students attended on Zoom in lieu of in-person.  Thus, Maryville continued delivering courses to Plaintiffs and other students despite the unexpected, unplanned, act-of-God shutdown of all in-person activities.  Maryville provided students these classes under difficult circumstances, and it offered students other services during the campus shutdown as well, including professor office hours, telehealth, and technology assistance.  Maryville also provided students with laptops, iPads, and cameras to enable them to participate in the online courses.[1]

Maryville continued to offer classes to its students throughout the Spring 2020 semester, providing students with uninterrupted instruction.  Plaintiffs obtained and completed the courses they registered for that semester, allowing them to receive instruction, earn credits toward their degrees, graduate on time, and start their careers without an undesired delay.

In addition to its on-campus programs, Maryville has a robust online program and student population.  In the Spring 2020 semester, Maryville had 6,153 students enrolled in online-only programs, as opposed to 3,714 students enrolled in primarily on-campus programs.[2]  Online programs have benefits and are desirable to students for any number of reasons, including the convenience of taking them from any location and at any time of day.  Maryville's online programs are highly ranked and regarded.[3]

---

[1] Defendant Maryville University of Saint Louis' Amended & Supplemental Answers to Plaintiffs' Second Set of Interrogatories (attached hereto as Ex. 1), at Interrogatory No. 15.

[2] Maryville Spring 2020 Census (attached hereto as Ex. 2).

[3] *See* Website for Maryville Online, https://online.maryville.edu/, main page attached hereto as Ex. 3.

Plaintiffs contend that Maryville students all "suffered the same harm" during the Spring 2020 semester, when the "modality of instructions and services" was switched "as a result of the COVID-19 pandemic." (Class Cert. Mot. at 2). They assert two causes of action: (1) violation of the Missouri Merchandising Practices Act (MMPA), and (2) unjust enrichment.[4] For both causes of action, an element of the claim is proof of a loss. Under the MMPA, Plaintiffs must establish an "ascertainable loss of money or property."[5] In their unjust enrichment claim, Plaintiffs must establish that it would be unjust for Maryville to retain Plaintiffs' tuition payments.[6]

Plaintiffs cannot prove that they suffered a harm by pointing to their belief that the *quality* of a virtual education is worse than the quality of an in-person education or that a virtual education is simply "worse." Courts in Missouri have repeatedly held that a student may not assert a cause of action that requires a factfinder to examine the subjective quality of an education.[7] Plaintiffs recognize this fact and stated in response to Maryville's Motion to Dismiss in this case that "[t]he measure of damages, therefore, is not whether Plaintiff received a deficient education, but whether there is a different market value between what Plaintiffs paid for and what they received."[8]

To establish the "market value" of an online education, Plaintiffs point to the obvious comparator: the cost of courses offered in Maryville's online program.[9] They then contend that

---

[4] Am. Class Action Pet. at ¶¶ 108-130. By order dated October 26, 2021, the Court previously dismissed Plaintiffs' claims for breach of express and implied contract and for breach of the covenant of good faith and fair dealing.

[5] Mo. Stat. § 407.025.1(1); *see also Goldsmith v. Lee Enters., Inc.*, 57 F.4th 608, 615 (8th Cir. 2023) (stating that an element of an MMPA claim is proof of an ascertainable loss of money or property as a result of an act declared unlawful under the MMPA).

[6] *Miller v. Horn*, 254 S.W.3d 920, 924 (Mo. App. 2008) ("Mere receipt of benefits is not enough, absent a showing that it would be unjust for the defendant to retain the benefit.")

[7] *See* cases cited in footnote 51, *infra*. Additional analysis of the legal precedent prohibiting "educational malpractice" claims is set forth in Maryville's Memorandum in Support of its Motion to Dismiss Plaintiffs' Joint Amended Petition, at p. 17-22.

[8] Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss at p. 6.

[9] *See* Class Cert. Mot. at 5, 6, 17.

they were damaged because Maryville "charge[d] more for its on-campus program than online-only programs," and Plaintiffs were "st[u]ck" with paying the allegedly higher tuition and fees associated with on-campus courses.[10]

 As shown below, the record demonstrates that Plaintiffs have the facts wrong.  The tuition and fees paid by Plaintiffs and other on-campus students were ***not uniformly higher*** than the tuition and fees paid by students registered for online courses.  Indeed, in many cases, the per-credit hour average paid by on-campus students was ***lower*** on average than the tuition paid by Maryville's online students.  In short, Maryville provided Plaintiffs and putative class members with classes that cost ***more*** than what they paid.

 Plaintiffs Okolo and Dean exemplify the individual nature of students' claims and the lack of financial harm incurred by students whose classes moved online.  Plaintiff Okolo enrolled at Maryville in Fall 2017 as an undergraduate student.[11]  She chose Maryville over other schools because it offered a relatively unique major that interested her (sports management), provided her with extensive school-sponsored scholarships that covered more than half of her tuition costs, and accepted the numerous community college credits she had previously earned.[12]  Before enrolling at Maryville, she never stepped foot on Maryville's campus.[13]  While an undergraduate, Okolo chose to enroll in Maryville's Masters in Business Administration ("MBA") graduate program, and she chose Maryville's MBA program over others because she could begin to take graduate program classes while she was still an undergraduate, thereby shortening her time to complete the program.[14]  When given the option of taking her MBA classes in-person, online, or in a

---

[10] *Id.* at 2.

[11] Deposition of Rapulu Okolo ("Okolo Dep.," excerpts attached hereto as Ex. 4), at 19:17-19.

[12] *Id.* at 29:8-30:14.

[13] *Id.* at 36:25-37:3.

[14] *Id.* at 99:13-101:11, 106:25-107:4, 164:5-14.

blended/combination format of in-person and online courses, Okolo chose the blended format and ultimately took several classes before the Spring 2020 semester online.[15]  She also registered to take one online class during the Spring 2020 semester.[16]

During the Spring 2020 semester, Okolo paid a tuition rate of $714/credit hour.[17]  The tuition charged for Maryville's MBA program was $714/credit hour regardless of whether students were taking those classes online or in-person.[18]  Okolo paid a One Fee in Spring 2020 of $350.[19] This on-campus One Fee was *less* than the $650 One Fee charged to MBA students who only took classes online.[20]

Okolo graduated at the end of the Spring 2020 semester, having completed all courses to earn her MBA in one year.[21]  She has been working in business jobs—almost entirely in virtual positions—since that time.[22]

Plaintiff Dean also chose Maryville primarily because it offered the best version of his program of interest: actuarial science.[23]  Like Okolo, Dean appreciated that Maryville offered him extensive scholarships and accepted the numerous college credits he earned in high school.[24] Unlike Okolo, Dean did visit Maryville's campus before he enrolled, but he ultimately chose to

---

[15] *Id.* at 104:21-105:18.

[16] *Id.* at 122:19-124:24.

[17] Am. Class Action Pet. at ¶ 15 (stating that Okolo paid $8568 for tuition for the Spring 2020 semester).  That tuition rate divided by the 12 credits she took in Spring 2020 equals $714/credit hour.

[18] *See* tuition and fee description in Maryville's 2019-2020 Catalog (attached hereto as Ex. 5), at OKOLO_000002.

[19] Okolo Dep. (Ex. 4) at 171:11-14.  Plaintiffs' Class Certification Motion states that graduate students paid a One Fee of $1200.  According to the fee schedule in Maryville's catalog, only graduate students in four programs paid that rate.  On-campus students in every other program, including Okolo's MBA program, paid just $350.  *See* Ex. 5 at OKOLO_000004; Am. Class Action Pet. at ¶ 15.

[20] Okolo Dep. (Ex. 4) at 171:15-17; Ex. 5 at OKOLO_000004.

[21] Okolo Dep. (Ex. 4) at 184:15-17.

[22] *Id.* at 185:1-4, 191:18-23, 194:16-22.

[23] Deposition of Samuel Dean ("Dean Dep.," excerpts attached as Ex. 6), at 27:13-18, 44:25-45:13.

[24] *Id.* at 27:23–28:7. 48:5-15. 110:11-111:9.

live off campus and participated very little in on-campus activities.[25]  In the Spring 2020 semester, he also registered to take one class online.[26]

Like the majority of Maryville's on-campus students, Dean received a large scholarship from Maryville, equal to approximately 50% of his tuition.[27]  Because of this scholarship and full 18-hour courseload, Dean acknowledged that during the Spring 2020 semester, he paid $335.28/credit hour.[28]  Online undergraduate students, on the other hand, paid $500/credit hour.[29]

Dean had one semester of classes remaining after completing the Spring 2020 semester. During that Fall 2020 semester, Maryville offered students the option of taking some classes in person or taking all classes fully online.[30]  Dean chose to take all classes online.[31]  He graduated at the end of the Fall 2020 semester.[32]

Maryville appreciates that the COVID-19 pandemic was difficult and that Plaintiffs would have preferred to take their in-person classes in person.  Maryville wishes that it had been able to safely and legally provide those classes in person.  But the unplanned, unexpected shift to virtual instruction does not, on its own, manifest a cause of action that warrants a refund.  Some on-campus students may have *preferred* online classes.  Other on-campus students (like Okolo and Dean) may have already been registered for one or more online classes.  And many students, like the Named Plaintiffs here, ended up receiving credits for courses that cost more online than they did in-person.

---

[25] *Id.* at 34:6-9, 67:7-13.

[26] *Id.* at 82:15-84:11.

[27] *Id.* at 47:25-48:15.

[28] *Id.* at 64:1-9.

[29] *See* tuition and fee description in Maryville's 2019-2020 Catalog (attached hereto as Ex. 5) at OKOLO_000002.

[30] Dean Dep. (Ex. 6) at 103:24-104:19, 106:9-11.

[31] *Id.* at 106:15-25.

[32] *Id.* at 107:13-16, 127:10-15.

Every student's situation is different—the value each placed on in-person education is different, and what each paid for tuition (considering scholarships, their program, and the number of credits taken) is different. All on-campus students may have been moved to virtual courses, but whether they have a ***claim*** against Maryville as a result of that shift is not common across the student body. This lack of a common set of facts and common injury is the primary reason why Plaintiffs' Motion for Class Certification must be denied.

## LEGAL STANDARD

To proceed as a class rather than on an individual basis, Plaintiffs, as the parties seeking class certification, have the burden of meeting all the requirements of Mo. Stat. § 52.08 and Mo. Stat. § 407.025.[33] *Moore v. Scroll Compressors, LLC,* 632 S.W.3d 810, 815 (Mo. App. 2021) ("The party seeking class certification bears the burden of proof.") (internal quotations and citation omitted). "This burden is satisfied if there is evidence in the record, which if taken as true, would satisfy each and every requirement of the rule." *Id.* To establish the requirements of Mo. Stat. § 52.08(a) and § 407.025.6, the record must demonstrate, at a minimum, that:

(i)     the class is so **numerous** that joinder of all members is impracticable (numerosity);

(ii)    there are questions of law or fact **common** to the class (commonality);

(iii)   the claims of the named plaintiffs are **typical** of the class claims (typicality); and

(iv)    the named plaintiffs will fairly and **adequately** protect the class interests (adequacy).

*See State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 861 (Mo. 2008).

---

[33] Plaintiffs seek class certification pursuant to Mo. Stat. § 407.025 of the MMPA in addition to the general class action statute, Mo. Stat. § 52.08. Section 407.025.5 authorizes MMPA claims to be brought as class actions "if the unlawful method, act or practice has caused similar injury to numerous other persons." The elements needed to assert a class action under each statute are the same, as subsections (1) through (7) of Section 407.025.6 track Section 52.08(a) and (b).

If these four factors are established by evidence of record, Plaintiffs then must establish that the classes satisfy one of the three requirements of Mo. Stat. § 52.08(b).  Here, Plaintiffs pursue a class action under Section 52.08(b)(3), which requires Plaintiffs to establish that "the questions of law or fact common to the members of the class **predominate** over any questions affecting only individual members, and that a class action is **superior** to other available methods for the fair and efficient adjudication of the controversy."  Mo. Stat. § 52.08(b)(3).

The Court must apply a "rigorous analysis" to determine whether the requirements for a class action are satisfied under the facts of record.  *Craft v. Philip Morris Cos.*, 190 S.W.3d 368, 383-84 (Mo. App. 2005).  Where there is an ample evidentiary record, a court should meticulously analyze the established record and not rely upon unsupported assertions.  *See id.* at 384.

Mere allegations by the Plaintiffs, especially those contradicted by record evidence, need not be considered by the Court.  In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-52 (2011), the U.S. Supreme Court held that the class action requirements of Fed. R. Civ. P. 23 are not merely a "pleading standard" that can be satisfied with unfounded or contradicted evidence.[34]  As the Court explained:

> A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he **must be prepared to prove that there are *in fact*** sufficiently numerous parties, common questions of law or fact, etc.  We recognized in *Falcon* that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," 457 U.S. at 160, 102 S. Ct. 2364, and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied . . . ."  Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped.

*Id.* at 351 (emphasis added).

---

[34] Because Mo. Stat. § 52.08 and Fed. R. Civ. P. 23 are identical, a Missouri court "may consider federal interpretations of Rule 23 in interpreting Rule 52.08."  *Craft*, 190 S.W.3d at 376.

Although a class certification decision "is independent of the ultimate merits of the suit, to identify relevant issues and make a meaningful determination, the Court must consider the applicable substantive law and the scope and nature of the claims."  *Moore*, 632 S.W.3d at 816.

## ARGUMENT

Plaintiffs' Class Certification Motion should be denied because the elements of Section 52.08 are clearly not satisfied, their arguments rest on faulty premises, and the motion does not properly apply the class certification methodology.  Contrary to Plaintiffs' broad claim, this case is "quintessential[ly]" ***not*** a case that is proper for class treatment.  (Class Cert. Mot. at 7).

Plaintiffs move the Court to certify two classes (undergraduate students and graduate students) based upon theories of unjust enrichment and violation of the MMPA.  However, those claims are highly fact dependent and necessarily turn on the characteristics and facts applicable to the individual making the claims.  Accordingly, these claims are not suited to determination on a class-wide basis.  Additionally, Plaintiffs are not adequate class representatives because their particular circumstances do not establish a prima facie claim for unjust enrichment or MMPA violations.  In short, a class action is not a superior way to resolve this action because Plaintiffs' claims are vulnerable to dismissal on summary judgment, thereby foreclosing absent class members from ever pursuing claims.

## I.    Plaintiffs Have Failed to Prove All the Requirements of Section 52.08(a).

### A.    The Proposed Classes Do Not Meet the Numerosity Requirement.

Plaintiffs argue that the proposed classes meet the numerosity requirement because they include within the classes all Maryville students who transitioned from in-person to online education in Spring 2020.  (Class Cert. Mot. at 8).  That is not an accurate class definition because it includes within it students who were not harmed, *i.e.*, students who paid less for in-person classes than the cost of online classes.  Those students cannot assert an MMPA or unjust enrichment claim,

and Plaintiffs cannot include within the class definition persons who have no claim and no actionable injury.  *See State ex rel. Coca-Cola*, 249 S.W.3d at 862 (stating that putative class was impermissibly overbroad and should not be certified where a large percentage of the putative class suffered no injury).

Moreover, other courts examining the same issue have found that the number of students falling within the proposed class was not ascertainable because a student-by-student analysis would be required to see who actually *paid* for the education—the student or someone else. Plaintiffs defined the class as those students "who paid tuition and/or Mandatory Fees," and determining who falls within that class necessary requires determining whether the students paid those amounts themselves or whether someone else made the payments.  For example, in *Evans v. Brigham Young University*, the court concluded that the numerosity was not satisfied because of the difficulties in determining whether each student personally paid for tuition.  No. 1:20-CV-100, 2022 WL 596862, at *3 (D. Utah Feb. 28, 2022), *aff'd*, No. 22-4050, 2023 WL 3262012 (10th Cir. May 5, 2023).  As the court explained, "determining whether a person paid tuition and/or fees to attend in-person classes would require the Court to individually inquire of every BYU student enrolled during the Winter 2020 semester.  Based upon this, the Court concludes that Plaintiff's proposed class definition is unascertainable and class certification is inappropriate in this case." *Id.* at *4.  The court reasoned that each class member would have to be individually questioned whether they paid their own tuition to attend in-person classes, and that "this type of individualized inquiry was not administratively feasible."  *Id.* at *3.

Plaintiffs present no evidence to the Court of the number of in-person students who actually paid their own tuition and fees, nonetheless the number of students who paid *more* than the cost of online courses.  There is no evidence of the number of students who fall within the class, nor is

there evidence of the number of students who have a potential claim and actually have something to refund. Absent evidence of **those** numbers, Plaintiffs cannot establish the numerosity requirement. *See Evans*, 2023 WL 3262012, at *5 ("The plaintiff 'must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties . . . .'") (quoting *Wal-Mart Stores*, 564 U.S. at 350).

**B.       The Proposed Classes Do Not Meet the Commonality Requirement**.

Section 52.08(a)(ii) requires Plaintiffs to demonstrate that there are questions of law or fact common to the class. The common question "must be of such a nature that it is capable of classwide resolution" such that the determination of its truth or falsity will resolve an issue that is central to the validity of each claim for each member of the class. *Wal–Mart Stores*, 564 U.S. at 350.

For the commonality requirement, courts consider the substantive claims for relief and the elements of each claim. Commonality is met only if the named plaintiffs' cases would provide common answers that are likely to resolve the resolution of the claims for all the class members. "What matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding **to generate common *answers*** apt to drive the resolution of the litigation." *Id.* (emphasis added). "If the same evidence on a given question will suffice for each class member, then it is common; if the evidence on the question varies from member to member, then it is an individual issue." *Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577, 581 (Mo. App. 2010). Thus, "if the same evidence will suffice for each member to make a prima facie showing as to a given question, then it is a common question." *Id.*

Contrary to Plaintiffs' argument, it cannot simply be assumed that because Maryville transitioned to online learning, a common claim exists. *See Smith v. Ohio State Univ.*, 200 N.E.3d

1249 (Ohio App. 2022), *appeal allowed*, 204 N.E.3d 565.  In *Smith*, the Ohio Court of Appeals reversed a decision certifying a class of students seeking refunds as a result of a university's cancellation of in-person classes and provision of online courses.  *Id.* at 1251.  In doing so, it held that the lower court had wrongly assumed that each student suffered economic injury based on the fact of the campus' closure, absent a showing that the proposed class of students were actually harmed by the closure.  *Id.* at 1263-64.  Finding proof of a common claim on this basis, without any actual evidence of harm presented by the plaintiff on behalf of the class, was an error on the motion for class certification.  *Id.* at 1264-65.  The Court of Appeals reasoned that courts must rigorously review the evidence to make sure their findings on class certification are supported by sufficient evidence.  *Id.* at 1261-1265.[35]

The same applies here.  The Court may not assume that the transition to online classes, on its own, suffices to establish commonality.  Each cause of action must be examined to determine if common facts will answer each element of the remaining claims.

    **1.**    **To Determine Whether the Same Evidence Will Establish a Prima Facie Case for Each Class Member, the Court Must Consider the Elements of Each Claim.**

Here, the evidence needed to establish Plaintiffs' claims is not common among the class members.  Each claim turns on individual student facts, and Plaintiffs Okolo and Dean's individual facts do not provide a common answer that would resolve all claims.

The supposed common questions set forth in Plaintiffs' Class Certification Motion are not the questions to be answered in this case.  Some questions listed in the motion are not questions at all because they are undisputed.  For example, one of the questions identified by Plaintiffs is

---

[35] As the court explained in *Smith*, "[W]e find the trial court's conclusion that OSU's (alleged) breach of implied contract to hold in-person classes on an open campus constituted—in and of itself—proof of a common injury suffered by the class was an error of law, and the trial court's failure to rigorously analyze the requirements for class certification due to this error constitutes an abuse of discretion."  *Id.* at 1265.

whether Maryville accepted tuition and fees from students registered for on-campus courses. (Class Cert. Mot. at 9). It did. This is not disputed. Likewise, Plaintiffs also assert that Maryville did not give tuition or fee refunds after students were transitioned to online courses. Again, that is not disputed.

Plaintiffs' other proffered questions go to the ultimate issues in the case, asking "whether Defendant is liable for unjust enrichment," whether Maryville's course of action "was in violation of the [MMPA]," and what "amount of damages" should be awarded. (Class Cert. Mot. at 9).

This is not how the courts determine commonality. Rather, the Court must look at the *elements* and determine whether those elements can be proven by common answers across the classes.[36] Here, the answer is no. By their nature, the claims for unjust enrichment and MMPA violations necessarily turn on the individual facts of each student's case. They do not share "common answers."

### 2. Common Evidence Does Not Provide the Answers to the Elements of the Unjust Enrichment Claim.

The commonality requirement is not established for the unjust enrichment claim. To prevail on an unjust enrichment claim, a plaintiff must provide facts of record to establish: "(1) a benefit conferred by a plaintiff on a defendant; (2) the defendant's appreciation of the fact of the benefit; and (3) the acceptance and retention of the benefit by the defendant under the circumstances in which retention without payment would be inequitable." *Primary Care Pharmacy, LLC v. Express Scripts, Inc.*, 408 F. Supp. 3d 1034, 1040 (E.D. Mo. 2019). "Mere receipt of benefits is not enough, absent a showing that it would be unjust for the defendant to retain the benefit." *Sparks v. PNC Bank*, 400 S.W.3d 454, 460 (Mo. App. 2013).

---

[36] "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). .

As discussed with regard to numerosity, Plaintiffs cannot show the first element on a class-wide basis: whether each class member personally paid for their own tuition and costs and personally conferred a benefit upon defendant.  Evidence as to who paid for tuition and fees is not common.

Additionally, Plaintiffs **have not shown** and **cannot show** on a class-wide basis that it would be inequitable for Maryville to retain amounts it received.  It is not enough to merely allege, as Plaintiffs do, that Maryville's retention of the payments is "unfair."  *See id* (affirming dismissal of unjust enrichment claim because "it is unclear from their pleading why it would be unjust to allow Respondents to retain the benefits"); *Jurgens v. Build.com, Inc.*, No. 4:17-cv-00783, 2017 WL 5277679, at *7 (E.D. Mo. Nov. 13, 2017) ("Plaintiff has failed to state a claim that she conferred a benefit on Defendant the retention of which would be inequitable.").

Plaintiffs could, arguably, show inequity in one of two ways: (1) that Maryville sustained a windfall by retaining the in-person payments but providing online classes, or (2) that the class members paid more than the value of what Maryville gave them. ***First***, Plaintiffs' Class Certification Motion provides no evidence supporting the idea that Maryville sustained a windfall when it transitioned from in-person classes to online.  There was no evidence presented that Maryville saved money by moving courses online, that it paid instructors less, incurred fewer expenses, or had to pay less in maintenance for classroom buildings and other facilities.  In truth, Maryville incurred unplanned expenses to support students transitioning to online courses, providing them with laptops, cameras, and iPads and also providing technical support.[37]  Plaintiffs had ample opportunity to obtain discovery to show that Maryville received a windfall.  Their failure to present any such evidence to the Court shows that it does not exist.

---

[37] *See* Ex. 1 at Interrogatory No. 15.

*Second*, determining whether a class member paid more than the cost of a comparable online class is an individual determination that cannot be performed on a class-wide basis. For example, to determine the per-credit-hour tuition rate paid by an on-campus undergraduate student requires determining, ***at minimum***, (a) the number of credit hours taken by the student, and (b) the amount of institutional scholarship provided by Maryville to that student. A student taking the minimum 12 credit hours who received no scholarship and paid the maximum $13,035 sticker tuition price would pay $1,086.25/credit; in contrast, a student like Plaintiff Dean who received a large scholarship and took the maximum 18 credit hours would pay $335.28/credit.[38] Whether each on-campus undergraduate student paid more or less than the $500/credit charged for online courses, and whether each on-campus graduate student paid something different from online graduate students requires a student-by-student review.[39] Some students may have paid more than the online rate; other students, like Plaintiff Dean, paid less. Plaintiff Dean and the other students who paid less than the online rate cannot state an unjust enrichment claim.

The cost of tuition and fees also varies depending upon a student's program.[40] In Plaintiff Okolo's MBA program, for example, the tuition rate was the same regardless of whether classes were taken in-person or online.[41] The One Fee cost did vary, but the $350 fee charged to Okolo was actually *less* than the $650 fee charged to online MBA students.[42] Again, students who paid less (or the same) for in-person tuition and fees compared to the cost of online tuition and fees cannot establish that Maryville's retention of that lesser amount was inequitable.

---

[38] Dean Dep. (Ex. 6) at 64:1-9; Ex. 5 at OKOLO_000001.

[39] *See* tuition schedule for on-campus and online students at Ex. 5.

[40] *Id.*

[41] *Id.* at OKOLO_000002.

[42] *Id.* at OKOLO_000004; Okolo Dep. (Ex. 4) at 171:11-17.

There are similar problems in determining whether class members received value for the on-campus One Fee that they paid.  Some on-campus graduates may have received substantial value for the fees they paid, such as multiple textbooks, an iPad, a cap and gown for graduation, online counseling services, or other items.[43]  Other students may not have received as much.  *See Garcia De Leon v. New York Univ.*, No. 21 CIV 05005, 2022 WL 2237452, at *18 (S.D.N.Y. June 22, 2022) (refusing to certify class because it would require an examination of the services, supplies, and equipment provided to each student in exchange for the fees paid, which varied depending upon program).

This is not just a question of calculating damages.  This is a question of whether one of the three elements of the unjust enrichment cause of action itself is satisfied.  Plaintiffs simply cannot—on a class-wide basis—show that each class member received something less in value than what they paid.  *See Dean v. Chamberlain Univ., LLC*, No. 21-3821, 2022 WL 2168812, at *4 (6th Cir. June 16, 2022) (finding, in COVID-19 tuition reimbursement case, that the student plaintiff failed to adequately state a claim for unjust enrichment because the student failed to allege facts "supporting the inference that her tuition would have been less if she decided to take classes online initially").

Other courts have similarly found that unjust enrichment claims cannot proceed as a class action because they are inherently fact-specific.  The court so held in a COVID-19 tuition refund case, *Little v. Grand Canyon University*, No. CV-20-00795, 2022 WL 266726, at *7 (D. Ariz. Jan. 28, 2022).  As the court explained in *Grand Canyon*, "Because of the necessity of examining the

---

[43] *See* description of benefits of the One Fee as set forth in Defendant Maryville University of Saint Louis' Amended & Supplemental Responses to Plaintiffs' Third Set of Requests for Production of Documents (attached hereto as Ex. 7), at Request No. 43.

circumstances of a particular case before a court can grant relief on such an equitable claim, courts have found unjust enrichment claims inappropriate for class treatment." *Id.*

Plaintiffs cannot, on a class-wide basis, establish that it was inequitable for Maryville to retain the tuition and fees paid by the on-campus registered students. The evidence required to answer this question is not common across the classes. The commonality element is not satisfied for the unjust enrichment claim.

### 3.   Common Evidence Does Not Provide the Answers to the Elements of the MMPA Claim.

Plaintiffs' second claim is brought under the MMPA, Mo. Stat. § 407.025. To determine whether the answers to the questions for all class members' claims are the same for the MMPA claim, the Court must consider the elements of this claim, rigorously analyzing the facts of record. *Craft*, 190 S.W.3d at 383. To establish an MMPA claim, Plaintiffs must show that:

(1) they purchased merchandise or services from Maryville;

(2) the purchase was made for personal, family or household purposes;

(3) the Plaintiffs suffered an ascertainable loss of money or property; and

(4) the loss was a result of an act declared unlawful under the MMPA.

*Goldsmith*, 57 F.4th at 615. Each claim requires a student-by-student review of their individual facts.

### (i)   A Student's Purpose for Purchasing an Education From Maryville Is Necessarily a Student-by-Student Determination.

The MMPA provides a private right of action only to those who have purchased merchandise or services "primarily for personal, family or household purposes." Mo. Stat. § 407.025.1(1). Conversely, a party who purchased a product for a business use "does not have standing to bring a claim" under the MMPA. *Saey v. CompUSA, Inc.*, 174 F.R.D. 448, 450 (E.D. Mo. 1997).

The question of the purpose for which merchandise or services were purchased—for business purposes or for personal, family, or household purposes—is a "predominantly individual inquir[y]." *White v. Just Born, Inc.*, No. 2:17-CV-04025, 2018 WL 3748405, at *3 (W.D. Mo. Aug. 7, 2018). This factor is determined based upon the subjective reason of the consumer (or student, in this case) when purchasing the goods or services, making this element necessarily a "question of fact" that must be determined on a person-by-person basis. *Kerr v. Vatterott Educ. Ctrs., Inc.*, 439 S.W.3d 802, 810 (Mo. App. 2014) ("Whether a plaintiff purchased a good for primarily a personal, family, or household purpose is a question of fact.").

The purchase of an education can be for either personal purposes *or* for business purposes; if it is for business purposes, the student cannot bring an MMPA claim. For example, in *Anderson v. High-Tech Institute*, No. 11-0506-CV, 2013 WL 12203311, at *2 (W.D. Mo. Jan. 25, 2013), the court dismissed a student's MMPA claim upon finding that the student enrolled in school in order to enhance his career prospects, which was a business purpose as opposed to a personal purpose. Likewise, in *MacDonald v. Thomas M. Cooley Law School*, 880 F. Supp. 2d 785, 792 (W.D. Mich. 2012), a Michigan court was faced with a similar consumer fraud statute requiring that a purchase be made for personal or household purposes, and the court dismissed the claims, finding that the plaintiffs purchased an education "in order to make money as lawyers so that they could live a lifestyle that they believed (perhaps naively) would be more pleasing to them." *Id.* The court held that this was a business purpose. *Id. See also MacDonald v. Thomas M. Cooley Law School*, 724 F.3d 654, 661 (6th Cir. 2013) (affirming district court's opinion and finding that because the plaintiffs' purchase of an education was ultimately for the purpose of earning money, it was a purchase for a business use).

18

For each member of the putative classes, there will not be one common piece of evidence that provides the answer to this element.  Why students choose to attend undergraduate or graduate school is a highly individualized inquiry.  Answering that inquiry for one student will not answer it for another student.  Therefore, this dispositive element of the MMPA claim is an entirely individualized determination, thus defeating the commonality requirement.

Plaintiffs' Class Certification Motion acknowledges that students enroll for different reasons, as it points to Maryville advertisements and outside studies that highlight both the value of a Maryville education as an "investment" in future careers, as well as the value of an education in promoting personal fulfillment and growth.  (Class Cert. Mot. at 14).  Plaintiffs' own evidence shows that this MMPA element cannot be proven through common, class-wide evidence.

Plaintiffs Dean and Okolo are perfect examples of students' differentiated, personal motivations.  Both admitted that they attended Maryville in order to advance their careers—not so that they could leisurely take courses in finance and statistics.[44]  *See MacDonald*, 880 F. Supp. 2d at 792 (finding that students did not purchase their legal education for a personal use because their purchase was not intended "so that they could leisurely read and understand Supreme Court Reports, or to provide legal services for themselves or family members").

Determining why a student enrolled in college requires asking each student that question.  Some—like students enrolled in an online Masters in Nursing program—might say they enrolled to advance their career.  Others may say that they wanted to take classes in a variety of different areas in order to advance their personal world knowledge and grow as a person.  Under established case law, the answer to this question determines whether a student has a viable MMPA claim, and it cannot be answered on a class-wide basis.

---

[44] Okolo Dep. (Ex. 4) at 47:8-25; Dean Dep. (Ex. 6) at 117:9-16.

        **(ii)**     **There Is No Uniform, Class-Wide Fraudulent Statement or Unfair Practice Allegedly Committed by Maryville.**

To establish their MMPA claim, Plaintiffs must prove that they suffered a loss of money or property as a result of an act declared unlawful under the MMPA.[45]   There is no common evidence that answers this element of an MMPA claim, which further warrants denial of class certification.

It is unclear from Plaintiffs' Class Certification Motion and their Amended Petition whether they are asserting that the unlawful practice consisted of (a) the advertisements sent to students before they decided to enroll at Maryville that touted the campus, or (b) the transition of from in-person to online instruction.  Either way, neither scenario is actionable across the putative class.

***First***, Plaintiffs have presented no evidence that any of the materials sent to them before they decided to enroll were false or deceptive at the time the materials were sent  In fact, Plaintiff Dean acknowledged that <u>he was not aware of any false statement knowingly made to him</u> by Maryville.[46]

A statement is actionable under the MMPA only if it is intended to induce the purchase of merchandise and the defendant knows or believes the assertion is not in accord with the facts or knows there is no reasonable basis for the assertion.  *Williams v. United Techs. Corp.*, No. 2:15-cv-04144, 2015 WL 7738370, at *8 (W.D. Mo. Nov. 30, 2015).  There has been no allegation made—at any time in this case—that Maryville knew at the time it advertised its campus amenities that it would eventually be required to close the campus due to a global pandemic.  Absent any

---

[45] *Bratton v. Hershey Co.*, No. 2:16-CV-4322, 2018 WL 934899, *3 (W.D. Mo. Feb. 16, 2018) ("[I]n order for a plaintiff to have sustained a loss 'as a result of' the defendant's purportedly misleading practice, the plaintiff was required to show that he would 'not have sustained the loss but for' the' practice.").

[46] Dean Dep. (Ex. 6) at 41:5-9.

evidence that Maryville ***knew*** that students would not be able to access the campus at the time it advertised its campus, there can be no claim asserted regarding its pre-enrollment statements.  *See Sherwin-Williams Co. v. Novak's Collision Ctr., Inc.*, No. 4:12CV02148, 2013 WL 5500107, at *5 (E.D. Mo. Oct. 3, 2013).

Where, as here, a defendant offers a service or product but factors outside the defendant's control later cause the merchandise not to be available as expected, the statements originally made are not, as a matter of law, misleading, fraudulent, or unfair practices.  For example, in *State ex rel. Webster v. Eisenbeis*, 775 S.W.2d 276, 279 (Mo. App. 1989), salespersons offered lots for sale and made statements about the availability of certain facilities.  However, later in time, weather, ground conditions, and employee illness prevented work from being completed on the dates promised.  *Id.*  Under these circumstances, the Court of Appeals found that the sales promises were not "unfair practices" under the MMPA.  *Id.*  As the Court explained:

> Viewed most favorably to the state, this evidence shows legitimate factors caused the delays of the stated completion dates.  Therefore, it is sensible to infer the sales staff's statements about completion dates were promises made implicitly conditioned on legitimate factors and were not statements of fact known to be false or, even, not known to be true.  **Thus, no unfair practices occurred.**

*Id.* (emphasis added).

Regardless, even if Maryville knew that its statements about its campus life would prove to be false, Plaintiffs are unable to point to any universal representation that Maryville made to *every* putative class member, and that *every* putative class member considered in deciding to purchase a Maryville education.  Plaintiffs do not—and ***cannot***—represent that every putative class member reviewed Maryville's course catalog, website, and each piece of marketing material

cited in their Class Certification Motion.[47]   (Class Cert. Mot. at 3).   There is no allegation or evidence of a uniform writing that each student received, nor is there any allegation or evidence of a uniform oral statement made to each putative class member.   There is simply ***nothing*** that Plaintiffs can point to and say, "Every putative class member received or heard this false representation."   It doesn't exist, nor do Plaintiffs even attempt to claim that it does.

The only common action taken by Maryville that applied to the putative classes as a whole is the transition of classes online.   But, as a matter of law, Maryville's decision to cancel in-person classes in order to protect students' health and safety *and* to comply with government stay-at-home orders cannot be, as a matter of law, an unlawful practice.   An unlawful practice under the MMPA must be fraudulent, deceptive, or wrongful in some way.[48]   Taking action to comply with government orders and protect students does not fall under that definition.[49]

Multiple courts reviewing similar claims against universities related to transitioning courses online at the start of the COVID-19 pandemic have held that a consumer fraud claim cannot be premised upon the school's decision to hold classes virtually.   For example, in *Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 421 (N.D.N.Y. 2020), the court dismissed the student's consumer fraud claim, stating that "no reasonable consumer would expect a university to remain open for in-class instruction in the face of a pandemic and a state-mandated shutdown,

---

[47] Plaintiffs Okolo and Dean reviewed very different materials in deciding to enroll.   For example, Plaintiff Okolo reviewed Maryville's social media sites, and Plaintiff Dean did not.   Okolo Dep. (Ex. 4) at 42:8-12; Dean Dep. (Ex. 6) at 40:1-13.

[48] The purpose of the MMPA is "to protect consumers from fraudulent business practices."   *State ex rel. Nixon v. Telco Directory Publ'g*, 863 S.W.2d 596, 601 (Mo. 1993).   All objectionable actions do not violate the MMPA.   For example, merely alleging a violation of a consumer protection statute such as the TCPA does not establish a violation of the MMPA.   *Missouri ex rel. Nixon v. Progressive Bus. Publ'ns, Inc.*, 504 F. Supp. 2d 699, 706-707 (W.D. Mo. 2007) (reasoning that unsolicited faxes have not been held to be per se misleading or deceptive).

[49] Moreover, Plaintiffs' loss of part of the Spring 2020 on-campus experience was not the "result of" any conduct of Maryville in violation of the MMPA.   Rather, it was caused by the pandemic itself and the resulting government's stay-at-home orders and quarantines.   *See Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 843 (Mo. App. 2015) (finding that the defendant's alleged MMPA violations "did not cause the loss" – the foreclosure of plaintiffs' mortgage; rather, the foreclosure was caused by plaintiffs' nonpayment of their loan).

regardless of whether the school advertised on-campus learning as a strength."  Another court similarly dismissed a student's consumer fraud claim because "[n]o reasonable prospective student could consider him- or herself 'deceived' or 'misled' where the school's normal course of on-campus instruction was altered mid-semester by an unforeseen global pandemic that prompted the Governor of New York to issue an unprecedented executive order prohibiting on-campus, in-person instruction."  *Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283, 2020 WL 7486682, at *11 (W.D.N.Y. Dec. 18, 2020).  *See also Botts v. Johns Hopkins Univ.*, No. ELH-20-1335, 2021 WL 1561520, at *20 (D. Md. Apr. 21, 2021) (dismissing state consumer fraud claim because "a reasonable student could not consider himself or herself 'deceived'" by the alteration of the method of course instruction due to an unpredictable global pandemic).

Transitioning classes off of campus was not deceptive conduct, and Okolo and Dean agree that they are not making any claim regarding the propriety of the decision to close the campus as a result of the pandemic.[50]  But without that uniform, wrongful act applicable to all putative class members, Plaintiffs simply cannot establish the commonality necessary to assert an MMPA class action claim.  Because the unlawful act element cannot be shown through common evidence, the commonality element is not satisfied.

### (iii)   Whether Putative Class Members Sustained an Ascertainable Loss Cannot Be Determined on a Class-Wide Basis.

The final element required to establish an MMPA claim is proof of an "ascertainable loss" caused by the unlawful conduct.  Satisfying this element requires showing the *fact* of damage, and, here, the *fact* of damage cannot be established with common evidence across the classes.

"An ascertainable loss of money or property is an essential element of a cause of action brought under the MMPA."  *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D.

---

[50] Am. Class Action Pet. at ¶ 11; Okolo Dep. (Ex. 4) at 129:19-23; Dean Dep. (Ex. 6) at 13:15-23.

Mo. 2014).  Thus, the ascertainable-loss-of-money element is an affirmative element of Plaintiffs'

proof to establish the claim under MMPA.  As an element of Plaintiffs' prima facie case, it is not

simply a question for calculating the *amount* of damages after liability is established.

Proof of an ascertainable loss under the MMPA is determined by reviewing whether

plaintiffs received the "benefit of the bargain," i.e., whether the product or service they received

was of a value at least equal to what they paid.  *Goldsmith*, 57 F.4th at 615.  *See also Thompson*,

993 F. Supp. 2d at 1012  (stating that the benefit of the bargain is "the difference between the value

of the product as represented and the actual value of the product as received").  Here, Plaintiffs

claim that they are seeking the difference in value between on-campus and online tuition and fees.[51]

(Class Cert. Mot. at 17) ("Plaintiffs have proposed a damages methodology to calculate the benefit

of in-person educational services and on-campus facilities and services that they and the members

of the Classes did not receive despite paying the higher tuition and One Fee rates of the traditional

on-campus program.").

---

[51] Plaintiffs cannot simply argue that they purchased an in-person education and they subjectively believe that the quality of the online education they received was not as good.  Courts in Missouri and nationwide do not allow students to state a claim that in any way requires a judicial determination of the subjective quality of education.  *Raimo v. Washington Univ. in St. Louis*, No. 4:20-cv-00634, 2022 WL 796239, at *7 (E.D. Mo. Mar. 16, 2022) ("Missouri caselaw regarding the educational malpractice doctrine holds the following: . . . (4) courts should not engage in an analysis in the quality of education received; (5) courts should not hear claims that educational services provided were inadequate, substandard, or ineffective; (6) courts should not evaluate the course of instruction or the soundness of the method of teaching that has been adopted by the educational institution . . . . ") (internal citations omitted).

    For further discussion of Missouri's prohibition against the assertion of claims that require a review of the quality of education, *see also Lucero v. Curators of Univ. of Mo.*, 400 S.W.3d 1, 8 (Mo. App. 2013) (finding breach of contract and good faith and fair dealing claims "raise[d] questions concerning the reasonableness of the educator's conduct in providing educational services and, as such, [were claims] of educational malpractice, which Missouri courts have recognized as a non-cognizable claim"); *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 401 (Mo. App. 2015) (stating that one of the reasons educational malpractice claims are non-cognizable is because Missouri courts "have refused to become the overseers of both the day-to-day operation of educational process as well as the formulation of its governing policies"); *Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc.*, 277 S.W.3d 696, 700-01 (Mo. App. 2008) (listing reasons why courts do not permit students to assert claims relating to the quality of the education).

24

Plaintiffs falsely state throughout their Class Certification Motion that Maryville charges more for an in-person education that it does for an online education.   Those statements are verifiably not true on multiple grounds:

- For many graduate programs, the cost of tuition is the same regardless of whether classes are taken in-person or online.[52]   Despite Plaintiffs' statement to the contrary in their Motion, Plaintiff Okolo's MBA program was one of those programs—there was no difference in tuition cost between in-person and online classes.[53]

- For many graduate programs, the One Fee charged to on-campus students was *less* than the One Fee charged to online students.[54]   Again, this was the case for Plaintiff Okolo, who paid a $350 on-campus One Fee as compared to the $650 charged to online students in her program.[55]

- All on-campus undergraduate students are eligible to receive Maryville scholarships. Online students are not.[56]   This means that online undergraduate students pay the listed tuition rate of $500/credit hour, and the majority of on-campus undergraduate students pay substantially less than the $13,035/semester rate.[57]   For example, Plaintiff Dean received a Maryville scholarship that resulted in him paying just $6,035/semester, which was equivalent to $335.28/credit hour.[58]

Regarding the on-campus undergraduate students who received Maryville scholarships, Maryville expects Plaintiffs to argue that the Court should not consider those scholarships in determining whether a student suffered harm.   That suggestion ignores the analysis that the Court must perform in determining whether a student suffered an ascertainable loss.   Whether any student suffered a loss must be focused on what that student ***actually paid***, and if the student paid less than the sticker rate for tuition, what they actually paid must be the focal point of the analysis.

---

[52] *See* tuition and fee schedule at Ex. 5.

[53] *Id.* at OKOLO_000002.

[54] *Id.* at OKOLO_000004.

[55] *Id.*; Okolo Dep. (Ex. 4) at 171:11-17.

[56] *See* Deposition of Terrence Andrews ("Andrews Dep.," excerpts attached as Ex. 8) at 93:14-95:15.

[57] *See* tuition and fee schedule at Ex. 5 at OKOLO_00001-OKOLO_000002.

[58] Dean Dep. (Ex. 6) at 64:1-9.

In order to determine whether a student suffered an ascertainable loss requires a case-by-case inquiry into whether the tuition and fees ***actually paid*** by that particular student were more than the tuition and fees charged for online courses, as well as an individualized inquiry into what value the student received in exchange for their payments.  This analysis depends upon a number of factors in addition to the scholarships students received:

- The number of credits taken that semester, as students taking the minimum 12 credits will pay more per credit hour than students taking the maximum 18 credits;

- The student's program, as different programs have different tuition rates and fees[59];

- The number of classes that on-campus students had already signed up to take online during the Spring 2020 semester; and

- The monetary value of benefits students received in exchange for their One Fee payment, either before the campus was closed or while courses were virtual.

Again, this analysis is required in order to determine whether a student suffered any loss to begin with—it's needed to determine whether an element of the claim has been satisfied.  It ***cannot*** simply be presumed that every putative class member paid more for on-campus classes than online classes.

One reason it cannot be presumed is because the evidence shows that Plaintiff Okolo did not pay more.  Her tuition was the same regardless of whether she took classes in-person or online, and the One Fee she paid was less than that charged to online students.[60]  She did not suffer an ascertainable loss, and there are undoubtedly many other putative class members in her same situation.  However, the only way to make that determination is a case-by-base review, using individual evidence.

---

[59] *See* tuition and fee schedule at Ex. 5.

[60] *Id.* at OKOLO_000002, OKOLO_000004; Am. Class Action Pet. at ¶ 15.

Finally, the Missouri Supreme Court has held that a consumer who "did not care" about an MMPA violation or who "knew about" the violation but made the purchase anyway because the representation was immaterial to the consumer cannot be considered to have sustained a loss caused by the wrongful conduct. *State ex. rel. Coca-Cola*, 249 S.W.3d at 862. Therefore, to state an MMPA claim in the present case, students would have to contend that they would not have enrolled at Maryville had they known that the school would restrict access to the campus if a global pandemic struck. Students who "did not care" if they lost campus access or who "knew" that Maryville would take such action under these circumstances could not have sustained a loss caused by any Maryville conduct. This is yet another factor that requires individual inquiries into the putative class members' knowledge and motivations, making class certification inappropriate. *See White*, 2018 WL 3748405, at *4 (refusing to certify MMPA class because of the individual examination required to determine each person's reasoning for purchasing the product).

The question of whether each putative class member suffered an ascertainable loss caused by a violation of the MMPA is an individual, fact-specific determination that is inappropriate for resolution via summary judgment. Commonality is not satisfied.

## C.   The Claims of the Named Plaintiffs Are Not Typical of the Classes, nor Are Plaintiffs Adequate Class Representatives.

Plaintiffs also fail to establish that their claims are typical of the classes. Mo. Stat. § 52.08(a)(iii). "Typicality means that the class members share the same interest and suffer the same injury." *Moore*, 632 S.W.3d at 816. "The commonality and typicality requirements tend to merge. Both serve as guideposts for determining whether . . . a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.3 (1982).

Okolo and Dean are both inadequate class representatives because neither are members of the putative classes. *See Moore*, 632 S.W.3d at 815 (stating that to establish requirements for a class action, "the representative parties must be members of the putative class"); *White*, 2018 WL 3748405, at *2 ("To act as a class representative, a named plaintiff must be a member of the class he seeks to represent."). Okolo is not a typical or adequate class representative for the graduate student body because **she was not an on-campus student**. Rather, Okolo enrolled in a blended, hybrid program in which she took graduate classes both on-campus *and* online.[61] During the Spring 2020 semester, she was enrolled in both online and on-campus courses, so she did not, as Plaintiffs allege in their Motion, pay tuition and fees solely "in exchange for in-person and on-campus education." (Class Cert. Mot. at 4). As a result, she does not even fall under the class definition of a graduate student "enrolled in Defendant's on-campus program."[62] (*Id.* at 1).

Neither Okolo nor Dean is an adequate class representative for the MMPA claim (and their claims may not be typical of others) because they both admittedly purchased their education from Maryville for a business purpose and not for a personal, family, or household purpose.[63] Therefore, their claims are at a strong risk of dismissal upon summary judgment, and they should not be permitted to represent students who may have purchased their education on grounds covered by the MMPA.

Similarly, neither Okolo nor Dean is an adequate class representative for the MMPA claim or the unjust enrichment claim because (as set forth above) they did not pay more for their on-

---

[61] Okolo Dep. (Ex. 4) at 104:21-105:18.

[62] *Stagner v. Hulcher Servs., Inc.*, No. 16-1036-cv, 2017 WL 3166841, at *3 (W.D. Mo. July 25, 2017) (finding that the named plaintiff was not a proper class representative because he did not fall within the defined class, consisting of non-exempt employees; "For that same reason, he is not a proper class representative, and his interests as a management employee diverge from those of the non-exempt employees.").

[63] *See, supra*, at p. 19.

campus courses than the cost of Maryville's online courses.[64]  They did not suffer the ascertainable loss necessary to assert an MMPA claim, nor is Maryville's retention of their payment unjust. Okolo and Dean should not be permitted to represent students who may have paid more than the cost of the online courses they received.  *See Garcia De Leon*, 2022 WL 2237452, at *13 ("[I]f Plaintiff is unable to establish that she suffered any injury at all – a very real possibility . . . – that would necessarily doom the claims of other class members.  The premise of the commonality and typicality requirements is where the lead plaintiff's claim fails, so will those of the class.").

Although some putative class members might conceivably have the ability to assert MMPA or unjust enrichment claims against Maryville, Okolo and Dean do not.  They are not adequate representatives of all members of the putative classes, and they have not satisfied their burden of establishing that their experiences are typical of those of the putative classes as a whole.

Finally, Plaintiffs contend that their counsel are adequate.  (Class Cert. Motion at 12). Maryville does not challenge the adequacy of counsel other than to note that the attorneys from The Sultzer Law Group, P.C. are not technically admitted to practice in this case or listed as counsel of record.[65]  Maryville presumes this issue can be corrected.

## II.     Plaintiffs Have Failed to Prove Predominance of Common Claims and Superiority of the Class Action as Required by Section 52.08(b)(3).

Plaintiffs seek class action certification under Mo. Stat. § 52.08(b)(3), which requires the Court to find that the questions of law or fact common to the class members "predominate over any questions affecting only individual members" and that a class action is superior to other available methods for the fair and efficient adjudication of the matter.

---

[64] *See*, *supra*, at p. 25-26.

[65] Maryville believes that The Sultzer Law Group attorneys sought *pro hac* admission and entered their appearances in Plaintiff Dean's individual lawsuit, which was later consolidated with Plaintiff Okolo's lawsuit.  However, Plaintiff Dean's case remains open, and The Sultzer Law Group never formally entered their appearance under the present case number.

Plaintiffs contend that the common questions that predominate over the individual are (1) whether Maryville failed to issue a refund, and (2) whether Maryville retained the amounts paid by students despite transitioning classes online.  (Class Cert. Mot. at 14).  Those are not disputed points.  Maryville admittedly did not issue a refund, and it admittedly retained the amounts paid. Because those points are not disputed, they are not *questions* that will need to be addressed.

Rather, as set forth above with regard to the commonality element, the actual *disputed questions* the Court will be called upon to address in analyzing the merits of Plaintiffs' MMPA and unjust enrichment claims are those that examine each element of those claims.  That examination requires review of each putative class member's individual facts and circumstances. The following are the questions that the Court would actually be called upon to answer in order to resolve Plaintiffs' claims, and individual questions clearly predominate over any common facts:

- Did the student pay for their own tuition and fees, such that they fall under the class definition?

- Considering scholarships received, credit hours taken, and other factors, did each putative class member pay more per credit hour than the cost of a comparable online credit, such that it is inequitable or unjust for Maryville to retain the payment?

- What value did each putative class member receive for their One Fee payment, such that it is inequitable or unjust for Maryville to retain the payment?

- Did each putative class member purchase a Maryville education for a personal, family, or household use, as is necessary to state an MMPA claim, or did they purchase it for a business reason in order to advance their career prospects?

- Was each putative class member subject to a fraudulent statement, unfair practice, or unlawful practice committed by Maryville, as is necessary to state an MMPA claim?

- Did each putative class member suffer an ascertainable loss, such that they paid more for in-person classes than the cost of online classes, as is necessary to state an MMPA claim?

Determining whether Maryville is liable under Plaintiffs' causes of actions requires answering these questions, and all require highly individualized, case-by-case examinations of students'

specific situations.  Common evidence does *not* predominate, and a class action should not be certified for this reason.

Plaintiffs further contend that the documentary evidence necessary for the MMPA and unjust enrichment claims will be the same.  (Class Cert. Mot. at 14).  However, even if it were true that Maryville sent out some automated communications to all potential students (which Maryville does not concede), Plaintiffs have presented no evidence of any uniform **misrepresentation** contained in *any* document, much less in any document that was actually seen by *every* putative class member or which *caused* every putative class member a loss.

The facts that are common to the classes do not state a claim for relief.  The fact that Maryville touted its campus in advertisements but later shut down the campus, moved classes online as a result of a global pandemic, and did not issue a refund for tuition and fees are not facts that, on their own, state a claim for relief.  Whether any putative class member has a claim against Maryville depends upon the plethora of individual facts and questions presented above.

Maryville's defenses to students' claims are also not common to the class as a whole. Depending upon the student's individual facts, Maryville could argue that the student did not value an in-person education.  They might be like Plaintiff Dean, who lived off campus, took a substantial number of college credits in high school to limit his time in college, rarely participated in campus activities, and, when given the option to take all classes virtually in Fall 2020, jumped on the opportunity.  For other students, Maryville may be able to argue that they received well more in value than what they paid for the One Fee, like Plaintiff Okolo, who received textbooks, a cap and gown, and substantial services from the wellness center.  Maryville could be able to defend itself in some cases by showing that students never visited its website before enrolling or never saw certain advertisements.  And Maryville can certainly argue in individual cases that

students paid less for on-campus courses than the cost of Maryville's online courses, as is the case for both Okolo and Dean.

Courts have held that unjust enrichment claims are inherently fact-specific and do not lend themselves to class treatment. As one Court stated in a COVID tuition refund case, "The Court agrees with other courts who have refused to certify a class for unjust enrichment claims. The individualized analysis that the court must perform before granting relief on such a claim makes it unsuitable for class certification. Accordingly, the Court finds that Plaintiff has not met the predominance requirement for his unjust enrichment claim." *Grand Canyon*, 2022 WL 266726, at *7.[66]

MMPA claims like the present are also unsuitable for class treatment because there is no uniform false statement, no uniform method of determining the existence of an ascertainable loss, and no uniform means of determining causation. Even if Plaintiffs were not required to show that each putative class member relied upon representations made by Maryville (which Maryville does not admit), Plaintiffs still have to show that the statements made by Maryville *caused* students' loss. In other words, to prevail on their MMPA claim, Plaintiffs must show that Maryville's representations about the benefits of its campus were a material reason for each student to enroll, such that the loss of campus access caused them harm. Students enroll in colleges for any number of reasons, and it is impossible for Plaintiffs to establish on a class-wide basis that the loss of campus access was a detriment to each class member. *State ex rel. Coca-Cola*, 249 S.W.3d at 862.

Finally, the proposed class action in this case also fails to satisfy the superiority requirement. Plaintiffs have made broad conclusory assertions of the class action factors but have

---

[66] *Citing Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) ("[C]ommon questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts."); *see also Collinge v. IntelliQuick Delivery, Inc.*, No. 2:12-CV-00824, 2015 WL 1292444, at *14 (D. Ariz. Mar. 23, 2015) (stating that unjust enrichment claims "are inherently unsuitable for class certification").

not shown that a class action would meet this factor.  Mo. Stat. § 52.08(b)(3) and Mo. Stat. § 407.025.3(7) require courts to find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.   Sections 52.08(b)(3)(A)-(D) and 407.025.6(7)(a)-(d) contain four factors relevant to the superiority determination, including manageability and practicality.  Given all the individual elements of the claims asserted in this case, each individual's claim would require a minitrial to determine their claims, making it highly unmanageable and impractical.

Certifying the classes in this case would not serve judicial economy or the interests of justice.  Because Plaintiffs Okolo and Dean did not suffer ascertainable losses, did not purchase their educations for personal uses, and because it would not be unjust for Maryville to retain the lesser amounts that Okolo and Dean paid compared to amounts charged for Maryville's online programs, their claims are highly vulnerable to dismissal on summary judgment.  It would be contrary to the interests of absent class members to allow this case to proceed as a class action and be bound by those dismissals.  If Plaintiffs' claims are dismissed on summary judgment it will forever foreclose any other potential plaintiff from asserting a claim arising from their individual facts.

"Class actions are designed to provide an economical means for disposing of similar lawsuits while simultaneously protecting defendants from inconsistent obligations and the due process rights of absentee class members.  *State ex rel. Coca-Cola*, 249 S.W.3d at 860.  Although the express elements for class action certification are designed to accomplish these goals, courts must not forget that the underlying question in any class action certification is whether the class action device provides the most efficient and just method to resolve the controversy at hand, all things considered."  *Id.*

This case is plainly not suitable for resolution on a class-wide basis. Whether any particular student has an actionable MMPA or unjust enrichment claim requires an extensive review of the facts specific to each student. Moreover, when reviewing the facts specific to the Named Plaintiffs, they are both unable to sustain a claim and, therefore, they are not adequate class representatives. The Court should deny Plaintiffs' Motion for Class Certification, as these claims simply cannot be resolved on a class-wide basis, much less with the present class representatives.

## CONCLUSION

For all of the foregoing reasons, the Court should deny the Motion for Class Certification.

Dated: May 24, 2023         Respectfully submitted,

/s/ *Elizabeth A. Bozicevic*
Elizabeth A. Bozicevic, #59623
Aleksandra O. Rushing, #68304
HUSCH BLACKWELL LLP
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
(314) 480-1500 (telephone)
(314) 480-1505 (facsimile)
elizabeth.bozicevic@huschblackwell.com
aleks.rushing@huschblackwell.com

Martin M. Loring, #29712
Hayley E. Hanson, #54987
Allen F. James, #70675
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000
(816) 983-8080 (facsimile)
martin.loring@huschblackwell.com
hayley.hanson@huschblackwell.com
aj.james@huschblackwell.com

**ATTORNEYS FOR DEFENDANT**

34

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing has been served upon all attorneys of record for Plaintiffs this 24th day of May, 2023, via the court's electronic filing system.

/s/ *Elizabeth A. Bozicevic*

**IN THE TWENTY FIRST JUDICIAL CIRCUIT
ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| RAPULUCHUKWU C. OKOLO AND SAMUEL DEAN, on behalf of themselves and all others similarly situated, | Case No. 20SL-CC02850 |
| Plaintiffs, | |
| vs. | |
| MARYVILLE UNIVERSITY OF SAINT LOUIS, | |
| Defendant. | |

**REPLY SUGGESTIONS IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## I.    INTRODUCTION

Defendant Maryville University of Saint Louis ("Defendant") has ubiquitously marketed and represented its on-campus undergraduate program as providing access to on-campus instruction, facilities, services, and activities.[1] Defendant has always uniformly assessed a higher rate for both tuition and the One Fee for the on-campus undergraduate program than the online-only undergraduate program.   In the middle of the Spring 2020 term, Defendant uniformly transitioned all of its students in the on-campus program to a remote-only program, while refusing to provide any refunds to its students for subsequently providing them with an online-only educational service that Defendant itself has definitively deemed has a lower market value. Defendant has records of each of its students, how much in tuition and One Fees they were charged, and the difference of value between these rates and the rates it assesses for its online-only program.   This is the most straight forward class certification matter in this genre of cases in

---

[1] Plaintiff Okolo withdraws her motion for certification of the Graduate Class. Accordingly, all references to "Plaintiff" refer to Plaintiff Dean and all references to the "Class" refer to the Undergraduate Class.

the country.

Meanwhile, Defendant's challenges to class certification primarily relies on often rejected assertions regarding potential offsets from financial aid provided to some students, which courts have held is a potential defense that is to be determined on a class-wide basis, which therefore, fails to serve as a bar to class certification. Furthermore, Defendant erroneously asserts that its lack of intent to defraud and individual student reliance on the representations bar class certification, even though the claim under the Missouri Merchandising Practices Act ("MMPA") requires neither intent nor reliance. Therefore, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Class Certification, consistent with similar rulings throughout the country.

## II.     ARGUMENT

Defendant's Opposition highlights the appropriateness of certification in this matter. Whether the Court considers the common questions proposed by Plaintiff or Defendant, common answers will predominate over any individualized damages inquiry. Plaintiff has adequately represented the Class to this point and will continue to do so. Since the same documents and facts would be presented by every member of the Class if they were forced to bring individual suits, class adjudication is superior to any alternative.

### A.  The Proposed Class is Ascertainable and Numerous

Defendant does not dispute that over 3,600 students were enrolled in Defendant's on-campus program during the Spring 2020 semester, all of whom were transitioned to remote instruction. *See* Opposition, at pp. 9-11; *see* Ex. 1[2]. Likewise, Defendant cannot challenge the fact

---

[2] Referenced exhibits are attached to the Declaration of (Eddie) Jae K. Kim in Support of Plaintiffs' Motion for Class Certification, except for Exhibits 29-31 which are attached to the Declaration of (Eddie) Jae K. Kim in Support of Reply Suggestions in Support of Plaintiffs' Motion for Class Certification ("Reply Decl.").

that all of the Class members – students of the undergraduate on-campus program – were charged greater rates of tuition and fees than their counterparts in the online-only program. Ex. 15 (Defendant's academic catalog outlining its tuition and One Fee rates). Instead, Defendant improperly attempts to distract the Court by pointing to potential class-wide defenses as being the basis for challenging the numerosity requirement. Specifically, Defendant claims that class membership cannot be based on the fact that Defendant assessed an amount of tuition and fees that Defendant publishes and in fact charged its students, that is greater than what it charges for the students of the online-only program.  However, to support this assertion, Defendant relies on arguments that have been oft rejected by numerous courts.

First, Defendant asserts that financial aid provided to some students is relevant to class membership.  However, courts have rejected the notion that financial aid is determinative of damage to class members, and that this is in any way a defense that is applicable on a class-wide basis and therefore does not serve as a bar to class certification, as discussed at length in, *infra*, Section III.  *See Arredondo*, 618 F. Supp. 3d at 949–50.

Second, even if only students who never received a scholarship could constitute the class, this figure would anyways easily meet the numerosity requirement.  *See* Reply Decl., Ex. 29 (Defendant does not provide scholarships to approximately 7% of its on-campus student population, or about 252 students); *see also* MARYVILLE UNIVERSITY, *Financial Aid Scholarships*, https://www.maryville.edu/admissions/financial-aid/scholarships/ (last accessed May 26, 2023) (same). Although there is no specific number of class members that makes a class sufficiently numerous, numerosity has been found to have been satisfied with as few as eighteen class members. *Dale v. DaimlerChrysler Corp.*, 204 S.W.3d 151, 168 (Mo. App. W.D. 2006) (citing cases); *see also*, *Frank v. Enviro-Tech Servs.*, 577 S.W.3d 163, 168 (Mo. Ct. App. 2019) (Classes

of approximately 80 people satisfy numerosity). Whether there are 3,600 class members or 252, numerosity is easily satisfied.

Additionally, Defendant argues that the Class is not ascertainable because it is unclear who paid tuition on behalf of the students. Numerous courts have certified classes of students even when their tuition and/or fees were paid by a variety of sources, including parents. *See Wright v. S. New Hampshire Univ.*, 565 F. Supp. 3d 193, 201 (D.N.H. 2021) (granting preliminary settlement approval of a class of students defined as those who paid or whose tuition was paid on their behalf); *Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937, 949 (C.D. Cal. 2022) (rejecting defendant's argument that the class was not ascertainable because the true payer of tuition and fees could not be identified). If the Court were inclined to consider Defendant's argument, which it should not, the proposed class definition can be slightly modified as follows:

> All undergraduate students who paid tuition and/or Mandatory Fees, *or on whose behalf such payments were made, and were enrolled in one (1) or more of Defendant's on-campus courses* during the Spring 2020 semester and whose tuition and/or One Fee were not refunded (the "Class").

*See Green v. Fred Weber, Inc.*, 254 S.W.3d 874, 877 (Mo. 2008) (noting court may modify class definition and certify class as modified); *Elsea v. U.S. Eng'g Co.*, 463 S.W.3d 409, 416 (Mo. Ct. App. 2015) ("class can be modified as the case progresses"). In fact, courts have held the exact opposite of Defendant's assertion – that anyone who might have paid tuition and fees on behalf of a student does *not* have standing to bring claims on behalf of the student that was assessed the tuition and fees. *See, e.g., Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 236 (N.D.N.Y. 2021), *on reconsideration sub nom. Faber v. Cornell Univ.*, No. 3:20-CV-467 (MAD/ML), 2021 WL 4950287 (N.D.N.Y. Oct. 25, 2021) (denying standing to a parent who paid tuition for his student child).

Thus, the Class is numerous and ascertainable from Defendant's records.

**B.  There are Common Answers to the Class's Common Questions**

Defendant concedes that there are common answers to common questions that affect all members of the Class, but Plaintiff will still address the substance of the argument despite Defendant's admission. *See* Opposition, at 12-13 (answering common questions put forth in Plaintiffs' Motion for Class Certification in the affirmative).

*1.   There are Common Answers to the Class's Unjust Enrichment Claim*

First, Defendant's focus on who paid the students' tuition and/or One Fee misses the forest for the trees, as discussed above concerning numerosity. Common evidence – Defendant's bursar records – will answer the question of whether the tuition and/or One Fee that Defendant directly charged its students – and its students alone – was paid. *See McAllister v. St. Louis Rams, LLC*, No. 4:16-CV-172 SNLJ, 2018 WL 1299553, at *7 (E.D. Mo. Mar. 13, 2018), *amended in part*, No. 4:16-CV-172 SNLJ, 2018 WL 2869025 (E.D. Mo. Apr. 19, 2018) (finding defendant's documents sufficient for business were sufficient to identify the class).

Next, Defendant agrees with Plaintiff that the Class can demonstrate the "inequity" of Defendant's conduct by showing the students "paid more than the value of what [Defendant] gave them." Opposition, at p. 14.[3] As Defendant implicitly admits, Plaintiff's proposed damages methodology is a common answer to the question of whether members of the Class were damaged. *Id.*, at p. 15. While the tuition and One Fee may vary depending on a student's program, the rate is uniform within the program, which also provides the basis of the value for the services rendered between on-campus and online programs in exchange for tuition and the

---

[3] Defendant's argument that it did not receive a windfall because it provided iPads due to COVID-19 is undermined by its admission that it provides iPads as part of students' One Fee. *See* Opposition, at p. 16; *see also* Opposition, Ex. 7 ("all on-campus students receive an iPad as part of their [One Fee] payment.").

5

One Fee. *See* Ex. 15. There is no requirement that the solution to the proposed calculation be the same for all class members. *See Cromeans v. Morgan Keegan & Co.,* 303 F.R.D. 543, 559 (W.D. Mo. 2014) ("Such variation [in the amount of damages for each class member] does not defeat the common issue of liability and the calculation of damages is based on a single model applicable to all members of the class."); *see also Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 602 (8th Cir. 2020) ("Slight variation in actual damages does not defeat predominance if there are common legal questions and common facts."). The need for inquiry as to individual damages does not preclude a finding of predominance. *State ex rel. Am. Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 488 (Mo. 2003). (citations omitted). "The predominance of the common issue is not defeated simply because 'individual questions may remain after interpretation of the contract – ***questions of damages*** or possible defenses to individual claims'". *State ex rel. Am. Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 488-89 (Mo. 2003). (citations omitted; emphasis added).

Additionally, whether there should be an offset for scholarships is a uniform defense applicable to all members of the Class. *Arredondo*, 618 F. Supp. 3d at 949–50 ("Defendant does not compare the amount paid for in-person classes less offsets to the cost of online classes less offsets because Defendant claims it does not offer scholarships to students who attend classes online. Defendant incorrectly omits consideration of the tuition offsets in the comparison to the cost for online classes. […] An appropriate damages calculation takes into account tuition offsets for the calculation of in-person and online tuition costs.") (internal citations omitted). Therefore, the issue of offsets is a class-wide defense that is no bar to the granting of class certification.

Just as in other instances where courts have found commonality satisfied for classes asserting uniform claims for unjust enrichment, the Court should find that commonality is

satisfied here.[4] *See e.g.*, *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.* ("*Dollar General*"), No. 16-02709-MD-W-GAF, 2019 WL 1418292, at *21 (W.D. Mo. Mar. 21, 2019) (certifying 16 state-wide classes asserting unjust enrichment claims, including a class of Missourians); *Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 220 (Mo. Ct. App. 2007) (affirming certification of unjust enrichment class after reviewing certification of the same claim in other jurisdictions). Likewise, unjust enrichment claims in other similar university tuition and fee cases have also been successfully certified as part of a class action. *Ninivaggi v. Univ. of Delaware*, No. 20-CV-1478-SB, 2023 WL 2734343, at *10 (D. Del. Mar. 31, 2023) (certifying class of students asserting an unjust enrichment claim as a result of COVID-19 closures); *Staubus v. Regents of Univ. of Minnesota*, No. A22-1749, 2023 WL 2663049, at *2 (Minn. Ct. App. Jan. 10, 2023) (denying discretionary review of trial court's certification of class of students asserting unjust enrichment claim as a result of the COVID-19 closures); *Wright v. S. New Hampshire Univ.*, 561 F. Supp. 3d 211, 213 (D.N.H. 2021) (granting final approval of settlement for class of students asserting unjust enrichment claim due to COVID-19 closures). Therefore, certification of the unjust enrichment claim is appropriate here.

### 2.   There are Common Answers to the Class's MMPA Claim

Defendant dedicates a significant portion of its Opposition to attacking the Class's MMPA claims with the specter of possible evidence that Defendant could use to collectively attack the

---

[4] Defendant relies upon the class certification decision in *Little v. Grand Canyon University*, No. CV-20-00795, 2022 WL 266726 (D. Ariz. Jan. 28, 2022), to argue that unjust enrichment is not appropriate for certification, but Defendant fails to clarify that the *Little* court specifically applied Arizona law and the plaintiff's unjust enrichment claim is still alive. *Little,* 2022 WL 266726, at *7. Defendant also misappropriately relies upon *Smith v. Ohio State Univ.*, 200 N.E.3d 1249 (Ohio App. 2022), to argue that the transition to remote-only education is not an injury by itself, but the *Smith* court focused its analysis on the lack of evidence analyzed by the trial court not whether the members of the class were injured. *Smith*, 200 N.E.3d, at 1261-65.

Class across the board. However, the mere possibility of a class-wide defense is no basis to deny class certification. *See Mayo v. UBS Real Est. Sec., Inc.*, No. 08-00568-CV-W-DGK, 2011 WL 1136438, at *6 (W.D. Mo. Mar. 25, 2011) (mere possibility of a defense is insufficient to defeat certification). "In fact, the predominance requirement can be satisfied if there is one single common issue that is the overriding issue in the litigation. This single predominant issue need not even be dispositive of the case. [T]he fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance." *Smith v. Am. Family Mut. Ins. Co.*, 289 S.W.3d 675, 688 (Mo. App. W.D. 2009) (citations omitted; internal quotations omitted). Furthermore, the predominance of the common issue is not defeated simply because "individual questions may remain after interpretation of the contract - questions of damages ***or possible defenses*** to individual claims". *State ex rel. Am. Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 488-89 (Mo. 2003). (citations omitted.) (emphasis added.)  In fact, "the circuit court has the power to dictate measures enabling Defendants the opportunity to assert defenses to certain categories of class members within the class action." *Elsea v. U.S. Eng'g Co*., 463 S.W.3d 409, 424 (Mo. Ct. App. 2015).  In any event, each of the potential challenges to the MMPA claim raised by Defendant are either inapplicable, or can be determined on a class-wide basis, and, therefore, fails to bar class certification.

> a. <u>Students Enroll in Defendant's Educational Programs for Non-Business Purposes</u>

Defendant attempts to apply a heightened standard to Plaintiff's Motion. *See* Opposition, at p. 9 (acknowledging class certification decisions is "independent of ultimate merits" despite arguing that the Court should deny class certification because Plaintiff's claims are subject to summary judgment). But this Court has already determined that Plaintiff – and thus the Class – stated a claim for violation of the MMPA on the basis that Defendant's statements "suggest that

part of an education is personal enrichment and fulfillment." Order, at p. 4 (filed Oct. 26, 2021). Indeed, the Class has presented common evidence about Defendant's educational programs being offered for the purpose of personal fulfillment and enrichment. Accordingly, the claims presented by the Class in this litigation vastly differ from the examples relied upon by Defendant. For instance, in *Anderson v. High-Tech Institute*, No. 11-0506-CV, 2013 WL 12203311 (W.D. Mo. Jan. 25, 2013), the defendant is a "vocational and technical institution" that aggressively advertised its job placement and graduate pay rates. *Anderson*, 2013 WL 12203311, at *1-2.[5] Meanwhile, Plaintiff's common evidence – Defendant's own statements – suggests that Defendant's educational programs are offered primarily for personal fulfillment and enrichment, not business reasons. *See* Ex. 6 (Describing Defendant's university as "a place that will help to expand your worldview and consider a variety of perspectives, and a place that will transform and push you so that you enter the next phase of your life prepared and confident."); Ex. 14 (Defendant's "75+ programs, designed to give you the knowledge, tools, and experience to live successfully."). This is further supported by Plaintiff's deposition testimony, in which he described seeking his degree for such non-business purposes. *See* Ex. 22, at 26:9-23 (Plaintiff describing wanting to go to college to find people with similar interests).

### b.  *Defendant Engaged in Uniform, Unfair Practices*

Under the MMPA, overcharging consumers for services provided is an unfair practice. *See e.g.*, *Burnett v. Nat'l Ass'n of Realtors*, No. 19-CV-00332-SRB, 2022 WL 1203100, at *19 (W.D. Mo. Apr. 22, 2022) ("Based on common questions regarding Defendants' conduct and the

---

[5] Defendant also relies upon *MacDonald v. Thomas M. Cooley Law School*, 880 F. Supp. 2d 785 (W.D. Mich. 2012), which is not binding on this Court. Even if the Court were to consider the advisory opinion, *MacDonald* is distinguishable because the plaintiffs specifically attended law school to acquire jobs in the legal profession and alleged as such, unlike here, where Plaintiff has made no such allegations and did not attend an educational institution that had a singular focus.

alleged injury of an overcharge the Court finds common issues predominate over any individualized issues of how the house was used."); *Finnegan v. Old Republic Title Co. of St. Louis*, 246 S.W.3d 928, 930 (Mo. 2008) (reversing dismissal of MMPA claim for overcharge).

Furthermore, the unfair practice of overcharging consumers for services rendered does not require that consumer *rely* upon a defendant's pricing structure or that a defendant intend to put the screws to its consumers in order for injured consumers, such as Plaintiff, to bring a claim for violation of the MMPA. *See Dollar General*, 2019 WL 1418292, at *25, n. 15 (the MMPA does not require a showing of reliance). Neither does Defendant had to have *intended* to defraud the Class with its uniform and ubiquitous representations about access to on-campus instruction, facilities, services, and activities that it disseminated to the students of its on-campus undergraduate program. Instead, a defendant's intent is not a requirement as the MMPA operates based on strict liability. *See State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 635 (Mo. App. 1988) ("It is the defendant's conduct, not his intent, which determines whether a violation has occurred."). Therefore, neither reliance nor intent serve to create individualized issues nor serve as effective class-wide defenses.

Additionally, Plaintiff and the Class are not challenging Defendant's compliance with government orders in the name of health and safety but are challenging the unfair practice of promising on-campus instruction, facilities, services, and activities then failing to follow through on those promises for a portion of the Spring 2020 term, while refusing to issue prorated refunds for the difference between the value of the in-person education purchased and the value of the online education received. *See* Motion, at p. 2 (filed Apr. 24, 2023). Simply put, Defendant refuses to address its failure to issue refunds and instead attempts to muddy the Court's analysis with a focus on fraudulent conduct to create individualized issues where none exists. *See* Opposition, at

pp. 20-23. Every member of the Class was enrolled in Defendant's on-campus program, was assessed the tuition and/or One Fee by Defendant, and – as Defendant admitted – were all uniformly transitioned to remote only, online education without the issuance of a prorated refund to accommodate the difference in the value of services set by Defendant. *Id.*, at pp. 22-23.

Finally, the Class members have already demonstrated that they do care about the MMPA violation because they specifically purchased in-person education and access to on-campus facilities and services instead of the alternative – purchasing Defendant's online educational services – unlike in *State ex rel. Coca-Cola Co. v. Nixon,* 249 S.W.3d 855, 862 (Mo. 2008), where "[m]any consumers had no choice of the brand of fountain diet cola they purchased at any given location, let alone the particular type of sweetener used in one brand, Diet Coke." As part of the universally enormous, impactful, and life-changing decision of attending college, the Class specifically chose to attend an on-campus program instead of an online-only program. Accordingly, no individualized issues arise over whether the members of the Class cared about receiving the benefit of the in-person education for which they bargained.

Therefore, common evidence will provide common answers to common questions for the Class's MMPA claim, which satisfies the commonality requirement and warrants certification.

### C. Plaintiff is an Adequate Representative with Typical Claims

Defendant appears to blend its typicality and adequacy arguments against Plaintiff into one issue, which Plaintiff will address in the same manner. Using the modified definition of the Class set forth above, it is clear that Plaintiff's' claims are typical. Plaintiff enrolled in Defendant's on-campus courses for personal enrichment and fulfillment.[6] *See* Ex. 22, at 26:9-23

---

[6] Defendant attempts to make much out of Plaintiff not enjoying every class mandated by Defendant in order to achieve his degree. However, Plaintiff being forced to complete a few classes he did not find "fun" or were taken for leisure is likely not atypical of the Class or any of

(Plaintiff describing wanting to go to college to find people with similar interests). Further, Plaintiff suffered ascertainable losses. Plaintiff's losses can be ascertained as the difference between Defendant's rates for the on-campus tuition and One Fee versus Defendant's rates for the online-only tuition and One Fee. For example, Plaintiff was charged $13,035 for the Spring 2020 semester or $724.17 per credit based on his 18 units. If he had enrolled in an online program, he would have been charged $500.00 per credit. Thus, Plaintiff Dean's ascertainable loss is 43% of $224.17 per credit or $96.39 per credit. *See* Motion, at p. 17. Thus, Plaintiff's claims are typical of the Class; therefore, he is an adequate class representative.

## III.    PREDOMINANCE AND SUPERIORITY ARE SATISFIED

Plaintiff has proposed a methodology to ascertain the loss suffered by each member of the Class based on the benefit of their bargain with Defendant. *See* Motion, at pp. 17-19; Opposition, at p. 24. This methodology uses the tuition and One Fee rates set, published, advertised, and actually assessed by Defendant. *See* Ex. 15 (Defendant's 2019-2020 Academic Catalog). Defendant does not deny that, for its undergraduate programs, it charged students more for on-campus education than online, remote only education. *See generally*, Opposition.

Yet, Defendant wants to pretend that it effectively charges students less for tuition and the One Fee while ignoring the scholarships that online only students may have received to bolster its argument that there is no ascertainable loss. *See* Opposition, at p. 25. However, whether scholarships should be considered for determining damages is certainly a class-wide defense and, thus, does not bar the granting of class certification. *See Cromeans,* 303 F.R.D. 543, 559; *see also*

---

university student's circumstances. *See e.g.*, Reply Decl., Ex. 30 (Defendant's mandated courses for an actuarial science degree); *see also* MARYVILLE UNIVERSITY, *Degree Planning Sheets*, https://www.maryville.edu/academicaffairs/degree-planning-sheets/ (last accessed May 30, 2023).

*Custom Hair Designs by Sandy*, 984 F.3d 595, 602. Furthermore, only considering discounts for in-person programs to the exclusion of any online discounts is not appropriate when Defendant is arguing that the Court should only consider what the Class "actually paid." Opposition, at p. 10; *see Arredondo*, 618 F. Supp. 3d 937, 949–50. If Defendant truly valued the on-campus educational experience it offered students to a lesser degree than it purports in its advertisements, it would uniformly lower the tuition and One Fee rate for all students instead of a smaller portion. *See* Ex.15; *see also* Reply Decl., Ex. 29. Furthermore, other courts have found that scholarships funded by third-party donors (such as alumni) that are not limited to just paying for tuition and fees do not qualify for offsetting damages. *See Miazza v. Board of Sups. of Louisiana State University and Agricultural and Mechanical College*, No. C-696918, at ¶¶ 38-46 (19th Judicial District, May 19, 2023) (Reply Decl., Ex. 31) (defendant's "argument fails to consider the fact that financial aid goes to pay the entire cost of a student's education, not just tuition and fees."). Other than potentially discounting tuition due to scholarships, which is a class-wide defense to be resolved by the trier of fact, Plaintiff's damages methodology accounts for the factors put forth by Defendant. *Compare* Opposition, at p. 26 *with* Motion, at pp. 16-17.

Finally, other courts in this jurisdiction as well as numerous other courts have certified classes asserting unjust enrichment and/or MMPA claims on the basis that class adjudication was superior. *See e.g.*, *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 85 (Mo. Ct. App. 2011); *Dale v. DaimlerChrysler Corp*, 204 S.W.3d 151, 181 (Mo. Ct. App. 2006); *Plubell v. Merck & Co.*, 289 S.W.3d 707, 714 (Mo. App. 2009*)*; *Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 226 (Mo. App. 2007).; *Basso v. New York Univ.*, 363 F. Supp. 3d 413, 424 (S.D.N.Y. 2019).

Therefore, the predominance and superiority requirements under Rule 52.08(b)(3) are satisfied.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff Dean respectfully requests that the Court certify the

Undergraduate Class.

Dated:  May 31, 2023                    By: /s/         Tiffany M. Yiatras

Tiffany M. Yiatras (MO Bar No. 58197)
**CONSUMER PROTECTION LEGAL, LLC**
308 Hutchinson Road
Ellisville, Missouri 63011-2029
Tele: 314-541-0317
Email: tiffany@consumerprotectionlegal.com

Gary F. Lynch (admitted *pro hac vice*)
Lynch Carpenter, LLP
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
gary@lcllp.com

(Eddie) Jae K. Kim (admitted *pro hac vice*)
Tiffine E. Malamphy (admitted *pro hac vice*)
Lynch Carpenter, LLP
117 East Colorado Blvd, Suite 600
Pasadena, CA 91105
(619) 756-6991
ekim@lcllp.com
tiffine@lcllp.com

Francis J. "Casey" Flynn, Jr., $52358
Law Office of Francis J. Flynn, Jr.
6057 Metropolitan Plz.
Los Angeles, California 90036
(314) 662-2836
casey@lawofficeflynn.com

Jason P. Sultzer (seeking admission *pro hac vice*)
Jeremy Francis (seeking admission *pro hac vice*)
The Sultzer Law Group, P.C.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
(845) 705-9460
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

Jeffrey K. Brown (seeking admission *pro hac vice*)
Michael Tompkins (seeking admission *pro hac vice*)
Brett R. Cohen (seeking admission *pro hac vice*)
Leeds Brown Law, PC
One Old County Road, Suite 347
Carle Place, New York 11514
(516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 31, 2023, I electronically filed the foregoing with the Clerk of the Court using the Court's electronic filing system, which will send a notice of electronic filing to all counsel of record.

/s/      Tiffany M. Yiatras

15