Exhibit B

The Honorable Judith H. Ramseyer
Hearing: June 28, 2023
9:00 AM

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY**

| | |
|---|---|
| ALEXANDER BARRY, individually and on behalf of all others similarly situated, | No. 20-2-13924-6-SEA |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| v. | |
| UNIVERSITY OF WASHINGTON, | |
| Defendant. | |



THIS MATTER having come before the Court on Plaintiff's Motion for Class Certification (the "Motion"), following the Court's review of the Motion, the papers submitted in support and in response, the hearing thereon, after conducting a rigorous analysis to ensure that the Plaintiff has satisfied the requirements of CR 23(a) and CR 23(b)(3), and good cause appearing, the Motion is hereby GRANTED.

## I.    STANDARD OF REVIEW

Class actions, authorized by CR 23 in Washington, are an essential tool for adjudicating cases with multiple claims that involve similar factual and/or legal inquiries and that are too modest to prosecute individually. *Chavez v. Our Lady of Lourdes Hospital at Pasco*, 190 Wash. 2d 507, 514, 415 P.3d 224 (2018) (other citations omitted). Washington courts liberally interpret CR 23 because the rule "avoids multiplicity of litigation, saves members of the class the cost and trouble of filing individual suits, and frees the defendant from the harassment of identical future litigation." *Weston v. Emerald City Pizza, LLC*, 137 Wash. App. 164, 168, 151 P.3d 1090 (2007) (quoting *Smith v. Behr Process Corp.*, 113 Wash. App. 306, 318, 54 P.3d 665 (2002) (cleaned up).

To certify a class, Plaintiff must meet all of the requirements under CR 23(a), numerosity, commonality, typicality, and adequacy of representation, and at least one subdivision of 23(b). *Schwendeman v. USAA Casualty Insurance Co.*, 116 Wash. App. 9, 18, 65 P.3d 1 (2003). These rules provide:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> . . . .

> (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair

- 1 -



and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

CR 23(a); CR 23(b)(3). As noted further below and in the Court's oral ruling on June 28, 2023, incorporated herein, the proposed class meets the requirements of CR 23(a) and CR 23(b)(3).

## II.    THIS CASE SATISFIES THE CR 23(a) PREREQUISITES

To start, Plaintiffs have carried their burden of demonstrating this case meets each of the four CR 23(a) prerequisites.

***CR 23(a)(1) Numerosity***. First, CR 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. When a class is large, joinder is usually impracticable. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982). Joinder is generally deemed impracticable in classes with over 40 members. *Chavez*, 190 Wash. 2d at 520. Here, numerosity is satisfied because the proposed class contains over 56,000 members, including undergraduate and graduate students. Compl. ¶ 24. *See Little v. Grand Canyon Univ.*, No. CV-20-00795-PHX-SMB, 2022 WL 266726, at *5 (D. Ariz. Jan. 28, 2022) (finding numerosity met and certifying class in COVID-19 fee refund case where proposed class included over 20,000 students).

***CR 23(a)(2) Commonality***. Second, the commonality element of Rule 23(a)(2) requires only that "there are questions of law or fact common to the class." CR 23(a)(2). "Commonality" under CR 23(a)(2) is a "low threshold test" that "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *Smith*, 113 Wash. App. at 320. Commonality is met if the "course of conduct" that gives rise to the cause of action affects all the class members. *Pellino v. Brink's Inc*., 164 Wash. App. 668, 682, 267 P.3d 383 (2011) (commonality satisfied when alleged facts indicate defendant was engaged in common course of conduct in relation to all potential class members). Plaintiff satisfies the low commonality hurdle. Common issues here include: (1) whether UW and Class members had a contract; (2)

- 2 -



1  whether those contracts obligated UW to provide in-person instruction; (3) whether those

2  contracts obligated UW to provide access to campus facilities and in-person resources; (4)

3  whether UW breached the contracts; (5) whether UW unlawfully kept funds paid; (6) whether

4  UW was unjustly enriched by keeping the funds paid; and (7) the fact and measure of damages

5  derived from verifiable class-wide information maintained by UW. Commonality is met because

6  the proof will focus on UW's conduct and will be common to the Class.

7        ***CR 23(a)(3) Typicality***. Third, CR 23(a)(3) requires that the "claims or defenses of the

8  representative parties [be] typical of the claims or defenses of the class." CR 23(a)(3). The

9  typicality requirement is met when the claims of the representative plaintiffs arise from the same

10  course of conduct that gives rise to the claims of the other class members, and where the claims

11  are based upon similar legal theories. *John Doe L v. Pierce County*, 7 Wash. App. 2d 157, 203,

12  433 P.3d 838 (2018) (citing *Pellino*, 164 Wash. App. at 684). Here, Plaintiff's claims are typical

13  because they arise from the same events and course of conduct and common legal and remedial

14  theories. Plaintiff's claims, like those of Class members, stem from a contract with UW for the

15  provision of in-person education and access to campus facilities and in-person resources.

16  Plaintiff, like members of the Class, was billed by UW for tuition and fees specific to students

17  who registered for in-person courses; and paid the demanded tuition and fees. Compl. ¶ 8. UW

18  stopped providing the promised in-person instruction and access to campus facilities and in-

19  person resources for all students simultaneously. Def. Ans. ¶ 3. UW then retained full price for

20  tuition and fees. Plaintiff alleges UW must refund the pro-rated fees for campus access and in-

21  person resources that UW did not provide when it shuttered its campus. Defendant raises factual

22  differences between students to oppose this finding.  These issues stray into the merits of

23  Plaintiff's allegations and his burden of proof as to the claims.  Those issues need not be

24  determined at this stage.  Since each Class member's claims arise from the same course of UW's

25  conduct, and each Class member makes similar legal arguments, the typicality requirement is

26  met.

27        ***CR 23(a)(4) Adequacy***. For the final CR 23(a) prerequisite, CR 23(a)(4) requires that the

28

ORDER GRANTING PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA

HAGENS BERMAN

representative parties will "fairly and adequately protect the interests of the class." CR 23(a)(4).

CR 23(a)(4) utilizes a two-part test is: (1) whether any substantial conflicts of interest exist

between the representatives and the class; and (2) whether the representatives will prosecute the

action vigorously on behalf of the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

1998). Plaintiff and his counsel satisfy both parts of this test.

First, the Court finds that Plaintiff's interests are aligned with those of Class members in

obtaining a recovery that will provide each with the benefit of their bargain. In addition to these

aligned interests, Plaintiff has no conflicts with the Class and seeks to hold UW accountable.

Plaintiff has committed to prosecuting this litigation and will continue to advocate for the best

interests of the Class. Plaintiff and proposed Class Counsel will vigorously represent the Class.

In addition, proposed Class Counsel, Hagens Berman Sobol Shapiro LLP and Lynch

Carpenter LLP are each qualified. Both law firms include experienced class action lawyers, with

success in litigating issues relating to the provision of in-person education and campus access

during the Spring 2020 quarter, working together and separately. Plaintiff and proposed Class

Counsel satisfy the adequacy inquiry, satisfying each requirement of CR 23(a).

## III.   CR 23(B)(3)'S PREDOMINANCE AND SUPERIORITY REQUIREMENTS ALSO ARE MET HERE

Next, CR 23(b)(3) permits class certification if "common questions of law predominate

over questions affecting only individual members and that a class action is the superior method

of handling the claim." CR 23(b)(3).

## A.   Common issues predominate given the central issues raised in this litigation.

Predominance tests whether the proposed class is sufficiently cohesive to call for

adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)

"[T]he predominance requirement is not defeated merely because individual factual or legal

issues exist; rather, the relevant inquiry is whether the issue shared by the class members is the

dominant, central, or overriding issue shared by the class." *Miller v. Farmer Bros. Co.*, 115

Wash. App. 815, 825, 64 P.3d 49 (2003). When one or more of the central issues are common to

the class and can be said to predominate, the action may be considered proper under CR

- 4 -

HAGENS BERMAN

23(b)(3), "even though other important matters will have to be tried separately, such as damages or some defenses peculiar to some individual class members." *Tyson Foods Inc. v. Bouaphakeo*, 577 U.S. 422, 453 (2016). In determining whether predominance is met, the court engages "in a pragmatic inquiry into whether there is a common nucleus of operative facts to each class member's claim." *Smith*, 113 Wash. App. at 323. The "predominance standard is not strictly applied to every aspect of the plaintiffs' claims; rather, questions of judicial economy are central." *Sitton*, 116 Wash. App. at 255. Here, this Court concludes that common questions predominate. Plaintiff identifies key evidence common for all Class members, such as: whether UW, based on UW's conduct and representations, including during enrollment, course registration, billing, and payment, and students paying tuition and fees, formed a contract that required UW to provide in-person instruction and access to facilities and in-person services; whether UW breached that contract when it closed campus; and the calculation of damages. This evidence directly affects every Class member's effort to show liability and every Class member's entitlement to relief.

Defendant targets much of its opposition to class certification here, arguing Plaintiff's proposed methodology is flawed.  It does not and cannot, the argument goes, account for myriad differences between class members to place a value on the education for which an individual paid and, accordingly, how the change to remote learning at the height of the Covid-19 pandemic may have affected or reduced that value. The Court finds that these issues also are properly raised on the merits of Plaintiffs' allegations and methodology for calculating damages. Defendant will have the opportunity on the merits to challenge and dispute Plaintiff's claims. Even if some individual differences among class members are shown, the essential question here is whether allegations arise from a "common nucleus of operative facts".  *Smith*, 113 Wash. App. at 323.  Plaintiff will present the same class-wide evidence that UW's course of conduct, transitioning to online-only education, caused economic loss to Plaintiff and Class members. These common issues predominate over any individual issues, rendering class treatment appropriate.

HAGENS BERMAN

**B.    A class action is superior to individual actions covering the same issues and arising out the same transition to remote learning.**

The Court finds that a class action here is superior to the alternative of individual actions. Where individual damages are small, the class vehicle is usually deemed superior. *Chavez*, 190 Wash. 2d at 523. "[F]orcing numerous plaintiffs to litigate the alleged pattern or practice ... in repeated individual trials runs counter to the very purpose of a class action." *Sitton*, 116 Wash. App. at 256–57. CR 23(b)(3) includes four factors for this inquiry: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." CR 23(b)(3). Here, class action treatment is superior to adjudicate the claims in this matter.

The first factor favors certification because it would cost Class members more to litigate this action individually than the relatively small amount of damages they will recover. There is no reason to believe putative Class members have any interest in controlling the litigation.

The second factor favors class certification, as neither Plaintiff nor his counsel are aware of any other litigation regarding this matter against UW. *See* Barry Decl. ¶ 10; Kurowski Decl. ¶ 15; Ciolko Decl. ¶ 8.

The third superiority factor also favors certification. This Court is the logical and desirable forum as UW is located in King County, where this case is being litigated, and the Court is familiar with the factual and legal issues. Holding separate trials for claims that could be tried together would be costly and inefficient. *Elter v. United Servs. Auto. Ass'n*, 17 Wash. App. 2d 643, 661, 487 P.3d 539 (2021), *review denied sub nom. Elter v. USAA Cas. Ins.*, 198 Wash. 2d 1027, 498 P.3d 957 (2021).

The final superiority factor—manageability—focuses on the "practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). That individual issues might exist or take some time to

- 6 -



resolve does not make a class action unmanageable. *Chavez*, 190 Wash. 2d at 521. Trial courts have a "variety of procedural options to reduce the burden of resolving individual damage issues, including bifurcated trials, use of subclasses or masters, pilot or test cases with selected class members, or even class decertification after liability is determined." *Sitton*, 116 Wash. App. at 255. This case can be tried in an efficient matter, and the Court foresees no manageability problems that make over 56,000 individual actions a better alternative. As a result, Plaintiff shows the superiority prong of CR 23(b)(3) has been met here.

## IV.   THE PROPOSED CLASS IS ASCERTAINABLE

While CR 23 does not explicitly include an ascertainability requirement, some appellate courts have reviewed ascertainability issues in evaluating appeals from class certifications. *See Elter*, 17 Wash. App. 2d 643, 658 (affirming class certification noting that appellant "also argues that 'ascertainability' was not satisfied. But CR 23 does not list an 'ascertainability' requirement" and conducting no further analysis of the argument). In doing so, such courts direct simply that "[t]he definition must include objective rather than subjective criteria that makes the plaintiff class identifiable." *Barnett v. Wal-Mart Stores, Inc.*, 133 Wash. App. 1036 (2006). *See also Kihuria v. Consumer Legal Servs. Am., Inc.*, 5 Wash. App. 2d 1001 (2018) ("The class must be sufficiently identifiable without being overly broad. The class should not be defined by criteria that are subjective or that require an analysis of the merits of the case.") (citations omitted). The proposed Class meets this standard. The condition for class membership is students who paid UW tuition and fees for access to a suite of promised in-person educational services during the Winter and Spring 2020 quarters that UW did not provide. This definition uses precise and objective criteria to identify Class members using UW's student and payment records.

HAGENS BERMAN

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.  CONCLUSION

Plaintiff has satisfied the requirements of CR 23(a) and CR 23(b)(3). Accordingly, **IT IS HEREBY ORDERED** as follows:

1.      The Court certifies the following Class:

All students who were enrolled in and paid for the University of Washington's in-person based educational programs, services, and courses for the Winter Quarter 2020 or Spring Quarter 2020 academic term(s).

Excluded from the Class is UW, any entity in which UW has a controlling interest, and UW's legal representatives, predecessors, successors, assigns, and non-student employees. Further excluded from the Class is this Court and its employees.

2.      The Court appoints Plaintiff Alexander Barry as Class Representative.

3.      The Court appoints Hagens Berman Sobol Shapiro LLP and Lynch Carpenter, LLP as Class Counsel.

4.      The Court directs that notice issue to certified Class members under CR 23(d)(2) and further directs that UW provide Plaintiff's counsel with last known Class member email and mailing address contact information. The parties shall confer and determine a realistic schedule to prepare and send notice to Class members.  This Order shall constitute a "judicial order" within the meaning of the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g and 34 C.F.R. § 99.31(a)(9), sufficient to compel the University of Washington to provide this information.

DATED:

_____

HONORABLE JUDITH H. RAMSEYER
KING COUNTY SUPERIOR COURT JUDGE

[Proposed order prepared by Hagens Berman Sobol Shapiro LLP]

ORDER GRANTING PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA



King County Superior Court
Judicial Electronic Signature Page

Case Number:        20-2-13924-6
Case Title:         BARRY VS UNIVERSITY OF WASHINGTON ET AL

Document Title:     ORDER  RE GRANTING CLASS CERTIFICATION

Signed By:          Judith H. Ramseyer
Date:               June 28, 2023

Judge: Judith H. Ramseyer

This document is signed in accordance with the provisions in GR 30.

Certificate Hash:           08B04919A6905EC38077251FA81017A01DA60A76
Certificate effective date: 7/16/2018 2:34:55 PM
Certificate expiry date:    7/16/2023 2:34:55 PM
Certificate Issued by:      C=US, E=kcscefiling@kingcounty.gov, OU=KCDJA,
                            O=KCDJA, CN="Judith Ramseyer:
                            BBvO7QrS5hGe&#43;MT2AFk6yQ=="

THE HONORABLE JUDITH H. RAMSEYER
Hearing: March 10, 2023
9:00 AM

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY**

| | |
|---|---|
| ALEXANDER BARRY, individually and on behalf of all others similarly situated, | No. 20-2-13924-6-SEA |
| Plaintiff, | **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| v. | |
| UNIVERSITY OF WASHINGTON, | |
| Defendants. | |



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

# <u>TABLE OF CONTENTS</u>

                                                                                                    **Page**

I.  INTRODUCTION AND RELIEF REQUESTED ...................................................1

II. STATEMENT OF FACTS ..........................................................................................2

    A.  Class members paid tuition and fees for access to a suite of in-
        person, on campus education and experiences offered by UW. ..............................2

    B.  Class members selected in-person, on campus courses via UW's
        Time Schedule. .........................................................................................4

    C.  Plaintiff bargained and paid for in-person on campus courses. ..............................6

    D.  UW breached its contract with Class members by transitioning in-
        person, on campus courses and services to online only and issuing
        no refunds.................................................................................................6

III. STATEMENT OF ISSUES ......................................................................................7

IV. EVIDENCE RELIED UPON ....................................................................................8

V.  AUTHORITY ............................................................................................................8

    A.  PLAINTIFF SATISFIES THE REQUIREMENTS OF CR 23(a)..........................9

        1.  The Class satisfies the numerosity requirement of CR 23(a)(1) as
            putative Class members exceed the low threshold of 40 Class
            members. ...........................................................................................9

        2.  The Class satisfies the commonality requirement of CR 23(a)(2) as
            UW's course of conduct is common to all Class members. ..................10

        3.  Plaintiff's claims satisfy the typicality requirement in CR 23(a)(3)
            since those claims arise out of the same conduct: UW's transition
            of its on campus, in-person courses and services to remote, online
            courses.............................................................................................10

        4.  Plaintiff will fairly and adequately represent the Class satisfying
            CR 23(a)(4). ......................................................................................11

    B.  PLAINTIFF SATISFIES THE REQUIREMENTS OF CR 23(b)(3)....................12

        1.  Common issues predominate given the central issues raised in this
            litigation. .........................................................................................13

         2.  A class action is superior to tens of thousands of individual actions
            covering the same issues arising out of the same transition to
            remote learning. ...............................................................................15

    C.  THE PROPOSED CLASS IS ASCERTAINABLE ...............................................17

VI. CONCLUSION........................................................................................................18

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Alexander v. Fla. Int'l Univ. Bd. of Trs.*,
No. 2021-009869-CA-01(44), 2021 WL 9038526 (Fla. 11th Cir. Ct. Dec. 30,
2021) ...............................................................................................................1, 15, 16

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ...........................................................................................13

*Arredondo v. Univ. of La. Verne*,
341 F.R.D. 47 (C.D. Cal. Feb. 8, 2022) .......................................1, 10, 11, 13, 15

*Barnett v. Wal-Mart Stores, Inc.*,
133 Wash. App. 1036 (2006) ..............................................................................17

*Brown v. Brown*,
6 Wash. App. 249, 492 P.2d 581 (1971) .............................................................8

*Chavez v. Our Lady of Lourdes Hosp. at Pasco*,
190 Wash. 2d 507, 415 P.3d 224 (2018) ...............................................8, 10, 15, 16

*Duke v. Ohio Univ.*,
No. 2021-00036, 2022 Ohio Misc. LEXIS 132 (Ct. Cl. Feb. 5, 2022) .....................1

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ...........................................................................................16

*Elter v. United Servs. Auto. Ass'n*,
17 Wash. App. 2d 643, 661, 487 P.3d 539 (2021), *review denied sub nom.*
*Elter v. USAA Cas. Ins.*, 198 Wash. 2d 1027, 498 P.3d 957 (2021) ..................16, 17

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................................11

*John Doe L v. Pierce Cnty.*,
7 Wash. App. 2d 157, 203, 433 P.3d 838 (2018) ................................................11

*Jordan v. Cnty. of L.A.*,
669 F.2d 1311 (9th Cir. 1982) ...............................................................................9

*Kihuria v. Consumer Legal Servs. Am., Inc.*,
5 Wash. App. 2d 1001 (2018) ............................................................................17

*Little v. Grand Canyon Univ.*,
No. cv-20-00795, 2022 WL 266726 (D. Ariz. Jan. 28, 2022) ..............1, 10, 11, 13, 15, 16, 17

-ii-



*Marquez v. Univ. of Washington,*
    32 Wash. App. 302, 648 P.2d 94 (1982).................................................................14

*Miller v. Farmer Bros. Co.,*
    115 Wash. App. 815, 64 P.3d 49 (2003)................................................................13

*Pellino v. Brink's, Inc.,*
    164 Wash. App. 668, 267 P.3d 383 (2011)...........................................................10

*Schwendeman v. USAA Cas. Ins. Co.,*
    116 Wash. App. 9, 65 P.3d 1 (2003).......................................................................9

*Sitton v. State Farm Mut. Auto. Ins. Co.,*
    116 Wash. App. 245, 63 P.3d 198 (2003).............................................8, 9, 13, 15, 16

*Smith v. Behr Process Corp.,*
    113 Wash. App. 306, 54 P.3d 665 (2002)..........................................................9, 10, 13

*Tyson Foods Inc. v. Bouaphakeo,*
    577 U.S. 442 (2016)..............................................................................................13

*Univ. of Wash. v. Gov't Employees Ins. Co.,*
    200 Wash. App. 455, 404 P.3d 559 (2017)...........................................................14

*Waitt v. Kent State Univ.,*
    No. 2020-00392, 2022 Ohio Misc. LEXIS 130 (Ct. Cl. Feb. 11, 2022)....................1

*Weston v. Emerald City Pizza, LLC,*
    137 Wash. App. 164, 151 P.3d 1090 (2007)...........................................................8

*Young v. Young,*
    164 Wash. 2d 477, 191 P.3d 1258 (2008).............................................................14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23...........................................................................................................8

Fed. R. Civ. P. 23(a)(2).................................................................................................10

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

## I.   INTRODUCTION AND RELIEF REQUESTED

When the University of Washington ("UW") closed in Spring 2020 and transitioned classes from in-person to online only in response to the COVID-19 pandemic, all proposed Class members paying UW tuition and/or fees for the Winter and Spring 2020 quarters lost a part of the benefit of their bargain. Class action treatment is the most efficient way to adjudicate claims for tuition and fee refunds as multiple courts have concluded: *see e.g., Arredondo v. Univ. of La. Verne*, 341 F.R.D. 47 (C.D. Cal. Feb. 8, 2022); *Alexander v. Fla. Int'l Univ. Bd. of Trs.*, No. 2021-009869-CA-01(44), 2021 WL 9038526, at *1 (Fla. 11th Cir. Ct. Dec. 30, 2021); *Little v. Grand Canyon Univ.*, No. cv-20-00795, 2022 WL 266726 (D. Ariz. Jan. 28, 2022); *Waitt v. Kent State Univ.*, No. 2020-00392, 2022 Ohio Misc. LEXIS 130 (Ct. Cl. Feb. 11, 2022); *Duke v. Ohio Univ.*, No. 2021-00036, 2022 Ohio Misc. LEXIS 132 (Ct. Cl. Feb. 5, 2022).

Plaintiff satisfies all the elements of Washington Superior Court Civil Rule 23(a) and (b)(3). The Class is identifiable as UW maintains a data of students who enrolled for in-person on campus-based instruction for the Winter and Spring 2020 quarters.[12] The Class is so numerous that joinder is impracticable; approximately 56,000 students paid UW tuition and fees for the Winter and Spring 2020 quarters. Common questions capable of resolution on a classwide basis exist across all Class members and will be determined by common evidence, such as whether UW breached an express contract, breached an implied contract, and was UW unjustly enriched by funds paid by Class members. Plaintiff's claims are typical because they arise from the same conduct and same theory as the claims of all Class members. Plaintiff is an adequate Class Representative who has zealously advocated for the Class and retained experienced counsel. The common question regarding the propriety and calculation of any refund for those paying UW for access to a suite of in-person on campus-based educational services during the Winter and Spring 2020 quarters they did not receive predominates over any individual issues. Class treatment is superior to thousands of individual lawsuits.

---

[1] All references herein to "Ex. __" are the exhibits to the Kurowski Decl.

[2] Ex. 1 at pp. 7–9, Garrett Tr. 31:3–32:13; 35:5–11.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Plaintiff seeks to certify the proposed "Class" defined as:

All students who were enrolled in and paid for the University of Washington's in-person based educational programs, services, and courses for the Winter Quarter 2020 or Spring Quarter 2020 academic term(s).

The Court should grant Plaintiff's Motion. Plaintiff also requests the Court appoint Plaintiff as Class Representative and appoint his counsel as Class Counsel.

## II.    STATEMENT OF FACTS

UW is an institution of higher learning founded in 1861.[3] UW charged, and Plaintiff and Class members paid, tuition and fees for the Winter and Spring 2020 quarters, for courses specifically designated by UW as in-person. Plaintiff and the Class bargained for access to in-person on campus educational services, and with the transition to online only courses, did not receive the experiences for which they paid. UW's detailed descriptions of its location, facilities, technologies, and amenities available on its website and in marketing materials emphasized that living on campus and access to facilities were essential elements of what UW would provide in exchange for tuition and fees.

### A.    Class members paid tuition and fees for access to a suite of in-person, on campus education and experiences offered by UW.

UW's marketing materials, website, Catalog, and UW's corporate representative testimony reflect the expectation that students would receive access to in-person, on campus education and services. The UW Catalog emphasized student access to campus: "The natural beauty of the Pacific Northwest envelops us. This is an important element of who we are, for this awe-inspiring place not only anchors us, it reaffirms our desire to effect positive change in the world around us. We accept gratefully our role in preserving and enhancing Washington: the place, the people, our home."[4] UW also promoted student life as integral to the UW experience, noting "[b]y living on campus, you'll find countless opportunities to develop meaningful relationships, join an engaging and supportive academic community and explore who you are."[5]

---

[3] Def. Ans. ¶ 24.
[4] Ex. 2 at pp. 17–18.
[5] Ex. 3 at p. 23.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

UW recognized that "[a] UW education is *more* than a degree," and emphasized in-person offerings beyond just progress toward a degree such as "[b]y *more* we mean skills, knowledge and abilities gained through classroom learning as well as high impact experiences such a studying abroad, jobs and internships, research and leadership projects, and participating in clubs and community organizations."[6]

UW's Catalog similarly specified access to many in-person, on-campus courses and experiences including: students using "state-of-the-art facilities,"[7] access to "laboratories equipped with modern research equipment"[8] to support students with coursework and projects, access to "excellent instructional and research facilities,"[9] access to "rehearsal and performance spaces,"[10] studios, technology, and equipment,[11] courses with opportunities for "hands-on experience,"[12] "hands-on experiments,"[13] and dozens of other references to benefits exclusive to on-campus instruction. The Catalog also establishes students' rights to access services and facilities only available on-campus, noting "The Husky Card . . . provides access to services and opportunities, including campus libraries."[14] While UW does offer some planned online programs, a student would "have to specifically select that program" at enrollment.[15] Plaintiff and the Class members specifically enrolled in in-person, on campus programs and paid tuition and fees for the Winter and Spring 2020 quarters.

---

[6] Ex. 4 at pp. 30–31.

[7] Ex. 5 at pp. 39, 41.

[8] *Id.* at p. 45.

[9] *Id.* at p. 50.

[10] *Id.* at p. 54.

[11] *Id.* at pp. 56–57.

[12] *Id.* at pp. 55, 58, 62, 90.

[13] *Id.* at p. 97.

[14] Ex. 6 at p. 116.

[15] Ex. 7 at p. 128, Reid Tr. 73:15–18.

-3-

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA

**B.      Class members selected in-person, on campus courses via UW's Time Schedule.**

Further evidence that the parties bargained for in-person courses can be found within UW's "Time Schedule." UW used the Time Schedule "to communicate to students which courses are being offered, when they're being offered, where they're being offered, and who will be delivering the course."[16] The Time Schedule also distinguishes between whether a course was planned to be delivered in-person or if it was an online course as "it would have indicated if a course was to be offered in person or was to be offered online."[17] UW deemed it important to indicate delivery mode because "it is extremely helpful for students to know whether they will be expected to be in a physical classroom or if they have the option of taking the course from outside of any particular campus that could allow them to do it online or in another country or whatever it might be."[18] Thus, "[b]y looking at a time schedule for any particular quarter and going to each specific class and seeing whatever the time schedule coordinator provided for that class, one would have a visual cue as to the course delivery mode . . . ."[19]

The Time Schedule is important because to register for a class, UW students need a "schedule line number," or "SLN number," obtained from the Time Schedule and then inputted into UW's course registration system.[20] UW publishes the Time Schedule under a set production schedule,[21] disclosing in-person course delivery modes to students long before COVID-19. Under that schedule, UW "published for the first time the time schedule for the particular quarter on the web available for anyone to see," disclosing in-person versus online course delivery methods by October 11, 2019 for the Winter quarter 2020 and by January 17, 2020 for the Spring

---

[16] Ex. 7 at pp.121–122, Reid Tr. 30:24–31:19.

[17] *Id.* at p. 122, Reid Tr. 31:13–19.

[18] Ex. 1 at pp. 4–5, Garrett Tr. 22:23–23:5.

[19] *Id.* at p. 6, Garrett Tr. 29:16–24.

[20] Ex. 1 at pp. 10–11, Garrett Tr. 42:23–43:21. *See also* Ex. 7 at p. 123, Reid Tr. 50:16–24 (noting that UW also offers "a service called 'MyPlan,' which is an academic planning tool that we offer. But the information it uses is derived from the time schedule").

[21] *See* Ex. 10 at p. 157, Garrett Tr. at Ex. 25.

-4-

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

quarter 2020.[22] By the time of its March 6, 2020 announcement that it would transition to remote learning for Winter quarter and on March 18, 2020 for Spring quarter, (Def. Ans. ¶ 3), UW indicated course modality and location (and students had registered) for thousands of in-person courses on UW's campuses. Samples of UW's Time Schedule, show Winter 2020 graduate rehabilitation medicine course REHAB 578 Domain and Process I and Spring 2020 course REHAB 579 Domain and Process II meeting in the University Medical Center, Wing CC (UMCC) room 902.

**W** UNIVERSITY *of* WASHINGTON

UW Home > Discover UW > Student Guide > Time Schedule
▷ Winter 2020 Time Schedule

## Winter Quarter 2020 Time Schedule

**REHABILITATION MEDICINE
(SCHOOL OF MEDICINE )**

Help with the UW Time Schedule

**REHAB  578  DOMAIN & PROCESS I**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 19788 | A | 4 | M | 1000-1150 | UMCC | CC902 | Fogelberg,Donald J | Open | 24/  30E CR/NC |
| | | | F | 100-250 | UMCC | CC902 | | | |

**W** UNIVERSITY *of* WASHINGTON

UW Home > Discover UW > Student Guide > Time Schedule
▷ Spring 2020 Time Schedule

## Spring Quarter 2020 Time Schedule

**REHABILITATION MEDICINE
(SCHOOL OF MEDICINE )**

Help with the UW Time Schedule

**ENTRY CODES ARE AVAILABLE IN UMC CC902**

**REHAB  579  DOMAIN & PROCESS II**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Restr | 19183 | A | 3 | W | 130-320 | UMCC | CC902 | Fogelberg,Donald J | Open | 24/  30E |
| | | | | F | 1100-1220 | UMCC | CC902 | Fogelberg,Donald J | | |

In addition to UW's history of providing in-person classes every year since it opened its doors to students, the Time Schedule, including physical locations on campus and in-person course modality, and course syllabi, show the understanding between the parties and reasonable

---

[22] Ex. 1 at pp. 12–13, Garrett Tr. 75:25–76:14.

-5-

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

expectation that UW would provide in-person classes registered for and paid for by students for the entirety of the Winter and Spring 2020 quarters.[23]

### C.    Plaintiff bargained and paid for in-person on campus courses.

Specifically, and similar to experiences and expectations of all Class members, Plaintiff's full-time graduate program in rehabilitation medicine required in-person courses and hands-on clinical experience.[24] None of the programs within UW's School of Medicine (including Plaintiff's) are ordinarily online-only programs; UW expected that the programs would be delivered in-person and on-campus.[25] Not only did Plaintiff's program have a specific dress code for in-person course attendance, the program's accreditation required courses to be held in-person.[26] In fact, the rehabilitation medicine program had a specific approval process with the accreditation body to even offer courses online prior to the COVID-19 pandemic.[27] This provides further evidence that the parties understood and expected Winter and Spring 2020 quarter courses would be provided in-person and on campus.

### D.    UW breached its contract with Class members by transitioning in-person, on campus courses and services to online only and issuing no refunds.

On March 9, 2020, UW switched all in-person courses to online formats and stopped providing access to campus facilities and in-person resources.[28] Prior to March 2020, UW never made a wholesale switch of courses from in-person coursework to online delivery.[29] And after its first suspension of classes, UW planned to resume "normal class operations" for the Spring 2020

---

[23] Ex. 1 at pp. 12–13, Garrett Tr. 75:25–76:14.

[24] Ex. 8 at p. 138, Allen Tr. 22:7–21.

[25] *Id*. at p. 139, Allen Tr. 33:4–13.

[26] Ex. 8 at p. 139, Allen Tr. 33:4–13; Ex. 7 at p. 125, Reid Tr. 69:15–23. ("the rule is, if a degree program . . . becomes 50 percent or more online, you need to communicate that to your accreditation body and basically update . . . the modality of offering for that particular degree program.").

[27] Ex. 7 at pp. 126–127, 129–130, Reid Tr. 70:23–71:2; 76:24–77:7.

[28] Def. Ans. ¶ 3

[29] Ex. 7 at p. 124, Reid Tr. 55:8–12.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

quarter, assuming "that we would be back to largely an in-person instruction program."[30]

However, on March 18, 2020, it announced courses would be online for Spring quarter.[31]

Despite not meeting the reasonable expectations of Plaintiff and the Class, UW issued no refund of Plaintiff's and the Class's Winter or Spring 2020 tuition payments and did not issue proper refunds for fees. President Cauce noted in a July 10, 2020 town hall, "I really want everyone to know that we recognize that students, parents, and quite frankly our faculty, prefer in-person. . . . And we really look forward to having 100% in-person as soon as that is possible. That is something we all want."[32] Numerous Class members complained that UW did not provide a refund for closing campus and transitioning classes online. Students did not receive what they paid for: in-person courses, experiences, and access to facilities and they should receive a pro-rata refund for the remote instruction UW provided.

### III.   STATEMENT OF ISSUES

1. Courts have found class treatment proper in cases brought by students seeking tuition and fee refunds after campus closures in Spring 2020 and the transition from in-person on-campus courses and online only services in response to COVID-19. Does the proposed Class meet the requirements of CR 23(a) and (b)(3) for class certification?

2. Should Plaintiff Alexander Barry, a full-time graduate student who enrolled and paid for in-person education and experiences he did not receive at UW during Winter and Spring quarters 2020, who has taken an active role in the vigorous prosecution of this case, and who has no conflicts with the Class, be appointed Class Representative?

3. With their experience handling class actions and knowledge of the applicable law representing college students in COVID-19 refund matters, should Hagens Berman Sobol Shapiro LLP and Lynch Carpenter, LLP be appointed Class Counsel?

4. Should the Court direct notice be issued to the Class?

---

[30] *Id.* at pp. 131–132, Reid Tr. 94:24–95:18.

[31] Def. Ans. ¶ 3.

[32] Ex. 9 at p. 149.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## IV.    EVIDENCE RELIED UPON

Plaintiff relies upon the First Amended Class Action Complaint ("FAC"), documents cited in the FAC, UW's Answer, the declaration of Alexander Barry,[33] and the deposition testimony of UW's Rule 30(b)(6) witnesses: Phillip Reid, Suzanne Allen, and Helen Garrett. Some publicly available cited documents are attached to the Declaration of Daniel J. Kurowski ("Kurowski Decl."), filed with this motion. Additionally, the Firm resumes of proposed Class Counsel are attached to the Kurowski Decl.[34] and Declaration of Ed Ciolko ("Ciolko Decl.").[35,36]

## V.    AUTHORITY

Class actions, authorized by CR 23 in Washington, are an essential tool for adjudicating cases with multiple claims that involve similar factual and/or legal inquiries and that are too modest to prosecute individually. *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wash. 2d 507, 514, 415 P.3d 224 (2018) (citations omitted). Washington courts liberally interpret CR 23 because it "avoids multiplicity of litigation, saves members of the class the cost and trouble of filing individual suits, and frees the defendant from the harassment of identical future litigation." *Weston v. Emerald City Pizza, LLC*, 137 Wash. App. 164, 168, 151 P.3d 1090 (2007) (quoting *Smith v. Behr Process Corp.*, 113 Wash. App. 306, 318, 54 P.3d 665 (2002) (cleaned up). Washington courts may consider federal cases when evaluating whether to certify a class under CR 23, as CR 23 and Fed. R. Civ. P. 23 are largely identical. *Brown v. Brown*, 6 Wash. App. 249, 252, 492 P.2d 581 (1971).

"CR 23 is to be construed liberally in favor of permitting certification." *Sitton v. State*

---

[33] Ex. 12 at p. 216.

[34] Ex. 11 at p. 159.

[35] Ex. 13 at p. 221 and Ex. A at p. 225.

[36] Plaintiff also anticipates submitting expert testimony on, e.g., detailed damages methodology, and reserves the right to supplement his motion, if necessary and/or within his reply memorandum, at a later date because under the operative court schedule, Plaintiff's expert disclosure is not due until March 8, 2023. Given the straightforward nature pf the core of his claims, Plaintiff does not believe such materials are necessary for the Court to adjudge the motion at hand.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

*Farm Mut. Auto. Ins. Co.*, 116 Wash. App. 245, 256, 63 P.3d 198, 205 (2003). As a result, Washington courts "resolve close cases in favor of allowing or maintaining the class." *Id.* at 116 Wash. App. at 250, 63 P.3d at 202; *see also Smith*, 113 Wash. App. at 319, 54 P.3d at 673. ("[T]he interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing the class action.") (citation and quotation omitted).

To certify a class, Plaintiff must meet CR 23(a)'s requirements (numerosity, commonality, typicality, and adequacy of representation), and at least one subdivision of 23(b). *Schwendeman v. USAA Cas. Ins. Co.*, 116 Wash. App. 9, 18, 65 P.3d 1 (2003). These rules provide:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> . . . .

> (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The proposed class meets each requirement of CR 23(a) and CR 23(b)(3) and should be certified.

## A.    PLAINTIFF SATISFIES THE REQUIREMENTS OF CR 23(a)

### 1.    The Class satisfies the numerosity requirement of CR 23(a)(1) as putative Class members exceed the low threshold of 40 Class members.

CR 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. When a class is large, joinder is usually impracticable. *Jordan v. Cnty. of L.A.*,

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

669 F.2d 1311, 1319 (9th Cir. 1982). Joinder is generally deemed impracticable in classes with over 40 members. *Chavez*, 190 Wash. 2d at 520, 415 P.3d 224. Here, numerosity is satisfied because the proposed class contains over 56,000 members, including undergraduate and graduate students. Compl. ¶ 24. *See Little*, 2022 WL 266726, at *5 (certifying class in COVID-19 fee refund case where proposed class included over 20,000 students).

### 2. The Class satisfies the commonality requirement of CR 23(a)(2) as UW's course of conduct is common to all Class members.

The commonality element of Rule 23(a)(2) requires only that "there are questions of law or fact common to the class." CR 23(a)(2). "Commonality" under CR 23(a)(2) is a "low threshold test" that "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *Smith*, 113 Wash. App. at 320. Commonality exists if the "course of conduct" that gives rise to the cause of action affects all the class members. *Pellino v. Brink's, Inc.*, 164 Wash. App. 668, 682, 267 P.3d 383 (2011) (commonality satisfied when alleged facts indicate defendant was engaged in common course of conduct in relation to all potential class members).

Plaintiff satisfies the low commonality hurdle. Common issues here include: (1) whether UW and Class members had a contract; (2) whether that contract obligated UW to provide in-person instruction; (3) whether the contract obligated UW to provide access to campus facilities and in-person resources; (4) whether UW breached the contract; (5) whether UW unlawfully kept funds paid; (6) whether UW was unjustly enriched by keeping the funds paid; and (7) the fact and measure of damages derived from verifiable class-wide information maintained by UW. Commonality exists because the proof will focus on UW's conduct and will be common to the Class. Many other courts have found commonality to be satisfied in similar cases. *See, e.g.*, *Arredondo*, 341 F.R.D. at 51; *Little*, 2022 WL 266726, at *5.

### 3. Plaintiff's claims satisfy the typicality requirement in CR 23(a)(3) since those claims arise out of the same conduct: UW's transition of its on campus, in-person courses and services to remote, online courses.

CR 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." CR 23(a)(3). The typicality requirement exists when the

-10-

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

claims of the representative plaintiffs arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based upon similar legal theories. *John Doe L v. Pierce Cnty.*, 7 Wash. App. 2d 157, 203, 433 P.3d 838 (2018) (citing *Pellino*,164 Wash. App. at 684).

Here, Plaintiff's claims are typical because they arise from the same events and course of conduct and common legal and remedial theories. Plaintiff's claims, like those of Class members, stem from a contract with UW for the provision of in-person education and on campus services. UW billed Plaintiff, like members of the Class, tuition and fees specific to students who registered for in-person courses; and paid the demanded tuition and fees. Compl. ¶ 8. UW stopped providing the promised in-person instruction and access to campus facilities and in-person resources for all students simultaneously. Def. Ans. ¶ 3. UW then retained full price for tuition and fees. Plaintiff alleges UW must refund the pro-rated fees for campus access and in-person resources that UW did not provide when it shuttered its campus.

Since each Class member's claims arise from the same course of UW's conduct, and each Class member makes similar legal arguments, the typicality requirement is met. *See Arredondo*, 341 F.R.D. 47 (finding typicality satisfied despite the university's argument that plaintiff's receipt of scholarships made her atypical of the class); *Little*, 2022 WL 266726, at *6 ("[t]hat [p]laintiff did not pay the same fees as every member of the class is irrelevant as long as [p]laintiff endured a course of conduct directed against the class. Accordingly, [p]laintiff has satisfied the requirement for typicality.").

### 4. Plaintiff will fairly and adequately represent the Class satisfying CR 23(a)(4).

CR 23(a)(4) requires that the representative parties will "fairly and adequately protect the interests of the class." CR 23(a)(4). Plaintiff satisfies the two-part CR 23(a)(4) "adequacy" test: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will prosecute the action vigorously on behalf of the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Plaintiff satisfies both parts of this test. Plaintiff's interests are aligned with those of the Class members in obtaining a refund that will provide each with the benefit of their bargain. In addition to these aligned interests, Plaintiff has no conflicts with the Class and seeks to hold UW accountable.[37] Plaintiff has committed to prosecuting this litigation and will continue to advocate for the best interests of the Class.[38] Plaintiff will vigorously represent the Class.

Proposed Class Counsel is qualified and will also vigorously represent the Class.[39] Both law firms—Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Lynch Carpenter, LLP ("Lynch Carpenter")—have collectively handled countless complex class action cases, recovered billions of dollars for classes they represented, and showed significant experience in these specific claims.[40] Counsel have been litigating claims of students whose colleges and universities transitioned from in-person to online only education across the country, giving them substantial knowledge in the applicable law.[41] During the past two years, proposed Class Counsel have investigated and zealously pursued claims on behalf of the proposed Class of students against UW, briefed and argued the motion to dismiss, refined the complaint's allegations to survive the motion to dismiss, and conducted discovery resulting in thousands of pages of production, including taking five depositions resulting in admissions satisfying many elements of Plaintiff's claims.[42] The Court should appoint proposed Class Counsel to represent the Class. Plaintiff and proposed Class Counsel satisfy the adequacy inquiry, satisfying each requirement of CR 23(a).

## B.  PLAINTIFF SATISFIES THE REQUIREMENTS OF CR 23(b)(3)

CR 23(b)(3) permits class certification if "common questions of law predominate over questions affecting only individual members and that a class action is the superior method of handling the claim." CR 23(b)(3).

---

[37] *See* Ex. 12 at p. 219, Barry Decl. ¶ 9.

[38] *Id.* at ¶ 7.

[39] *See* Kurowski Decl.; Ex. 13 at p. 223–225, Ciolko Decl.

[40] *See* Kurowski Decl. ¶¶ 4–14; Ciolko Decl. ¶¶ 3–4, 6 at pp. 223–224.

[41] Kurowski Decl. ¶¶ 12–13; Ciolko Decl. ¶¶ 4, 6 at pp. 223–224.

[42] Kurowski Decl. ¶ 4; Ciolko Decl. ¶ 5 at p. 223.

-12-

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

### 1. Common issues predominate given the central issues raised in this litigation.

2

Predominance tests whether the proposed class is sufficiently cohesive to call for adjudication by representation. *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997) "[T]he predominance requirement is not defeated merely because individual factual or legal issues exist; rather, the relevant inquiry is whether the issue shared by the class members is the dominant, central, or overriding issue shared by the class." *Miller v. Farmer Bros. Co.*, 115 Wash. App. 815, 825, 64 P.3d 49 (2003). When one or more of the central issues are common to the class and can be said to predominate, the action may be considered proper under CR 23(b)(3), "even though other important matters will have to be tried separately, such as damages or some defenses peculiar to some individual class members." *Tyson Foods Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). In evaluating predominance, courts engage "in a pragmatic inquiry into whether there is a common nucleus of operative facts to each class member's claim." *Smith.*, 113 Wash. App. at 323. The "predominance standard is not strictly applied to every aspect of the plaintiffs' claims; rather, questions of judicial economy are central." *Sitton*, 116 Wash. App. at 255.

Here, as courts evaluating similar tuition and/or fee refund cases have found, this Court should conclude that common questions predominate. *See, e.g.*, *Arredondo*, 341 F.R.D. at 53; *Little*, 2022 WL 266726, at *7.

Common issues will predominate in the trial of Plaintiff's claims. The key evidence is common for all Class members, such as: whether UW's conduct and representations throughout the enrollment, registration, and payment processes formed a contract that required UW to provide in-person instruction and access to facilities and campus-based; whether UW breached that contract when it closed campus; and the calculation of damages. This evidence directly affects every Class member's effort to show liability and every Class member's entitlement to relief. Plaintiff will present the same classwide evidence that UW's transition to online only education caused economic loss to Plaintiff and Class members. These common issues will predominate over any individual issues, rendering class treatment appropriate.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    In addition, Plaintiff shows predominance on each element of his claims using common

2 evidence and legal theories. A breach of contract claim requires "that a valid agreement existed

3 between the parties, the agreement was breached, and the plaintiff was damaged." *Univ. of Wash.*

4 *v. Gov't Employees Ins. Co.*, 200 Wash. App. 455, 467, 404 P.3d 559, 566 (2017). It is

5 "generally accepted that the relationship between a student and a university is primarily

6 contractual in nature." *Marquez v. Univ. of Washington*, 32 Wash. App. 302, 305, 648 P.2d 94,

7 96 (1982) (citation omitted). "Since a formal contract is rarely prepared, the general nature and

8 terms of the agreement are usually implied, with specific terms to be found in the university

9 bulletin and other publications." *Id*. (citation omitted). Here, UW's promotional statements,

10 handbooks, catalogues, and brochures, along with UW's history of providing in-person classes

11 and a suite of campus-based educational services, provides evidence of a contract on a classwide

12 basis. Whether UW and Class members were party to a contract that required UW to provide

13 access to in-person campus-based educational services, and whether UW breached its contract

14 with Class members by failing to provide in-person education and access to facilities are

15 common questions that can be answered for all Class members. UW's records will show that all

16 Class members paid tuition and fees for the Winter and Spring 2020 quarters. UW's conduct

17 giving rise to the breach is common for all Class members: UW closed campus on March 9, 2020

18 and transitioned all in-person classes to online only education. This breach resulted in the same

19 injury for all Class members, no matter their program or academic major, as UW failed to

20 provide in-person, on campus instruction, access to campus-based services or facilities, and

21 chose to keep the full tuition and fee amounts despite its breach.

22    Classwide treatment is similarly appropriate for Plaintiff's unjust enrichment claim. The

23 elements of a contract implied in law, based on unjust enrichment are: "(1) the defendant

24 receives a benefit, (2) the received benefit is at the plaintiff's expenses, and (3) the circumstances

25 make it unjust for the defendant to retain the benefit without payment." *Young v. Young*, 164

26 Wash. 2d 477, 191 P.3d 1258 (2008). Here, UW received the full benefit of tuition and fees from

27 each Class member for in-person education and services it did not provide at Plaintiff's and

28 Class member's expense. UW knew, after the transition to online only education, it would be

-14-

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

unjust to keep full tuition and fee payments for the in-person education and services for which the parties bargained and UW did not provide, resulting in the same injury to all Class members. These common issues predominate over any individual issues that may exist.

Furthermore, variation in damages does not prevent class certification as Plaintiff establishes predominance as to the issue of damages. *See Little*, 2022 WL 266726, at *7 ("Even though some matters will need to be tried separately, such as which fees students paid (damages), GCU took actions which uniformly affected students and potentially resulted in a breach of contract. Accordingly, Plaintiff has met the predominance requirement for his breach of contract claim."); *Arredondo*, 341 F.R.D. at 53 (finding predominance satisfied where, even though the measure of damages for each student may be individualized, "the ultimate calculation is capable of resolution easily and without considering an overwhelming number of individualized questions"). These claims will be litigated with common evidence and determinations on these claims can be answered classwide. *Alexander*, 2021 WL 9038526, at *6 (finding common issues predominated where, like here, the plaintiffs' claims were based on the university's failure to provide students with the services paid for as the case "poses the same basic legal question for all class members").

> **2.  A class action is superior to tens of thousands of individual actions covering the same issues arising out of the same transition to remote learning.**

A class action here is superior to the alternative of individual actions. Where individual damages are small, the class vehicle is usually deemed superior. *Chavez*, 190 Wash. 2d at 523. "[F]orcing numerous plaintiffs to litigate the alleged pattern or practice ... in repeated individual trials runs counter to the very purpose of a class action." *Sitton*, 116 Wash. App. at 256–57. CR 23(b)(3) includes four factors for this inquiry: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." CR (b)(3).

-15-

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Here, class action treatment is superior to adjudicate the claims in this matter. The first factor favors certification because it would cost Class members more to litigate this action individually than the relatively small amount of damages they will recover. There exists no reason to believe putative Class members have any interest in controlling the litigation.

The second factor favors class certification, as neither Plaintiff nor his counsel is aware of any other litigation regarding this matter against UW.[43]

The third superiority factor also favors certification. This Court is the logical and desirable forum as UW is located in this county and the Court is familiar with the factual and legal issues. Here, holding separate trials for claims that could be tried together would be costly and inefficient. *Elter v. United Servs. Auto. Ass'n*, 17 Wash. App. 2d 643, 661, 487 P.3d 539 (2021), *review denied sub nom. Elter v. USAA Cas. Ins.*, 198 Wash. 2d 1027, 498 P.3d 957 (2021).

The final superiority factor—manageability—focuses on the "practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). That individual issues might exist or take some time to resolve does not make a class action unmanageable. *Chavez*, 190 Wash. 2d at 521. Trial courts have a "variety of procedural options to reduce the burden of resolving individual damage issues, including bifurcated trials, use of subclasses or masters, pilot or test cases with selected class members, or even class decertification after liability is determined." *Sitton,* 116 Wash. App. at 255. This case can be tried in an efficient matter, and Plaintiff foresees no manageability problems that make over 56,000 individual actions a better alternative.

Plaintiff shows the superiority prong of CR 23(b)(3). *Little*, 2022 WL 266726, at *7 ("it is clear that a class action is the most efficient way to manage this controversy. Otherwise, roughly 20,000 students would need to individually litigate their breach of contract claims against [defendant], and students would likely not be able to collect enough in damages in order to bring suit on their own."); *Alexander*, 2021 WL 9038526, at *7 (finding superiority met

---

[43] Ex. 12 at p. 219, Barry Decl. ¶ 10; Kurowski Decl. ¶ 15; Ex. 13 at p. 224, Ciolko Decl. ¶ 8.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

"[w]here, like here, the absent class members' individual claims are too small to expect them to be adjudicated separately," such that "the added efficiency of a class action is at its greatest" and that "[a]bsent a class-wide resolution, it is unlikely that any significant number of Class members would obtain redress") (citation and quotation omitted).

### C.  THE PROPOSED CLASS IS ASCERTAINABLE

While CR 23 does not include an ascertainability requirement, some appellate courts have reviewed ascertainability issues in evaluating appeals from class certifications. *See Elter*, 17 Wash. App. 2d at 658 (affirming class certification noting that appellant "also argues that 'ascertainability' was not satisfied. But CR 23 does not list an 'ascertainability' requirement" and conducting no further analysis of the argument). In doing so, such courts direct simply that "[t]he definition must include objective rather than subjective criteria that makes the plaintiff class identifiable." *Barnett v. Wal-Mart Stores, Inc.*, 133 Wash. App. 1036 (2006). *See also Kihuria v. Consumer Legal Servs. Am., Inc.*, 5 Wash. App. 2d 1001 (2018) ("The class must be sufficiently identifiable without being overly broad. The class should not be defined by criteria that are subjective or that require an analysis of the merits of the case.") (citations omitted).

The proposed Class meets this standard. The condition for class membership requires students that paid UW tuition and fees for access to a suite of promised in-person educational services during the Winter and Spring 2020 quarters which UW did not provide. This definition uses precise and objective criteria to identify Class members using UW's student payment records. UW has records readily available that specifically identify: (1) each student who enrolled in in-person courses for the Winter and Spring 2020 quarters; (2) what each such student paid for tuition and fees; (3) whether UW provided grants or other aid that reduced the amount students paid; and (4) whether UW provided a refund of any tuition or fees paid. Ascertainability exists in this case. *Little*, 2022 WL 266726, at *5 (finding proposed student class ascertainable where "[Defendant] can readily ascertain the identity of Class members from its records").

# VI.   CONCLUSION

For the foregoing reasons, the Court should certify the proposed Class, appoint Plaintiff as Class Representative, and his counsel as Class Counsel.

I certify that this memorandum contains 5,997 words, in compliance with the Local Civil Rules.

-18-



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  Dated: November 23, 2022                    Respectfully submitted,

2                                              By: */s/ Daniel J. Kurowski*

3                                              Steve W. Berman (WA Bar No. 12536)
                                               HAGENS BERMAN SOBOL SHAPIRO LLP
4                                              1301 Second Avenue, Suite 2000
                                               Seattle, WA 98101
5                                              (206) 623-7292
                                               (206)-623-0594 (fax)
6                                              steve@hbsslaw.com

7                                              Daniel J. Kurowski (*Pro Hac Vice*)
                                               Whitney K. Siehl (*Pro Hac Vice*)
8                                              HAGENS BERMAN SOBOL SHAPIRO LLP
                                               455 N. Cityfront Plaza Drive, Suite 2410
9                                              Chicago, IL 60611
                                               (708) 628-4949
10                                             (708) 628-4950 (fax)
                                               dank@hbsslaw.com
11                                             whitneys@hbsslaw.com

12                                             Edward W. Ciolko (*Pro Hac Vice*)
                                               Nicholas A. Colella (*Pro Hac Vice*)
13                                             LYNCH CARPENTER LLP
                                               1133 Penn Avenue
14                                             5th Floor
                                               Pittsburgh, PA 15222
15                                             (412) 322-9243
                                               (412) 231-0246 (fax)
16                                             eciolko@lcllp.com
                                               ncolella@lcllp.com
17
                                               *Attorneys for Plaintiff and the proposed Class*
18

19

20

21

22

23

24

25

26

27

28

-19-

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Honorable Judith Ramseyer
Hearing: May 5, 2023
1:30 p.m.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

ALEXANDER BARRY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UNIVERSITY OF WASHINGTON, WILLIAM S. AYER, JOEL BENOLIEL, JOANNE HARRELL, JEREMY JAECH, LIBBY MACPHEE, CONSTANCE RICE, ROGELIO RIOJAS, BLANE TAMAKI, DAVID ZEEK and, ANA MARI CAUCE,

Defendants.

No. 20-2-13924-6 SEA

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## I.  INTRODUCTION AND RELIEF REQUESTED

Though shared by the entire world, the pandemic touched each person's life in a different way. Countless variables affected each person's ability to find a sense of security, purpose, and connection while in isolation. Students facing this challenge had to adapt in their own way based on their unique set of circumstances, like area of study, course load, learning style, support network, socioeconomic status, living situation, and personal and family health. Some struggled, others thrived. This class is not certifiable under CR 23 because the University's adoption of remote learning during the pandemic did not have the same effect on

**Hillis Clark Martin & Peterson P.S.**
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

all students. Barry claims that the value of the remote learning experience he received was less than the in-person experience he allegedly expected, but never explains how he measures the value of these two experiences. He never explains any concrete, nonspeculative harm he and the class allegedly shared, what methodology he would use to establish classwide damages, or how such a calculation would relate to the class's theory of liability. Proof of each is required under CR 23. Courts have refused to certify tuition refund classes when plaintiffs have failed to establish these elements. *See Cross v. Univ. of Toledo*, 199 N.E.3d 699, ¶¶ 25, 34, 36 (Ohio Ct. App. 2022); *Garcia De Leon v. New York Univ.*, 21 CIV 05005 (CM), 2022 WL 2237452, at *13-14, 17-18 (S.D.N.Y. June 22, 2022).

Certification is also improper under Washington law. Lawsuits seeking refunds from the state are not certifiable under *Lacey Nursing Center, Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 54-56, 905 P.2d 338 (1995). *Lacey* stands for the proposition that where plaintiffs seek refunds of payments to the state, and those refunds are governed by statute, class certification is improper unless the refund statute specifically authorizes class action suits. *Lacey* also held that where a statute requires that refund claimants establish certain facts before claiming a refund, class certification is barred because absent class members are unable to establish the statutory prerequisites. That is precisely the case here. Refunds of tuition and fees are governed by a statute that does not allow class action lawsuits. Furthermore, those students must establish that they meet certain prerequisites before they may qualify for a refund. These prerequisites cannot be established for the absent members of Barry's proposed class. No law or evidence supports certification here and the Court should deny Barry's motion.

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 2*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

## II.   STATEMENT OF FACTS

### A.   THE UNIVERSITY IS A STATE AGENCY OFFERING EDUCATION TO THE PUBLIC.

As an agency of the State of Washington, the University's powers and duties are limited to those specifically conferred by statute. *Univ. of Wash. v. City of Seattle*, 188 Wn.2d 823, 830-31, 839, 399 P.3d 519 (2017). Under state law, the University has a duty "to provide a liberal education in literature, science, art, law, medicine, military science and such other fields as may be established by the board of regents or by law." RCW 28B.20.020. Funding for this purpose comes in part from the taxpayers through appropriations from the State treasury. Peterson Decl., Ex H at 073. The legislature has also mandated that the University collect tuition and fees to support its budget. *See id.*, Ex. H at 071; RCW 28B.15.067(1), 28B.15.020.

### B.   BARRY'S PROGRAM IS FUNDED AND STRUCTURED DIFFERENTLY THAN MOST OTHER PROGRAMS.

While most programs at the University of Washington are supported by a combination of state funding and student tuition, Barry was enrolled in a fee-based program. *See* Peterson Decl., Exs. A at 005, B at 010. Fee-based programs are self-supported and are not subsidized by the State. *Id.* at Ex. A at 005. Students in these programs do not pay tuition, but instead pay fees that cover the actual cost of the program as budgeted nearly a year in advance. *See id.* Ex. B at 010. Students in the program pay fees (not tuition) to cover this budget. *Id.* In contrast, undergraduate students pay tuition and fees in amounts mandated by statute and in accordance with the budget set by the Board of Regents. *See Id.* Ex. C at 020. As part of its annual budget analysis, the University forecasts over 50 variables that drive costs. *Id.* Ex. C at 021-22.

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 3*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

Undergraduates pay tuition according to their residency status and credit load, not the actual cost of their program. *Id.*

Barry's program is different in other ways. He was enrolled in the Doctor of Physical Therapy (DPT) program, which is a professional program that selects a limited cohort of students each year. *Id.*, Ex. B at 010, 013-14. The cohort takes a sequence of hands-on and theoretical classes together in a specific order. *Id.*, Exs. B at 013-14, F at 041. The DPT program also had a unique response to the pandemic. It quickly reintroduced limited, in-person learning as early as Summer 2020 and restructured the order of its courses so that hands-on learning was shifted, whenever possible, to later in the program when Covid restrictions were expected to be lifted. *Id.*, Exs. B at 011, F at 050.

In contrast, undergraduate students have a less prescribed experience. They are not required to register for a series of lock-step courses or take classes at the same time in a small cohort. *See id.*, Ex. I at 078. For example, a full-time undergraduate student takes twelve or more credits per quarter and has choices about what those classes might be, including whether they take classes online or in person. *See id.*, Exs. I at 077, 079-080, O at 113. These students, then, would not have had the same expectations at matriculation as someone in the DPT cohort might have had.

### C.   BARRY SEEKS A REFUND BASED ON HIS PERCEPTION THAT HIS REMOTE EXPERIENCE HAD LESS VALUE.

In swift response to the pandemic, the University protected the safety of its students and employees by shifting all instruction to a remote model. *See id.*, Ex. E. The University announced this change before Spring quarter commenced in 2020. *Id.* Even though Barry knew that all Spring 2020 instruction would be remote, he alleges that the University has

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 4*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

harmed him by charging him the tuition and fees he willingly paid. *Id.*, Ex. F at 055;

Plaintiff's Motion for Class Certification ("Mot.") at 2. He seeks partial refunds of his tuition

and fees for Winter and Spring 2020 under the legal theories of breach of contract, breach of

implied contract, and unjust enrichment. *See* Mot. at 7, 14. All three claims are premised on

Barry's incorrect and unsupported allegation that his remote learning experience during the

pandemic was "less valuable" than his pre-pandemic in-person experience. *See* First

Amended Class Action Complaint for Damages ("FAC") ¶¶ 123.

      Nevertheless, he admits he substantially got what he paid for during Winter 2020.

Peterson Decl., Ex. F at 048. Throughout Winter and Spring 2020, Barry still attended office

hours and study groups, got good grades, earned credits that counted towards his degree, and

was able to continue his education without delaying his graduation. *Id.*, Exs. F at 043-45, 051,

055, G at 063-64. He admits the education he received prepared him for his profession. *Id.*,

Ex. F at 057. In fact, Barry passed his certification exam with flying colors *earlier* than was

typical. *Id.* at 055-056. He obtained a job, and, to his knowledge, no one questioned his

credentials due to his remote learning experience. *Id.*, Ex. F at 057. Despite his complaints,

Barry has expressed gratitude that he was able to continue his education and agrees that

switching to remote learning was in the best interests of students and faculty. *Id.*, Ex. F at 051.

      In essence, the harm Barry alleges he experienced was that everything became more

difficult and that he thinks he might have had a different experience if the pandemic had never

happened. *Id.*, Ex. F at 048. For he claims that because his teachers adapted office hours to be

pre-scheduled, one-on-one experiences, rather than spontaneous gatherings where multiple

students might attend, that he might have missed out on learning from professors and fellow

students. *Id.*, Ex. F at 045. He also speculates that he would have had more chances to

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

establish professional connections and make friends in person. *Id.* at 052, 057. At the same time, he admits he had resources—many provided by the University itself—to make these connections, even after the shift to remote learning. *Id.*, Exs. F at 039, 044-45, 052, E at 034.

### III.    STATEMENT OF ISSUES

1.    Are suits for tuition refunds from the State subject to class actions?

2.    Is class certification barred because Barry cannot establish class-wide damages by a reasonable, non-speculative methodology, as required by CR 23's commonality, typicality, and predominance requirements?

4.    If certified, should the class be narrowed to Barry's Department of Physical Therapy cohort?

### IV.    5.    IF CERTIFIED EVIDENCE RELIED UPON

This motion relies on the concurrently filed Declaration of Mary E. Peterson ("Peterson Decl.").

### V.    AUTHORITY

**A.    STUDENTS MAY NOT USE CLASS ACTIONS TO OBTAIN REFUNDS OF TUITION OR FEES PAID TO THE STATE.**

At state universities, payment of tuition and certain fees is required by law. RCW 28B.15.100 (requiring state university governing boards to charge and collect tuition fees, services and activities fess, and other fees established by governing boards), *see also* RCW 28B.15.069(2) (requiring the charge of a services and activities fee).[1] Additionally,

---

[1] RCW 28B.15.051 states that the governing board, upon written agreement with the relevant student government association "*may* establish and charge each enrolled student a technology fee" (emphasis added). But once established, the student technology fee also becomes mandatory. It may only be adjusted by agreement of the governing board and the student government association, and the fee is charged to students unless expressly abolished by the student government association. *See* RCW 28B.15.051(4).

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 6*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

statutes establish the amount of tuition and fees that must be charged and how they are used. *See* RCW 28B.15.210 (disposition of university building fees); RCW 28B.15.045 (collection and use of services and activities fees); RCW 28B.15.069(1) (mandatory minimum for building fees). Although Chapter 28B.15 RCW provides for several different waivers, exemptions, or reductions tuition and fees, they are authorized only in specific circumstances, none of which involve instructional changes (*e.g.*, the temporary transition to remote learning necessitated by a pandemic).

Refunds of tuition and fees from state universities are also governed by statute, RCW 28B.15.600. The statute establishes when and why state universities may refund tuition or fees. It authorizes refunds of tuition and services and activities fees if students withdraw from a state university course or program before certain quarter or semester deadlines. RCW 28B.15.600(1). The statute also authorizes state university governing board to adopt rules for refunds of tuition and fees for courses or programs that begin after the start of the quarter or semester. RCW 28B.15.600(2). The statute authorizes governing boards to extend the refund or cancellation periods for students who withdraw for medical reasons, requires governing boards to adopt certain refund polices for students called into military service, and authorizes governing boards to adopt rules regarding the refund other fees. RCW 28B.15.600(3). Refunds of tuition or fees from the state are otherwise not authorized.

Washington law precludes use of class actions to recover refunds from the state when a refund mechanism is provided by statute.[2] *Lacey*, 128 Wn.2d 40 at 51-54. In *Lacey*, nursing homes sought to certify a class of taxpayers seeking refunds of business and occupation

---

[2] In Barry's words, he requests damages in the form of a refund. Mot. at 7. Thus, there is no distinction between a claim for damages and a claim for a refund (in whole or in part).

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 7*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

("B&O") taxes paid to the state. *Lacey*, 128 Wn.2d at 42-43. Refunds of B&O taxes are also governed by statute, RCW 82.32.180. The trial court certified a class, and on appeal the Washington State Supreme Court reversed on two grounds. First, the Court analyzed the text of the refund statute and noted the statute "contains no express language authorizing class actions in suits for tax refunds." *Lacey*, 128 Wn.2d at 53. The Court reasoned that, "since the state waives sovereign immunity only to the extent provided in the statute, the statute must expressly authorize class actions." *Id.* at 53-54. Second, the Court reversed certification because the absent class members had not and could not satisfy the statutory prerequisites to obtaining a refund. *Id.* at 51-52.

Barry's request for class certification should be denied on these same bases, and regardless of whether CR 23's requirements are otherwise satisfied. Like the B&O tax refund statute in *Lacey*, the state university tuition and fee refund statute does not expressly authorize the use of class actions to recover refunds of tuition or fees. And also like in *Lacey*, Barry and absent class members cannot satisfy the statutory prerequisites to obtaining a refund of tuition or fees. There is no evidence Barry or other putative class members withdrew from classes to be eligible under RCW 28B.15.600(1), enrolled in classes that began after the start of the quarter under RCW 25B.15.600(2), or sought an administrative refund as permitted under RCW 25B.15.600(3). *See* Peterson Decl., Ex. F at 040.

In short, a statute dictates the manner in which tuition and fee refunds can be requested and granted, and neither Barry nor the proposed class followed those statutory rules. Instead, after receiving all the benefits of the instruction they paid for (knowing the experience would be remote), they have decided to demand a refund in a manner and on a

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 8*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

timeframe not permitted by statute. The Court should deny class certification on this basis alone.

## B.   THE PROPOSED CLASS DOES NOT MEET CR 23'S REQUIREMENTS.

The proposed class also does not satisfy the requirements of CR 23. Class treatment is an exception to the general rule that litigation is conducted only on behalf of named parties. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013).[3] The exception applies only when the class representative shows that their plan for litigating the case will not violate absent class members' due process rights. *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S. Ct. 115, 117, 85 L. Ed. 22 (1940); 1 Newberg and Rubenstein on Class Actions § 1:1 (6th ed.). To do this, the class representative must demonstrate on a preponderance of the evidence that the proposed class is in "strict conformity" with CR 23. *Oda v. State*, 111 Wn. App. 79, 92, 44 P.3d 8 (2002); *Southwell v. Mortgage Inv'rs Corp. of Ohio, Inc.*, C13-1289 MJP, 2014 WL 3956699, at *1 (W.D. Wash. Aug. 12, 2014) (unpublished).

Classes seeking money damages must meet six requirements under CR 23: numerosity, commonality, typicality, adequate representation, predominance, and superiority. CR 23(a), (b)(3). The class must also be identifiable. *Kihuria v. Consumer Legal Servs. Am., Inc.*, 5 Wn. App. 2d 1001, *1, *6 (2018) (unpublished). A "rigorous analysis" of the case, including the "claims, defenses, relevant facts, and applicable substantive law" is required to confirm "actual, not presumed" conformance with these prerequisites. *Oda*, 111 Wn. App. at

---

[3] Washington courts look to federal caselaw when interpreting CR 23. *Schnall v. AT & T Wireless Servs., Inc.*, 171 Wn.2d 260, 271, 259 P.3d 129 (2011).

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 9*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

91-92. This analysis stops short of ruling on the merits but assesses them as far as necessary to determine compliance with the rule. *Oda*, 111 Wn. App. at 93-94.

Civil Rule 23 is not a mere pleading standard. *Oda*, 111 Wn. App. at 92. Plaintiffs requesting certification must *prove* compliance. *Id.* But Barry has not met his burden to demonstrate the proposed class meets CR 23's commonality, typicality, predominance, or ascertainability requirements, nor can he. He has failed to identify any nonspeculative harm to all class members, any methodology for calculating class-wide damages, or how that methodology would relate to his theory of liability. Indeed, each student's educational expectations and experience—whether in person or remote—are an amalgamation of myriad personal and external factors with varying outcomes. These varied experiences do not lend themselves to class treatment. Moreover, because of Barry's unique experience, he is not a proper class representative. In any event, certification based on such scant proof would represent exactly the type of presumed conformance with CR 23 that Washington appellate courts have rejected. *See, e.g.*, *Oda*, 111 Wn. App. at 91-92, 94.

> 1.     **Certification is not proper because individual issues predominate.**

Predominance requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." CR 23(b)(3). But "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers*" capable of resolving an issue central to the validity of the class's claims "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). Those answers must contribute to a "common nucleus of operative facts" that, if true, could establish a class-wide right to recovery without needing to inquire into issues unique to

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 10*

Hɪʟʟɪs Cʟᴀʀᴋ Mᴀʀᴛɪɴ & Pᴇᴛᴇʀsᴏɴ P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

individual class members. *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn.2d 507, 516, 519, 415 P.3d 224 (2018); *Britton v. Servicelink Field Servs., LLC*, 2:18-CV-0041-TOR, 2019 WL 3400683, at *6 (E.D. Wash. July 26, 2019) (not reported); *see Schwendeman v. USAA Cas. Ins. Co.*, 116 Wn. App. 9, 20, 29, 65 P.3d 1 (2003). Moreover, predominance is not a "counting exercise." *Britton*, 2019 WL 3400683, at *6. Rather, the court investigates whether the issues requiring individual proof outweigh the common issues. *Id.* Due to its broad nature, this investigation often absorbs analysis of the commonality and typicality requirements, which require that the class and its representative share the same injury. *See Turk v. United Serv. Auto. Ass'n*, 6 Wn. App. 2d 1033 *7 (2018) (unpublished); *Dukes*, 564 U.S. at 349-50.

Because the CR 23 inquiry involves some amount of prediction about what litigation will require, it requires an exacting and stringent review of how the class will establish each element of its claims. *See Schwendeman*, 116 Wn. App. at 20; CR 23(b)(3).

### a.   *Barry will be required to show that he suffered actual damages—not merely a breach.*

In a breach of contract action where the only remedy sought is money damages, as is the case here, the claimant must prove that he was actually harmed to establish liability. *DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 179 Wn. App. 205, 227, 317 P.3d 543 (2014). This is true even when a claimant seeks nominal damages. *Id.* This rule strikes at the importance of establishing at class certification the *fact* that some damage occurred, rather than the exact dollar amount. *See id.*; *Gilmartin v. Stevens Inv. Co.*, 43 Wn.2d 289, 294, 261 P.2d 73 (1953), *adhered to on reh'g,* 43 Wn.2d 289, 266 P.2d 800 (1954). For example, in *Ketchum v. Albertson Bulb Gardens*, a flower grower sued his bulb supplier for delivering a different variety of tulip than what the contract required. 142 Wash. at 137-38. Despite

hearing testimony that the substitute bulbs had the same value on the market as the

contracted-for bulbs, the trial court held for the grower, reasoning that the substitution in and

of itself was "equivalent [to] an entire failure to deliver." *Id.* at 138. In reversing that decision,

the court held that if the varieties had equal market value, the plaintiff had suffered "no

damage by the substitution," which would bar even nominal damages and warrant dismissal.

*Id.* at 138-39. In other words, the replacement tulips may have been objectively different than

the contracted-for tulips, and perhaps even subjectively less attractive, but that does not mean

that the grower suffered a compensable harm. *See id.*

Here, Barry seeks only money damages.[4] He argues that if he can establish that the

University breached a contract with him, that alone will prove liability. Mot. at 13. But this is

not proof of the *fact* of his damage. *See DC Farms*, 179 Wn. App. at 227. And mere

speculation about damages is not enough. *Wilkerson v. Wegner*, 58 Wn. App. 404, 410, 793

P.2d 983 (1990).

### b.    Barry's alleged damages are entirely speculative.

Barry fails the commonality, typicality, and predominance requirements because he

does not explain how his vague, speculative allegations of harm translate into a diminished

value of remote instruction for the entire class. *See Turk*, 6 Wn. App. 2d 1033 at \*7; *Dukes*,

564 U.S. at 349-50; *Comcast*, 569 U.S. at 35-36. Barry speculates that his experience may

have been different had the pandemic not occurred, but the fact of damage may not be

---

[4] While Barry purports to request injunctive relief in his complaint, the only injunctive relief he identifies is a plain face request for damages. *See* FAC at 30. In any case, injunctive relief is not available because Barry does not allege imminent injury. *See Tyler Pipe Indus., Inc. v. State, Dep't of Revenue*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982).

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

established by alleging speculative or conjectural harm. Peterson Decl., Ex. F at 048-50; *Wilkerson*, 58 Wn. App. at 410.

The fact of damage must be "susceptible of ascertainment in some manner other than by mere speculation, conjecture, or surmise and by reference to some definite standard, such as market value, established experience, or direct inference from known circumstances." *See Gaasland Co. v. Hyak Lumber & Millwork, Inc.*, 42 Wn.2d 705, 713, 257 P.2d 784 (1953) (emphasis omitted). If it is not obvious which "definite standard" will establish the fact of damage, the class representative is required to present a reasonable, non-speculative methodology for establishing it. *Admasu*, 185 Wn. App. at 33; *Comcast*, 569 U.S. at 35-36; *See Schwendeman*, 116 Wn. App. at 20. Additionally, confirming that the methodology is premised on "just and reasonable inferences," and not speculative or arbitrary measurements, is essential to prevent the "predominance requirement [from becoming] a nullity." *Comcast*, 569 U.S. at 35-36.

Speculative harms and unreasonable, arbitrary measurements often indicate that individual inquiries will overshadow any common ones. *Schwendeman v. USAA* is instructive on this point. *See Schwendeman*, 116 Wn. App. at 11. Schwendeman sued his car insurer, USAA, for breach of contract. *Id.* at 21. He alleged that USAA's practice of approving replacement car parts that were not made by the original manufacturer ("OEM parts") breached USAA's duty to use replacements of "like kind and quality." *Id.* He argued that resolution of the class's claims required nothing more than comparing one non-OEM part with its OEM counterpart because he predicted that "regardless of what part is compared, the non-OEM part will always be inferior." *Id.* The court disagreed because non-OEM parts could in fact be equal to, or greater in value than, the OEM parts. *Id.* at 21, 29 n.34. Furthermore,

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 13*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

the court denied certification because resolution of each class member's claim would require assessing the value of the original part and the replacement part on each of the class members' cars. *Id.* at 22. The court concluded that the predominance requirement was not met because litigating the claims would require investigating "so many variables that the questions are more individualized than common to all class members." *Id.* at 23. In sum, the only commonality shared by this class was its claim—not its injury or fact of damage.

Similarly, in *Wal-Mart v. Dukes*, the Supreme Court declined to certify a class of female Wal-Mart employees alleging sex discrimination. *Id.* at 352. The Court held that the plaintiffs did not share commonality because they shared "little in common" aside from their gender. *Id.* at 360. They "held a multitude of jobs, at different levels . . . for variable lengths of time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of supervisors . . . subject to a variety of regional policies that all differed." *Id.* at 359-60. And they did not share an injury because "[s]ome thrived while others did poorly." *Id.*

This case is like *Schwendeman* and *Dukes*. The harms Barry alleges are too speculative and individualized to support his assertion that the entire class's remote instruction experience had lesser value than what they allegedly expected. He hypothesizes that he would have liked to have attended more in-person events, had he not been following state quarantining requirements that would have prevented that. Peterson Decl., Ex. F at 49. He predicts that he might have made more friends, might have developed more professional connections, and that he might have benefited from more lab time. *Id.*, Ex. F at 050, 052, 057. But this speculation does not prove that the value of his or other class members' experiences had less value. Indeed, Barry admits he has no sense of what the difference in value was and

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 14*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

incorrectly concludes that this Court does not need to know either. *Id.*, Ex. F at 055; Mot. at 8 n.36.

It is not apparent, then, how Barry intends to prove his fact of damage by some reasonable measurement. There is no straightforward way to measure the "difference" in value between in-person and remote learning, and it certainly cannot be done for an entire university full of different students taking all manner of different types of classes. Barry does not explain how he would isolate the variable of in-person learning, assign it a non-subjective value, or calculate the value of in-person versus remote learning. He notes that tuition for Western Governor's University (WGU) is less than the University's tuition, but this is not a plausible comparison, especially for an entire class of students. FAC ¶¶ 56-60. First, WGU does not have an online physical therapy program that Barry could have attended. *See* Peterson Decl., Ex. J. Even if WGU offered each of the programs the class members were enrolled in at the University, comparing them for every student would require countless individualized factfinding inquiries. Second, this self-serving comparison fails to consider the other factors that contribute to the "value" of the University of Washington compared to other schools—including its industry-leading qualifications and experience of its instructors, the academic caliber of the student body, the value of a University of Washington degree in the job market, its reputation as a preeminent research institution, and international recognition and respect for the University of Washington brand. If Barry means to make some other comparison, it is difficult to imagine a plausible one.

Indeed, the evidence *rebuts* an inference that remote education was less valuable. Remote instruction cost the University more—not less. Peterson Decl., Ex. C at 022-23. And, before the pandemic, it charged the same amount (or more) for a class regardless of whether it

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 15*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

was held in person or online. *Id.*, Exs. C at 021, K, O. Moreover, Barry's admissions demonstrate how he and other class members *benefited* from a continued education during the pandemic. He admits he got what he paid for in Winter 2020 and that he was grateful he had the opportunity to continue his education into Spring 2020. *Id.*, Ex. F at 048, 051. He still met professors during office hours, attended study groups, maintained good grades, and earned credits that counted towards his degree. *Id.*, Exs. F at 043-45, 051, 055, G at 063-64. And while he missed out on anticipated lab time during Spring 2020, he admits the very next quarter the University arranged for him to make up enough of that time *in person* to get the education he needed to help prepare him for his profession. *Id.* Ex. F at 051, 053, 057. He graduated on time and even took his professional certification exam early. *Id.*, Ex. F at 055. Despite his demonstrated achievements, Barry vaguely asserts that he is entitled to a partial refund because the transition to remote learning was difficult "because people weren't prepared." *Id.* at 048.

        Barry's allegations show the necessity of individual inquiries. While he may personally have had a harder time connecting with others in a remote environment, the University did not impose a top-down policy preventing connections. *See id.*, Ex. F at 054, 057. Class members, who were enrolled in various classes taught with varying teaching methods and styles, all made their own decisions on how to respond to the pandemic. *See* Peterson Decl. Ex. C at 024. Comparing each student's unique experience of learning and connecting with others before and after the switch to remote learning would require individualized factfinding. The analysis necessarily depends on the particular circumstances faced by each student—including how their teacher adapted their course to a remote format, how they conducted office hours, whether clubs or other organizations the student was

involved in met remotely, and that student's learning styles, home life, and other myriad factors. Whether the shift to remote instruction provided instruction of a different value, then, is largely subjective. If auto parts were not common enough for class certification, individual educational experiences certainly are not.

### c. The harms Barry alleges are barred by the educational malpractice doctrine

Barry also fails to meet the strict requirements of CR 23 because he does not show how his damages methodology relates to his theory of liability, which is required to establish predominance. *See, e.g., Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016). Otherwise, the methodology could identify damages "that are not the result of the wrong." *Comcast*, 569 U.S. at 35.

Barry cannot present a methodology that that would not be based on impermissible theories. Barry asserts that his "experience" had less value, but it is unclear how he will demonstrate this without asserting damages that are based on students' subjective experiences. Suing the University over the quality of their experience is just a claim for educational malpractice—which is not a recognized cause of action in Washington. *Payne v. Peninsula Sch. Dist.*, No. 3:05–CV–05780, 2013 WL 4676041 (W.D. Wash. Aug. 30, 2013), *rev'd on other grounds*, 623 Fed. Appx. 846 (2015). For similar reasons, it is not suitable for a class action. Nor is it clear how Barry intends to isolate damage caused from the pandemic generally from the alleged damage that occurred due to remote learning.

### d. Establishing unjust enrichment on a class-wide basis will require delving into each class member's personal circumstances.

Barry's unjust enrichment claim also does not meet the requirements of CR 23. "[C]ommon questions will rarely, if ever, predominate an unjust enrichment claim, the

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 17*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

resolution of which turns on individualized facts." *Little v. Grand Canyon Univ.*, CV-20-00795-PHX-SMB, 2022 WL 266726, at *7 (D. Ariz. Jan. 28, 2022). Here, students paid countless combinations of different fees and tuition for enrollment in hundreds of programs and thousands of classes. Peterson Decl., Exs. H at 070-71, L. Investigating each fee paid by each student, where the student believed the fee was going, and how that money was ultimately spent, would result in labyrinthine calculations. Common issues do not predominate on this claim, nor any other claim in this case.

**2.    Barry's enrollment in a specialized program renders him atypical.**

Barry is not a suitable class representative because his graduate program had distinctive financial and educational structures. The class representative's claims must be typical of the claims of the class. CR 23(a)(3). He must premise those claims on same legal theory as the other class members, and demonstrate that he could "establish liability by using representative evidence." *Worley v. Cedar Recycling Inc.*, 22 Wn. App. 2d 1025 (2022). He must also show that adjudication of his claims would result in "full and fair consideration" of the remaining class members' claims. *Hansberry*, 311 U.S. at 43.

Students in the undergraduate programs pay the same rate of tuition, regardless of what it costs the University to administer that program. *See, e.g.*, Peterson Decl., Ex. K. Most programs at the University of Washington are supported by a combination of funding from the State of Washington and student tuition. *Id.* Ex. A at 005. In contrast, Barry attended a fee-based program that does not receive state subsidies. *Id.*, Ex. B at 010. The entire cost of the program is projected before the school year starts and bears direct relationship to the number of students who attend the program. *See id.*; *id.* Exs. M at 106, N.

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 18*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

Barry's legal theory reflects this disconnect from the rest of the student body. He claims that he is entitled to a pro-rated tuition reimbursement because the "the costs incurred by [the University] to operate an online program and closed campus" is allegedly "significantly lower than the cost and overhead necessary to provide classes and services on campus and in person." FAC ¶ 131. Barry's theory of what the class should recover does not take programs' varied funding mechanisms into account or contemplate that other programs are not run on the same sort of balance sheet that his own was.

Allowing Barry to adjudicate non-fee-based students' claims would not allow for full and fair adjudication of these students' claims. At most, Barry alleges particularized claims that apply only to the students enrolled in his DPT cohort. These are the only students who would premise their claims on the same legal theory as Barry. And while these students' individual expectations, goals, and experiences will differ, they are the only students who Barry could adequately represent. If a class were to be certified, it should be limited to Barry's cohort of 46 students.

C.     THE CLASS IS NOT IDENTIFIABLE.

An implied condition of class certification is that there be a "sufficiently identifiable" class. *Kihuria*, 5 Wn. App. 2d 1001 at *6. A class is not identifiable if a determination on the merits is necessary to define its scope. *Id.* Certifying such a class would potentially "deprive the judgment of preclusive effect" if the defendant prevails, because future litigants could claim that "the losing 'class' lacked any members." *Bolden v. Walsh Const. Co.*, 688 F.3d 893, 895 (7th Cir. 2012).

Here, the class is not identifiable because Barry defines the class as including "[a]ll students who were enrolled in and *paid for . . . in-person based* educational programs,

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 19*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

services, and courses." Mot. at 2 (emphasis added). Under this definition, no students qualify as class members because no student paid for "in-person" programs, services, or courses. Barry contests this fact, which necessitates a finding on the merits before determining whether the class includes any students at all. As such, this class is not sufficiently identifiable to qualify for certification.

### D.   IF CERTIFIED, THE CLASS SHOULD EXCLUDE DISSIMILAR AND IMPROPER PARTIES.

If the Court certifies a class, it should exclude certain persons it would be inappropriate to include. *See Victorino v. FCA US LLC*, 326 F.R.D. 282, 301 (S.D. Cal. 2018) ("[C]ourts have the inherent power to modify overbroad class definitions."). It would not be appropriate to include some students because they could not have been injured by the transition to remote learning. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012) (classes should not be certified if the class definition is so broad that it sweeps in persons who could not have possibly been injured). This includes students who continued to receive remote instruction (like certain medical and international students), who were enrolled only in classes labelled as being held online, who received refunds, or who did not timely pay their tuition and fees. And in accordance with Barry's theory of the case and his class definition, and students who did not receive offers of admission (*i.e.,* nonmatriculated students) should not be included. The class should also exclude other categories of students, which the University will identify in its proposed order, to avoid conflicts of interest.

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 20*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

# VI.   CONCLUSION

The pandemic affected students differently, and Plaintiff's request for class certification is also contrary to the state statute governing tuition refunds. The Court should deny Plaintiff's motion.

I certify that this memorandum contains 5,969 words, in compliance with the Local Civil Rules.

Dated this 15th day of February, 2023.

HILLIS CLARK MARTIN & PETERSON P.S.

By <u>s/Mary Crego Peterson</u>
Mary Crego Peterson, WSBA #31593
Alexander M. Wu, WSBA #40649
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745; Fax: (206) 623-7789
Email: mary.peterson@hcmp.com;
alex.wu@hcmp.com

Special Assistant Attorneys General
Attorneys for University of Washington

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 21*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

## CERTIFICATE OF SERVICE

I, Erika M. Donis, caused to be served a true and correct copy of the foregoing

*Defendant's Opposition to Motion for Class Certification* by method indicated below and

addressed to the following:

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

*Delivery Via:*
[ ] U.S. Mail
[ ] Overnight Mail
[ ] Facsimile
[☒] E-Mail
[☒] King County ECF

Daniel J. Kurowski (*Pro Hac Vice*)
Whitney K. Siehl (*Pro Hac Vice*)
Hagens Berman Sobol Shapiro LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

Gary Lynch (*Pro Hac Vice*)
Edward W. Ciolko (*Pro Hac Vice*)
Nicholas A. Colella (*Pro Hac Vice*)
Carlson Lynch LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
glynch@carlsonlynch.com
eciolko@carlsonlynch.com
ncolella@carlsonlynch.com
*Counsel for Plaintiff*

I certify under penalty of perjury under the laws of the State of Washington that the

foregoing is true and correct

DATED this 15th day of February, 2023, at Seattle, Washington.

HILLIS CLARK MARTIN & PETERSON P.S.


*s/Erika M. Donis*
Erika M. Donis, Legal Assistant
erika.donis@hcmp.com

ND: 12662.10307 4860-3801-7861v15

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION: NO. 20-2-13924-6 SEA - 22*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745
Fax: (206) 623-7789

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Honorable Judith H. Ramseyer
Hearing: May 5, 2023
10:15 AM

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR KING COUNTY**

| | |
|---|---|
| ALEXANDER BARRY, individually and on behalf of all others similarly situated, | No. 20-2-13924-6-SEA |
| Plaintiff, | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| v. | |
| UNIVERSITY OF WASHINGTON, | |
| Defendant. | |



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

# TABLE OF CONTENTS

**Page**

I.   Introduction...................................................................................................1

II.  Argument .....................................................................................................1

    A.   UW does not dispute several CR 23 factors. .........................................1

    B.   Plaintiff's claims are typical given the common claims and defenses here.............2

    C.   Common issues predominate under CR 23(b)(3) given UW's common conduct in converting all students from in-person instruction and experiences to remote, online education and experiences. ...................................3

        1.   The fact of and amount of damages can be shown on a class-wide basis. ..3

        2.   Damages can be measured using classwide evidence................................4

        3.   The educational malpractice doctrine still does not apply.........................6

        4.   Plaintiff's unjust enrichment claims rise from UW's common conduct......6

    D.   The class is ascertainable given UW's own records. .................................7

    E.   RCW § 28B.15.600 still does not apply. ................................................9

    F.   Plaintiff properly defines the proposed class. ........................................11

III. Conclusion ..................................................................................................11



# TABLE OF AUTHORITIES

## CASES

Page(s)

*Architectural Woods v. State*,
92 Wash. 2d 521, 598 P.2d 1372 (1979)..................................................................10

*Arredondo v. Univ. of La. Verne*,
341 F.R.D. 47 (C.D. Cal. 2022)...........................................................................2, 3, 4, 5

*B.E. v. Teeter*,
2016 WL 3939674 (W.D. Wash. July 21, 2016) ....................................................8

*Basso v. N.Y. Univ.*,
363 F. Supp. 3d 413 (S.D.N.Y. 2019) ....................................................................2

*Bolden v. Walsh Constr. Co.*,
688 F.3d 893 (7th Cir. 2012) ..................................................................................8

*Booth v. Molloy Coll.*,
2022 N.Y. Misc. LEXIS 9176 (Sup. Ct. NY Nassau Cnty. Dec. 12, 2022) ...........7

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ................................................................................8

*Cartwright v. Viking Indus.*,
2009 WL 2982887 (E.D. Cal. Sept. 11, 2009).......................................................7

*In re Checking Account Overdraft Litig.*,
286 F.R.D. 645 (S.D. Fla. 2012).............................................................................7

*Colo. Structures, Inc. v. Ins. Co. of the W.*,
161 Wash. 2d 577, 167 P.3d 1125 (2007)...............................................................3

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)...................................................................................................5

*Eastlake Constr. Co. v. Hess*,
102 Wash. 2d 30, 686 P.2d 465 (1984)...................................................................5

*Ellerman v. Centerpoint Prepress, Inc.*,
143 Wash. 2d 514, 22 P.3d 795 (2001).................................................................11

*Gilmartin v. Stevens Inv. Co.*,
43 Wn.2d 289, 261 P.2d 73 (1953).........................................................................3

*John Doe L v. Pierce Cnty.*,
7 Wash. App. 2d 157, 203, 433 P.3d 838 (2018).....................................................2

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION                - ii -
CASE NO. 20-2-13924-6-SEA
010920-41/2226350 V1

**HAGENS BERMAN**
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

*Keilholtz v. Lennox Hearth Prods.*,
   268 F.R.D. 330 (N.D. Cal. 2010)............................................................................7

*Ketchum v. Albertson Bulb Gardens*,
   142 Wash. 134 (1927)...........................................................................................3

*Kihuria v. Consumer Legal Servs. Am., Inc.*,
   5 Wash. App. 2d 1001 (2018)...............................................................................8

*Lacey Nursing v. Dep't of Revenue*,
   128 Wash. 2d 40, 905 P.2d 338 (1995)..........................................................10, 11

*Last, Schwendeman v. USAA Cas. Ins. Co.*,
   116 Wash. App. 9, 65 P.3d 1 (2003).....................................................................5

*Little v. Grand Canyon Univ.*,
   2022 WL 266726 (D. Ariz. Jan. 28, 2022) .....................................................2, 7, 9

*Oda v. State*,
   111 Wash. App. 79, 44 P.3d 8 (2002)..................................................................10

*Omori v. Brandeis Univ.*,
   2022 WL 10511039 (D. Mass. 2002) ...................................................................10

*Sitton v. State Farm Mut. Auto. Ins. Co.*,
   116 Wash. App. 245, 63 P.3d 198 (2003)..............................................................1

*Smith v. Behr Process Corp.*,
   113 Wash. App. 306, 54 P.3d 665 (2002)..............................................................1

*Trimble v. Holmes Harbor Sewer Dist.*,
   2003 WL 23100273 (Sup. Ct. Wash. 2003)...........................................................7

*Usry v. EquityExperts.org, LLC*,
   2020 WL 1080394 (S.D. Ga. Mar. 5, 2020) ..........................................................7

*Vega v. T-Mobile USA, Inc.*,
   564 F.3d 1256 (11th Cir. 2009) ...........................................................................7

*Wright v. S.N.H. Univ.*,
   565 F. Supp. 3d 193 (D.N.H. 2021).....................................................................2

*Young v. Young*,
   164 Wash. 2d 477, 191 P.3d 1258 (2008).............................................................6

**OTHER AUTHORITIES**

RCW § 28B.15.600.................................................................................9, 10, 11

RCW § 82.32.180.................................................................................................10



# I.     INTRODUCTION

Even though "CR 23 is to be construed liberally in favor of permitting certification." *Sitton v. State Farm Mut. Auto. Ins. Co.*, 116 Wash. App. 245, 256, 63 P.3d 198, 205 (2003), Defendant University of Washington ("UW"), asks this Court to do the opposite by seeking a denial of Plaintiff's motion for class certification. But UW's opposition presents nothing that should sway the Court from granting Plaintiff's motion. UW recycles two failed motion to dismiss arguments (an inapplicable statutory refund provision and educational malpractice), offers no dispute for several of the CR 23 factors (numerosity, adequacy of counsel, superiority), and provides no real dispute for several others by mentioning them in passing with no specific analysis (commonality and adequacy of plaintiff). And where UW does offer specific oppositions (typicality and predominance), it identifies no individual issue that would predominate, let alone render Plaintiff's claims atypical of the class claims. This failure is not surprising where it is undisputed that UW uniformly transitioned all of its in-person programs and classes to remote-only classes in response to the COVID-19 pandemic. In other words, UW treated all members of the proposed class the same, making this a paradigm class-for-class certification.

# II.     ARGUMENT

## A.    UW does not dispute several CR 23 factors.

UW offers no arguments against several CR 23 factors. These include numerosity under CR 23(a)(1) (*see* Pl.'s Mot. Class Cert. at § V.A.1), the qualifications or adequacy of proposed class counsel under CR 23(a)(4) (*id.* at § V.A.4), and the superiority prong of CR 23(b)(3) (*id.* § V.B.2). UW's failure to respond to these arguments is a waiver. For two other elements, UW offers no focused challenge, briefly mentioning the CR 23 elements of commonality (Opp. at 10, 11, 12, 14) and adequacy (*id.* at 19) as part of its myopic focus on predominance of common facts (which does not challenge that common issues of *law* predominate). Such concessions are not unwarranted in a case alleging UW switched all in-person students to online classes and barred them from campus given (1) the "low threshold" necessary to satisfy commonality, *Smith v. Behr Process Corp.*, 113 Wash. App. 306, 318, 54 P.3d 665 (2002) and (2) the easily met

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA
010920-41/2226350 V1

- 1 -

**HAGENS BERMAN**

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  adequacy requirement which looks to whether Plaintiff's claims arise from the same conduct that

2  gives rise to the claims of the other class members. *John Doe L v. Pierce Cnty.*, 7 Wash. App. 2d

3  157, 203, 433 P.3d 838 (2018). *See* Mot. §§ V.A.2–3.

4  **B.    Plaintiff's claims are typical given the common claims and defenses here.**

5      UW challenges CR 23(a)'s typicality requirement. Opp. at 18. Typicality only requires

6  that the "claims or defenses of the representative parties [be] typical of the claims or defenses of

7  the class." CR 23(a)(3). Plaintiff and class members were subject to the same promises of full

8  access to in-person/campus-based courses and experiences and their claims arise from the same

9  course of conduct by UW. This course of conduct includes, *inter alia*: (1) UW's representations

10  regarding and customary practice of providing in-person instruction after the payment of tuition,

11  (2) UW's complete transition from in-person to online instruction in March 2020, (3) UW's

12  unjust retention of full tuition and fees, and (4) its refusal to prorate tuition and fees despite

13  significantly changed circumstances. Plaintiff's claims are thus typical under CR 23(a)(3). Nor

14  should class certification be limited solely to students in his particular program, Opp. at 19, as

15  ***UW transitioned all class members to remote courses***. State subsidies or variable fees due to

16  enrollment have no bearing on UW's common course of conduct transitioning to remote

17  education for all class members. *Cf.* Berman Reply Decl., Ex. 1 at MTD Hrg. Tr. 35:6–12

18  (arguing fee issue) (Exhibit p. 36). Typicality is met even if Plaintiff and other class members

19  paid different tuition or fee amounts. *See Little v. Grand Canyon Univ.*, 2022 WL 266726, at *6

20  (D. Ariz. Jan. 28, 2022) ("That Plaintiff did not pay the same fees as every member of the class

21  is irrelevant as long as Plaintiff endured a course of conduct directed against the class.

22  Accordingly, Plaintiff has satisfied the requirement for typicality."); *Arredondo v. Univ. of La.

23  Verne*, 341 F.R.D. 47, 51–52 (C.D. Cal. 2022) (finding typicality despite argument that receipt of

24  scholarships made plaintiff atypical); *Wright v. S.N.H. Univ.*, 565 F. Supp. 3d 193, 205 (D.N.H.

25  2021) (finding class claims were likely susceptible to class-wide proof); *Basso v. N.Y. Univ.*, 363

26  F. Supp. 3d 413, 424 (S.D.N.Y. 2019) (certifying class due to tuition retention without providing

27  benefits).

28

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION          - 2 -
CASE NO. 20-2-13924-6-SEA
010920-41/2226350 V1

**HAGENS BERMAN**

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**C.     Common issues predominate under CR 23(b)(3) given UW's common conduct in converting all students from in-person instruction and experiences to remote, online education and experiences.**

**1.     The fact of and amount of damages can be shown on a class-wide basis.**

For its first argument against predominance specific to Plaintiff's contract claim, UW argues that Plaintiff "must prove that he was actually harmed to establish liability." Opp. at 11. UW misrepresents Plaintiff's arguments regarding damages, contending Plaintiff "argues that if he can establish that the University breached a contract with him, that alone will prove liability." Opp. at 12 (citing Mot. at 13). Plaintiff made no such argument, instead repeatedly noting how the fact and measurement of damages is an element of his claim and ultimately a class-wide issue. *See, e.g.*, Mot. at 8 n.36; *id.* at 10:20–21; *id.* at 13:22–23; *id.* at 14:2–3; *id.* at 15:4–16. This is a strawman argument and, ultimately, one that ignores Washington law, which recognizes that "any breach will give rise to cause of action for damages." *Colo. Structures, Inc. v. Ins. Co. of the W.*, 161 Wash. 2d 577, 594, 167 P.3d 1125, 1135 (2007) (quotation and citation omitted). While UW's case support for its first predominance argument is sparse and not in the CR 23 context, let alone predominance specifically, further review of these cases ***support*** the case for class certification. For example, *Ketchum v. Albertson Bulb Gardens*, 142 Wash. 134 (1927), noted following a jury trial that "if the bulbs delivered in place of the bulbs contracted for were of a value equal to the contracted bulbs, the respondent suffered no damage by the substitution." *Id.* at 138. Here, at trial, UW can present evidence of this defense to the jury—***on a class-wide basis***—that Plaintiff and the Class suffered no damage because the distance education and experiences it delivered in place of the in-person education/experiences contracted for was of a value equal to the contracted education/experiences. *See id.* Similarly, in another case which followed a trial, the court recognized that a jury could award the plaintiff "money damages for any difference in value between what it had expected to receive (potatoes having the preglass contamination characteristics of the Crop) and what DC Farms was able to deliver instead[,]" which can be answered class wide here. *Id.* at 230. *Cf. Gilmartin v. Stevens Inv. Co.*, 43 Wn.2d 289, 261 P.2d 73 (1953) (difference between value of land with water and without). Echoing Washington's requirements, the decision in *Arredondo* is instructive. Evaluating predominance,

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA
010920-41/2226350 V1

- 3 -

**HAGENS BERMAN**
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   the court explained in this context that "[d]amages are capable of measurement on a classwide

2   basis when the damages calculation is attributable to a plaintiff's theory of harm[]" were "[f]or

3   the period class members took online classes in lieu of in-person classes, damages are the

4   difference between what each class member paid and the market value of the education they

5   received." *Arredondo*, 341 F.R.D. at 53 (citation omitted). So too here. Damages issues

6   predominate.

7   **2.      Damages can be measured using classwide evidence.**

8          For its second argument against predominance of Plaintiff's contract claim, UW contends

9   that Plaintiff's alleged damages are speculative, which is a premature merits question. Opp. at

10  13. Similarly, UW argues that it is not apparent how Plaintiff intends to prove his fact of damage

11  by some reasonable measurement, declaring *ipse dixit*, that there "is no straightforward way to

12  measure the 'difference' in value between in-person and remote learning" whether individually

13  or class-wide." Opp. at 15. However, in doing so, UW inadvertently notes the flexibility by

14  which contract damages can be measured in Washington, quoting *Gaasland Co. v. Hyak Lumber*

15  *& Millwork, Inc.*, for its non-exclusive identification of the different ways to determine damages,

16  "'such as market value, established experience, or direct inference from known circumstances.'"

17  Opp. at 13 (quoting *Gaasland Co. v. Hyak Lumber & Millwork*, 42 Wn.2d 705, 713 (1953)).

18         Though Plaintiff's expert disclosure is not due until July 7, 2023, Plaintiff has disclosed

19  his damages expert with this reply early to mute this argument. Like in *Arredondo*, Plaintiff

20  presents an articulable theory of damages capable of classwide resolution. Damages for the

21  period class members took online classes in lieu of in-person classes are the "difference between

22  what each class member paid and the market value of the education they received." *Arredondo*,

23  341 F.R.D. at 53.[1] Berman Reply Decl., Ex. 5 at Cowan Report ¶¶ 24–25, 32–50 (Exhibit pp.

24

25         [1] In academia, "on the ground campus," refers to face-to-face teaching, not an online
    teaching format. *See* Charlotte P. Cochran, *Faculty Transitions to Online Instruction: A*
26  *Qualitative Case Study*, Northcentral University, May 2015, at p. 6 ("face-to-face (i.e., on-
    ground) teaching format") (Berman Reply Decl., Ex. 2) (Exhibit p. 50); Thad Crews & Jeff
27  Butterfield, *Data for Flipped Classroom Design: Using Student Feedback to Identify the Best*
    *Components from Online and Face-to-Face Classes*, 4 Higher Educ. Studies 38, 40 (2014)
28  (survey study asking students, "[t]hink back on the face-to-face (on- ground) classes") (Berman
    Reply Decl., Ex. 3) (Exhibit p. 66); Mordechai Gordon, *Synchronous Teaching and Learning:*

**HAGENS BERMAN**

94–95; 97–105). A classwide methodology can be reliably applied and replicated to compute the but-for prices that should have been charged to students during the time that students were switched from the on-ground courses to on-line courses. *Id.* ¶¶ 51–64 (Exhibit pp. 20–110). The difference between what was charged to the students and the value received provides a reliable estimate of damages. *Id.* ¶¶ 70–77 (Exhibit pp. 113–116). This formula can be applied uniformly to all students. *Id.* ¶ 76 (Exhibit pp. 115). Such an approach follows Plaintiff's theory of liability consistent with *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). *See Arredondo*, 341 F.R.D. at 53.

UW also argues against predominance by asserting another merits (not class) argument, that its emergency "[r]emote instruction cost the University more – not less." Opp. at 15. But UW's *costs* to reduce the extent of its breach are not part of the formula in the breach of contract damages analysis and cannot cause individual issues to predominate over common ones. *Eastlake Constr. Co. v. Hess*, 102 Wash. 2d 30, 39, 686 P.2d 465, 470 (1984) ("The general measure of damages for breach of contract is that the injured party is entitled (1) to recovery of all damages that accrue naturally from the breach, and (2) to be put into as good a pecuniary position as he would have had if the contract had been performed."). Nor does UW's contention that "before the pandemic, it charged the same amount (or more) for a class regardless of whether it was held in person or online" mean individual issues predominate. Opp. at 15–16. To the contrary, that, it charged the same evinces classwide issues, not individual ones, and ultimately involves a fact unnecessary to calculate damages on a class wide basis. *See* Berman Reply Decl., Ex. 5 at Cowan Report ¶¶ 61–76 (Exhibit pp. 109–115).

*Last, Schwendeman v. USAA Cas. Ins. Co.*, 116 Wash. App. 9, 21, 65 P.3d 1, 7 (2003) does not aid UW's bid to defeat class certification. Opp. at 13–14. There, the court focused on the meaning of a particular term with a specific meaning under an insurance policy, which qualified the phrase "like kind and quality" to specifically include analysis of each vehicle's age, use, and condition. UW identifies no such similar provision here. *Schwendeman* does not

---

*On- Ground Versus Zoom*, 6 Int'l. Journal Educ. and Human Devs. 11, 18 (2020) ("the synchronous Zoom instruction that many educators were recently required to employ cannot be simply equated with face-to-face, on-ground teaching and learning.") (Berman Reply Decl., Ex. 4) (Exhibit p. 82).

**HAGENS BERMAN**

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

mandate a departure from the reasoning in the cases certifying student claims in this case. Common questions of law and fact predominate.

**3.     The educational malpractice doctrine still does not apply.**

UW again seeks to apply the educational malpractice doctrine even though it is not relevant to CR 23's issues. Opp. at 17. This Court previously rejected the applicability of the educational malpractice arguments and should do so again. This Court and numerous other courts determined educational malpractice does not bar claims based on the promise of in-person/on-campus education and experiences. Berman Reply Decl., Ex. 1 at MTD Hrg. Tr. 38:21–24, 39:20–22 (Exhibit pp. 39–40) ("The plaintiffs argue that this is not educational malpractice but specifically a failure to provide those promised services like in-person education which is different than signing up for an online education … I agree with the plaintiff on the contract claims that the plaintiff alleges specific promises to a full on-campus educational experience."). Plaintiff's damages do not consider educational quality. *Id.* at Ex. 5 Cowan Report ¶ 19 (Exhibit pp. 92–93). Plaintiff did not receive the in-person, on-campus education/experiences for which he and the class paid.

**4.     Plaintiff's unjust enrichment claims rise from UW's common conduct.**

Common issues also predominate for Plaintiff's unjust enrichment claim. It remains unjust for UW to retain the benefit of full tuition and fees when Plaintiff and class members did not receive in-person, on-campus experiences. A claim of unjust enrichment requires proof of three elements: "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." *Young v. Young*, 164 Wash. 2d 477, at 484–85, 191 P.3d 1258 (2008). Here, Plaintiff alleges a common practice with issues not specific to any single class member. UW charged Plaintiff and class members tuition at the start and provided an in-person, on-campus experience from the start of Winter Quarter 2020 until March 9, 2020, when UW switched all in-person courses to fully online formats and stopped providing access to campus facilities and in-person resources. FAC ¶ 66. All the while, UW retained the full amount of Plaintiff and class members'

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA
010920-41/2226350 V1

- 6 -

**HAGENS BERMAN**
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

tuition payments and maintained a uniform, no-refund policy. This uniform conduct does not require "delving into each class member's personal circumstances." Opp. at 17.

UW relies on *Little*, 2022 WL 266726, at *7 (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009)), to argue against certification. Central to *Vega* was its finding that there was "no evidence that the circumstances under which T–Mobile accepted a benefit from each of the putative class members…were common." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009). But that is not the situation here, as Plaintiff and each class member clearly paid and bargained for access to a suite of on-campus/in-person based educational services which they did not receive. Unjust enrichment claims are regularly certified when there is a common course of conduct by defendants. *See Booth v. Molloy Coll.*, 2022 N.Y. Misc. LEXIS 9176 (Sup. Ct. NY Nassau Cnty. Dec. 12, 2022) (analogous COVID-19 remote transition action); *Trimble v. Holmes Harbor Sewer Dist.*, 2003 WL 23100273 (Sup. Ct. Wash. 2003); *Usry v. EquityExperts.org, LLC*, 2020 WL 1080394, at *12 (S.D. Ga. Mar. 5, 2020) (certifying unjust enrichment claim after quoting same section of *Vega* as *Little*); *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 657–58 (S.D. Fla. 2012) ("Unjust enrichment claims can be certified for class treatment where there are common circumstances bearing on whether the defendant's retention of a benefit received from class members was just or not."). *Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 669 (S.D. Cal. 2010); *Cartwright v. Viking Indus.*, 2009 WL 2982887, at*7 (E.D. Cal. Sept. 11, 2009); *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 343 (N.D. Cal. 2010).

**D.    The class is ascertainable given UW's own records.**

UW argues that no class members are ascertainable or "identifiable" because there are no class members since UW will ultimately win on the merits. Opp. at 19–20. This is exactly what class certification is for. If UW wins on the merits, it wins against the entire class and vice versa. But putting aside this point and addressing UW's arguments, first, it does not challenge Plaintiff's support that class membership and information is readily and easily ascertained or

Plaintiff's Reply in Support of
Motion for Class Certification
Case No. 20-2-13924-6-SEA
010920-41/2226350 V1

- 7 -

HAGENS BERMAN
1301 Second Avenue, Suite 2000 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

"identified" through Defendant's own records. *See* Mot. at 17.[2] There is no requirement the identification of class members must be administratively feasible beyond the requirements of Rule 23. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017).

Second, the Court should not decide whether Plaintiff and the class will ultimately prevail on their claims at class certification. *See B.E. v. Teeter*, 2016 WL 3939674, at *2 (W.D. Wash. July 21, 2016) ("'[T]he question is not whether the plaintiff [has] stated a cause of action or will prevail on the merits.'") (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974)). Plaintiff must, as done here, show through factual/legal support that his claims are capable of being resolved on a classwide basis; and that prosecution of all class members' claims together is the best and most efficient way to resolve them. Here, Plaintiff and class members enrolled in and paid for a suite of in-person/on-campus based educational services that they bargained for and actively selected, *not* any separate and unselected UW *online* program in which they did not enroll.[3] *Cf.* Answer to First. Am. Compl. ¶ 7 ("The University admits to offering on-campus classes when possible."). The Court already found Plaintiff sufficiently pled his claims; UW brought and lost that challenge already. Berman Reply Decl., Ex. 1 at MTD Hrg. Tr. 38–41 (Exhibit pp. 39–42). If Plaintiff and the certified class meeting all of the CR 23 requirements ultimately cannot prove those claims, then UW will gain the "preclusive" effect from future related claims from such a judgment that it claims would be "lost" if the class were certified.[4] UW's argument would preclude the certification of any breach of contract or related claims until

---

[2] *Kihuria v. Consumer Legal Servs. Am., Inc.*, 5 Wash. App. 2d 1001 (2018), is no help as that court certified a class (and denied a motion to decertify the class). Here, the class includes students who contracted and paid for in-person, on-campus programs. Thus, like in *Kihurua*, it includes those who "entered into a contract" for services with a particular defendant over a specified period of time. *Id.*

[3] *See, e.g.,* https://www.pce.uw.edu/online; https://foster.uw.edu/academics/degree-programs/hybrid-mba/; https://education.uw.edu/programs/undergraduate/ece; https://sph.washington.edu/program/online-mph.

[4] *Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 895 (7th Cir. 2012), is easily distinguishable. A sweeping racial discrimination/employment case involving 262 differently run work sites, *Bolden* criticized an over generalized/chronologically over broad pair of proposed classes that did not provide the court with appropriate time frame parameters/plaintiffs with standing (not at issue here) or more precisely define within a fluid workplace exactly what African-American workers were promised access to or opportunities for (as opposed to clearly promised up front access to services, as here). This is a much more straightforward contract/transactional case.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION                    - 8 -
CASE NO. 20-2-13924-6-SEA
010920-41/2226350 V1

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   any such breach is proven, thereby (in an individual case where a defendant wins on the merits

2   on an individual claim in a class case) eviscerating all of the benefits and finality of the class

3   mechanism while leaving UW open to individual suits.[5]

4          Lastly, Plaintiff's claims are based on materials provided universally to Plaintiff and the

5   proposed class and UW's conduct. The essential "common" and "typical" issues of

6   promise/contract/breach/damages apply equally to all class members. UW's argument that "no

7   student paid for in-person programs, services, or courses" is clear ***support*** for certification as that

8   question can be answered classwide. Opp. at 20.

9   **E.     RCW § 28B.15.600 still does not apply.**

10         UW's first argument against class certification, ironically, is simply a repackaging of its

11  last argument—summarily rejected by this Court—in its Motion to Dismiss. This is not a class

12  certification argument and is inappropriate. However, Plaintiffs' claims are for damages arising

13  from UW's breach of contract, quasi-contract, or a claim for unjust enrichment. Calling it a

14  "refund" or "damages" or "restitution" are simply equivalent short-hands of Plaintiff's primary

15  claim for relief. It is not covered by or implicated by the statutory or related "tuition refund"

16  policies of the state or school cited in this action by UW, whose express and understood purpose

17  is to address situations where a student, due to health or personal concerns/issues must or desires

18  to withdraw from the University. This was recognized by the Court in its motion to dismiss

19  discussion and similar "school tuition refund policy trumps" arguments have been regularly

20  rejected by courts in analogous cases across the country.

21         UW has already argued that Plaintiff failed to exhaust his administrative remedies prior

22  to filing suit, relying on the self-same RCW § 28B.15.600. Defs.' Mot. Dismiss Pl.'s First Am.

23  Compl. at 25. The Court denied that request because RCW § 28B.15.600 does not apply to the

24  facts of this case, applying only when the student withdraws from a university or college course

25  or program. *See* Berman Reply Decl., Ex. 1 at MTD Hrg. Tr. 44:1–15 (Exhibit p. 45) ("[I]t just

26  isn't relevant, it seems to me, that UW had a refund policy if a person did withdraw or cancel

27

28  _____
       [5] Plaintiff's class definition tracks that certified by a number of courts evaluating similar
    claims/motions, including the *Little* case cited by UW. *See Little*, 2022 WL 266726, at *4.

**HAGENS BERMAN**

classes, to his ability to bring these claims saying he has not gotten what he bargained for.").[6]
While the statute clearly does not apply here, this defense would be a class wide issue. Either
ARCW § 28B.15.600 would apply to bar the claims of Plaintiff and the class or it does not (it
does not), its application would not vary across the class.

Lacey Nursing Ctr., Inc. v. Dep't of Revenue is inapplicable for numerous reasons. First,
Lacey is limited in application because it addressed a statute and question not at issue here:
"whether an action by nursing homes for refund of Business and Occupation taxes under RCW
82.32.180 may be maintained as a class action." Lacey Nursing v. Dep't of Revenue, 128 Wash.
2d 40, 42, 905 P.2d 338, 339 (1995). Lacey itself makes clear the narrow, targeted nature of its
primary holding, stating "[i]t is a general principle that tax statutes conferring credits, refunds or
deductions are construed narrowly. RCW 82.32.180 is a conditional, partial waiver of the
sovereign immunity afforded by Article II § 26 of the Washington Constitution" Id. at 344–45.
No such overarching principle can be found in Washington state statutes or caselaw regarding
the University/student contacts at issue here. Quite the contrary. See Architectural Woods v.
State, 92 Wash. 2d 521, 526–27, 598 P.2d 1372, 1375 (1979) (affirming breach of contract cases
against state universities). Moreover, the Court of Appeals has made crystal clear that the
specifically narrow limitation set forth in Lacey is the exception, not the rule: "We read Lacey
Nursing as requiring express authority for class actions only with respect to excise tax refund
suits, not with respect to all types of lawsuits against the State." Oda v. State, 111 Wash. App.
79, 85, 44 P.3d 8, 11 (2002).

Central to Lacey answer to that specific question was that RCW § 82.32.180 involved a
specific procedure for bringing tax appeal claims in the superior court and because of that
procedure, the plaintiffs (and class) were statutorily limited to meeting the nuances of ARCW §
82.32.180 to bring a claim. See Lacey, 11 Wash. App. at 333–334 ("RCW 82.32.180 imposes
specific requirements applicable to *excise tax refund suits* . . .") (emphasis added). By contrast,

---

[6] *Cf. Omori v. Brandeis Univ.*, 2022 WL 10511039, *4 (D. Mass. 2002) (rejecting argument
that university's refund schedule applied: "Neither plaintiff withdrew from Brandeis and they do
not complain of any failure on the part of the University to refund their tuition in connection with
an approved withdrawal.").

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
CASE NO. 20-2-13924-6-SEA
010920-41/2226350 V1

- 10 -

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

ARCW § 28B.15.600 provides no similar class action precluding procedure. RCW § 28B.15.600 was not created to define court refund procedures, it was created to avoid a particular hardship to withdrawing students. *See* Washington Senate Bill Report, 2003 Reg. Sess. H.B. 2113 ("The use of different calculation methods for tuition refunds and financial aid returns can lead to situations where students owe the federal government more in returned financial aid than they receive in refunded tuition."). The legislature fixed this problem, allowing schools to use the same calculation formula as the federal government. *Id.* Neither RCW § 28B.15.600 nor *Lacey* applies.[7]

**F.    Plaintiff properly defines the proposed class.**

Last, UW contends that if the Court certifies a class, it should make certain exclusions. Opp. at 20. Plaintiff already addressed several arguments in advance in Plaintiff's proposed order granting plaintiff's motion for class certification (Opp. at 20:18–19; *id.* at 20:19; *id.* at 20:21–22) and UW offers no basis for the others (Opp. at 20:16–17; *id.* at 2:17–18; *id.* at 20:20). As a result, Plaintiff stands on the definition set out in Plaintiff's proposed order.

## III.    CONCLUSION

Plaintiff respectfully reasserts his request that the Court should certify the proposed class, appoint Plaintiff as Class Representative, and his counsel as Class Counsel.

---

[7] "When interpreting statutory language, the goal of the court is to carry out the intent of the *Ellerman v. Centerpoint Prepress, Inc.*, 143 Wash. 2d 514, 519, 22 P.3d 795 (2001). "In ascertaining this intent, the language at issue must be evaluated in the context of the entire statute." *Id.*



1

2
Dated: March 27, 2023                     Respectfully submitted,

3                                          By: */s/ Steve W. Berman*

4                                          Steve W. Berman (WA Bar No. 12536)
                                           HAGENS BERMAN SOBOL SHAPIRO LLP
5                                          1301 Second Avenue, Suite 2000
                                           Seattle, WA 98101
6                                          (206) 623-7292
                                           (206)-623-0594 (fax)
7                                          steve@hbsslaw.com

8                                          Daniel J. Kurowski (*Pro Hac Vice*)
                                           Whitney K. Siehl (*Pro Hac Vice*)
9                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                           455 N. Cityfront Plaza Drive, Suite 2410
10                                         Chicago, IL 60611
                                           (708) 628-4949
11                                         (708) 628-4950 (fax)
                                           dank@hbsslaw.com
12                                         whitneys@hbsslaw.com

13                                         Edward W. Ciolko (*Pro Hac Vice*)
                                           Nicholas A. Colella (*Pro Hac Vice*)
14                                         LYNCH CARPENTER LLP
                                           1133 Penn Avenue
15                                         5th Floor
                                           Pittsburgh, PA 15222
16                                         (412) 322-9243
                                           (412) 231-0246 (fax)
17                                         eciolko@lcllp.com
                                           ncolella@lcllp.com

18                                         *Attorneys for Plaintiff and the proposed Class*

19
                            **WORD COUNT CERTIFICATION**
20
        I certify that this reply memorandum contains 4,320 words, in compliance with the Local
21
    Civil Rules.
22
                                           By: */s/ Steve W. Berman*
23                                             Steve W. Berman

24

25

26

27

28



1

2

3

4

5

6

7

8

9  IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

10  ALEXANDER BARRY, individually and on
behalf of all others similarly situated,

11                                              Case No. 20-2-13924-6
                     Plaintiff,

12                                              **UNIVERSITY OF WASHINGTON'S**
        v.                                      **SUR-REPLY IN SUPPORT OF ITS**
13                                              **OPPOSITION TO PLAINTIFF'S**
UNIVERSITY OF WASHINGTON,                        **MOTION FOR CLASS**
14  WILLIAM S. AYER, JOEL BENOLIEL,              **CERTIFICATION**
JOANNE HARRELL, JEREMY JAECH,
15  LIBBY MACPHEE, CONSTANCE RICE,              The Honorable Judith H. Ramseyer
ROGELIO RIOJAS, BLANE TAMAKI,
16  DAVID ZEEK and, ANA MARI CAUCE,            Noted for:  Wednesday, June 28, 2023

17                     Defendants.

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

I.     Introduction ..........................................................................................................1

II.    Summary of the Cowan Report ...........................................................................1

III.   Plaintiff Cannot Meet CR 23's Predominance Requirement for the Breach of
       Contract Claims ....................................................................................................2

       A.     Plaintiff Cannot Show That Using a "Market Value" Is Appropriate ................... 2

       B.     Dr. Cowan's Methodology Would Compensate Students Who Suffered No Harm
              and Provide a Windfall to Many Others. ................................................................. 4

       C.     Dr. Cowan's Arbitrary Damages Model Does Not Supply a CR 23 Basis for
              Issuing Classwide Damages .................................................................................... 6

       D.     Calculating Any Loss of Value Students Experienced in Winter and Spring 2020
              Would Require Individualized Analysis .................................................................. 8

IV.    Plaintiff Supplies No Basis to Support Classwide Restitution for His Unjust
       Enrichment Claim ...............................................................................................10

V.     Conclusion ..........................................................................................................10

SUR-REPLY ISO OPPOSITION TO CLASS
CERTIFICATION:  20-2-13924-6

Orrick, Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

## I.    INTRODUCTION

At least four fatal problems undermine Plaintiff's attempt to show both the existence of, and a common method for calculating, class members' damages.  *First*, Dr. Charles Cowan's report rests on a faulty premise: that he can derive a "market value" of online education at the University of Washington ("UW") using pre-pandemic tuition charged for a narrow set of online undergraduate programs at *comparator* schools, along the way ignoring both the UW's own data and the reality that a college education is a long-term investment that every student values differently.  *Second*, without explanation, Dr. Cowan erroneously deems those other schools comparable to the UW.  They are not.  *Third*, Plaintiff's methodology would result in a windfall to many uninjured students who paid less for tuition than Dr. Cowan's "market rate," because financial aid or other third-party sources covered these students' tuition, or because some of their coursework was already delivered online, in whole or part.  *Fourth*, Dr. Cowan ignores that the source of any student's tuition payments—particularly, third-party sources—is not readily accessible information and would require individual analysis.  Another court considering a nearly identical analysis from Dr. Cowan denied class certification precisely because the flaws in his analysis meant that "the 'actual value' of online, post-COVID education … c[ould not] be applied on a class-wide basis."  *Omori v. Brandeis Univ.*, 2023 WL 3511341, at *5 (D. Mass. May 17, 2023).  This Court should follow suit.  Dr. Cowan has not provided a model upon which this Court could make classwide damages determinations for the more than 50,000 students at issue.

## II.    SUMMARY OF THE COWAN REPORT

The Cowan Report purports to "quantify the losses incurred by each student on classes that switched from in-person to online-only for students."  3/27/23 Berman Decl., Ex. 5 (Expert Report of Charles D. Cowan Ph.D ("Cowan Rep.")) ¶ 2 (Ex. p. 87).  He terms the in-person services that students did not receive as "on-ground" services and includes not just instruction, but also "components such as physical access to athletic services, library services, campus infrastructure, individual interactions with professors, interactions with other students, as well as a myriad of similar facilities that a student … taking in-person classes receives."  *Id.*

To value the "on-ground" services UW students expected, Dr. Cowan calculated the *value* of online education relative to on-ground instruction by determining the ratio of out-of-state tuition[1] charged for online versus on-ground education pre-pandemic and applying it to what students paid in Winter and Spring 2020.  But Dr. Cowan did not use the UW's programs to calculate that ratio.  He used academic programs at other schools, claiming (1) some of the UW's online programs "do not have comparable in-person programs and have unique requirements for admission," *id.* ¶ 39 & nn.21-22 (Ex. pp. 99-100), or have formats that may "call[] for discounts in pricing," *id.* ¶ 46 (Ex. p. 102); and (2) he "find[s] it difficult to believe" the way the UW has priced certain programs, *id.* ¶¶ 45-48 (Ex. pp. 102-04).

Dr. Cowan determined that the "market" of 11 purportedly comparable public colleges and universities has tuition ratios between online and on-ground programs that range from 27% to 100%, with an average ratio of 56.6%.  *Id.* ¶ 43 & App. A (Ex. pp. 101, 151-55).  In other words, based on out-of-state tuition charged at other schools, he concludes an online education at the UW is worth only 56.6% of an on-ground education.  Applied to the tuition Plaintiff paid for the remote portions of the Winter and Spring 2020 quarters, *id.* ¶¶ 65-69 (Ex. pp. 111-12),[2] Dr. Cowan concludes that Plaintiff should have received a refund of $3,430.80.  *Id.* ¶ 69 (Ex. p. 113).  Dr. Cowan's analysis is the same "regardless of whether [a student] received a scholarship/financial aid."  *Id.* ¶¶ 62-64 (Ex. pp. 109-10).

### III.    PLAINTIFF CANNOT MEET CR 23'S PREDOMINANCE REQUIREMENT FOR THE BREACH OF CONTRACT CLAIMS

#### A.  Plaintiff Cannot Show That Using a "Market Value" Is Appropriate

"The first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013) (citation omitted).  To obtain class certification, therefore, Plaintiff must tie his theory

---

[1] Dr. Cowan focused on tuition rates charged to out-of-state students because he regards the "true value of the educational experience to be based on the out-of-state pricing."  *Id.* ¶ 35.

[2] For the Winter Quarter, he calculated the online portion of the quarter by determining the number of days of the quarter that were "online only" (11 days) and dividing by the total number of days from the beginning of instruction to the end of final exams (74 days).  *Id.* ¶ 67.  For the Spring Quarter, the entire quarter was online.  *Id.* ¶ 68.

SUR-REPLY ISO OPPOSITION TO CLASS
CERTIFICATION:  20-2-13924-6                          - 2 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

of harm to his damages calculation. But his use of a single "market" value based on a ratio derived from 11 other universities' tuition rates does not match the breach alleged here.

Under Washington law, an "injured party has a right to damages based on his expectation interest as measured by… the *loss in the value to him* of the other party's performance caused by its failure or deficiency." *Eastlake Constr. Co. v. Hess*, 102 Wn.2d 30, 46 (1984) (quoting Restatement 2d of Contracts § 347). Dr. Cowan's first mistake is using tuition *prices* as a proxy for the *value* of an education, a premise that misunderstands the economics of higher education. Tuition does not measure the value that students receive from higher education. Turner Rep.[3] ¶ 65 (Ex. p. 33). Education is a long-term investment and the value any given student derives depends on the unique factors that drove their choice of institution in the first place, as well as individualized factors like their own effort, ability, and program of study. *See id.* ¶¶ 40-48 (Ex. pp. 25-28). Returns on that investment are not measurable instantaneously, but over the course of their careers. *See id.* ¶¶ 40-42 (Ex. pp. 25-26). Tuition paid in any given academic term thus has little relation to the value that students receive from their education.

Second, Dr. Cowan does not explain why a so-called "market" tuition rate, calculated from assorted public schools across the country, measures the loss in value (if any) to a particular student (let alone *all* students) due to the switch from in-person to remote education and services. That alleged loss also turns on many individualized factors like a student's pre-existing level of participation in on-campus activities, the classes a student was enrolled in, their home environment, and even the length of their commute. *See id.* ¶¶ 100-101 (Ex. pp. 56-57).

Third, Dr. Cowan wrongly assumes there is a *consistent* market rate between online and in-person education that applies in a one-size-fits-all manner to the UW's hundreds of academic programs. Dr. Cowan's own calculations show otherwise. Dr. Cowan derived price ratios between online and in-person programs as low as 27% and as high as 100%. Cowan Rep. App. A (Ex. pp. 151-55). That wide variation shows (a) there is not a constant price relationship (let alone value)

---

[3] This sur-reply includes references to reports from the UW's experts, Dr. Sarah Turner ("Turner Rep.") and John Hansen ("Hansen Rep."), attached as Exhibits A and B, respectively, to the Declaration of Karen Johnson-McKewan filed herewith.

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

between in-person and online instruction, and/or (b) that Dr. Cowan's matched pairs differ for reasons beyond their instructional format.  Turner Rep. ¶ 112 (Ex. p. 62).

Finally, even if developing such a "market value" were viable, Dr. Cowan ignores data from the UW itself.  In similar COVID-19 class action cases, courts have rejected attempts to apply a "market rate" when there was comparable data available from a defendant university.  *See Michel v. Yale Univ.*, 2023 WL 1350220, at *7 (D. Conn. Jan. 30, 2023) ("[A]ttempting to divine a difference in market value from competitors is unavailing where Yale's pricing model has previously rejected a value disparity for the in-person and remote educational opportunities it provides."); *In re Suffolk Univ. Covid Refund Litig.*, 616 F. Supp. 3d 115, 118 (D. Mass. 2022) (same).  The UW offered dozens of completely online or hybrid courses in Winter and Spring 2020 that enrolled thousands of students.  Turner Rep. ¶ 99 (Ex. pp. 55-56).  The University also had about 17 fully online degree programs in the 2019-2020 school year.  Hansen Rep. ¶ 63 (Ex. p. 138).  Dr. Cowan admits that many of these programs charged identical amounts for in-person and online instruction.  *See* Cowan Rep. ¶ 44 (Ex. pp. 101-02) ("When there appears to be a fee-based program that is offered in both modalities, they appear to be offered at the same price ….").

Dr. Cowan's decision to ignore the UW's own programs cannot be justified.  *See* Cowan Rep. ¶¶ 39-48 (Ex. pp. 99-103).  Some of Dr. Cowan's comparator programs appear to have the same differences in "admission requirements," for example, that caused him to disregard the UW's online programs.  *See* Hansen Rep. ¶ 61 (Ex. p. 137); Turner Rep. ¶ 116 (Ex. p. 64).  And Dr. Cowan's "difficult[y]" believing the prices that the UW charges for its online, self-sustaining fee-based programs is irrelevant.  Cowan Rep. ¶ 44-45 (Ex. pp. 101-02).  Dr. Cowan appears to have used the prices that his 11 "comparable" schools charged without performing *any* inquiry into how those prices were set.  *See* Hansen Rep. ¶ 62 (Ex. p. 137).  If posted tuition prices at those schools reflect the "value" of the education students receive, the UW's prices do as well.

**B.  Dr. Cowan's Methodology Would Compensate Students Who Suffered No Harm and Provide a Windfall to Many Others.**

"To ensure that common questions predominate over individual ones, the court must

'ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct.'" *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020) (citation omitted).  Plaintiff's own damages theory includes class members who were not harmed.

If Dr. Cowan is correct that a public university's out-of-state tuition reflects the true "value" of the education a student receives, in-state students at the UW received greater value than the tuition they paid.  Hansen Rep. ¶ 45 (Ex. pp. 129-30).  For example, the UW charged resident undergraduates $3,457 and non-resident undergraduates $12,357 in tuition per quarter in Winter and Spring 2020.  *Id.*  Accepting Dr. Cowan's premise that the non-resident price is the "true value," and applying Dr. Cowan's 56.6% discount, resident undergraduates still would have received $6,994 in value in the fully online Spring 2020 Quarter, nearly double the $3,457 they were charged.  *Id.*  Resident students make up nearly two-thirds of the proposed class, *see id.* ¶ 46 (Ex. p. 130), and it would be improper to certify a class where so many members—by Plaintiff's own analysis—were unharmed.

Dr. Cowan's methodology would also lead to a windfall for students who receive need-based aid from the UW or other third parties.  Courts routinely refuse to certify classes when many class participants stand to receive a windfall under a plaintiff's damages calculation.  *See, e.g.*, *Beaty v. Ford Motor Co.*, 2021 WL 3109661, at *13 (W.D. Wash. July 22, 2021), *amended*, 2023 WL 1879534 (W.D. Wash. Feb. 10, 2023) (denying class certification where plaintiffs' damages methodology would result in a windfall for certain class members).  The *Brandeis* court also rejected Dr. Cowan's analysis and denied class certification in part because of his failure to account for individualized financial aid issues.  *See* 2023 WL 3511341, at *5 (Dr. Cowan's "damages model does not address the variation in scholarships, grants and aid provided for different kinds of programs or educational modalities.").  The University provides need-based aid to students, taking account of their individual and family economic circumstances.  Turner Rep. ¶¶ 74-76 (Ex. pp. 38-39).  If refunds go to students whose tuition was offset by financial aid or other sources, those students would receive a windfall to the extent any refunds exceed their personal

1  contributions to tuition.  Hansen Rep. ¶¶ 67-70 (Ex. pp. 140-42).  And while Plaintiff seeks to

2  certify a class of "[a]ll students who were enrolled in *and paid for* [UW's] in-person based

3  educational programs, services, and courses," Mot. at 2 (emphasis added), Plaintiff's own expert

4  has asserted that financial aid is irrelevant to his analysis.  Cowan Rep. ¶ 75 (Ex. pp. 114-15).  Dr.

5  Cowan's calculation thus conflicts with the class definition and would guarantee that the nearly

6  10,000 students who qualify for the "Husky Promise" and have their tuition and fees covered by

7  grant or scholarship would receive a windfall.  Hansen Rep. ¶¶ 41-42 (Ex. pp. 127-28).

8  **C.  Dr. Cowan's Arbitrary Damages Model Does Not Supply a CR 23 Basis for Issuing Classwide Damages**

9

10  A plaintiff may not adopt an "arbitrary" method of calculating damages on a classwide

11  basis because "[s]uch a proposition would reduce Rule 23(b)(3)'s predominance requirement to a

12  nullity."  *See Comcast*, 569 U.S. at 36.  That is precisely what Dr. Cowan has done.  Dr. Cowan

13  acknowledges his approach is like assessing the value of an investment using other investments or

14  using comparable properties to value real estate.  *See* Cowan Rep. ¶ 40 (Ex. p. 100).  But when

15  using comparable market data to calculate the value of a good, service, or property, an expert must

16  *account for differences* between the comparable data and the item being valued.  *See Sahalee*

17  *Country Club, Inc. v. State Bd. of Tax Appeals*, 108 Wn.2d 26, 36-37 (1987) ("any differences

18  should be taken into account" in valuing properties based on comparable sales); *King v. Wang*,

19  2021 WL 5237195, at *11 (S.D.N.Y. Nov. 9, 2021) (proper valuation using comparable

20  benchmarks "requires criteria for the identification of comparable[s], the identification of

21  sufficient comparables, and the making of appropriate adjustments to account for differences");

22  *Superwood Co. v. Slam Brands, Inc.*, 2013 WL 6008489, at *18-19 (W.D. Wash. Nov. 13, 2013)

23  (rejecting damages theory devoid of evidence "to account for the[] differences" between allegedly

24  comparable agreements).

25  Dr. Cowan undertook *no* analysis to determine whether his market is comparable to the

26  education the UW offered during the class period.  A factfinder would thus need to engage in

27  "speculation, guesswork, or conjecture" to determine whether the market rates he has calculated

28

SUR-REPLY ISO OPPOSITION TO CLASS
CERTIFICATION:  20-2-13924-6                    - 6 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

provide a "reasonable basis" for estimating the value of the education the UW provided during the class period. *Id.* at *19 (citing *Shinn v. Thrust IV, Inc.*, 56 Wn. App. 827, 840, 786 P.2d 285 (1990)); *Brandeis*, 2023 WL 3511341, at *5 (rejecting Dr. Cowan's damages model where he "d[id] not account for th[e] difference" between comparator academic programs and the defendant's). Dr. Cowan failed to consider or adjust for *at least* the factors discussed below.

*Timing and Effect of COVID.* When calculating damages based on a market value of comparable goods or service, damages must be calculated "at the time of the breach." *See Friebe v. Supancheck*, 98 Wn. App. 260, 269, 992 P.2d 1014 (1999); *Mathews v. Heiser*, 42 Wn.2d 326, 337–38 (1953). Dr. Cowan used pre-pandemic tuition rates and has ignored the time of the alleged breaches here—March to June 2020—when the pandemic was in its infancy and people everywhere sought to isolate from others to avoid contracting COVID. The *Brandeis* court rejected Dr. Cowan's analysis for precisely that reason (among others): he did not "account for how COVID-19 itself may have affected the value of online education in Spring, 2020 or address whether that effect may have been more pronounced with respect to certain courses and students." 2023 WL 3511341, at *5. Using "pre-COVID posted tuition cannot capture the increased demand and value that many students were likely to place on online educational options during the pandemic." Turner Rep. ¶ 125 (Ex. pp. 68-69). Many students, including Plaintiff, were grateful to continue their educations while avoiding COVID-19 risks. *Id.* ¶ 126 (Ex. p. 69).

*Differences in Online and In-Person Tuition in Comparable Graduate Programs.* Without explanation, Dr. Cowan omits all potentially comparable graduate programs from his analysis, comparing only rates for undergraduate programs, *see* Cowan Rep. ¶ 54, a puzzling decision here, where Plaintiff was a graduate student. Omitting graduate programs likely affected Dr. Cowan's ratio. *See* Turner Rep. ¶ 124 (Ex. p. 68).

*Comparability of the Online and In-Person Programs Identified.* Dr. Cowan neither analyzed differences between the online and in-person programs he identified nor adjusted for those differences. To isolate the value of in-person instruction, Dr. Cowan would need to prove the lack of material differences beyond the instructional modality between the in-person and online

programs he identified.  *See* Turner Rep. ¶ 114 (Ex. p. 63).  In disregarding the UW's online and in-person tuition rates, Dr. Cowan asserts that differences in admissions requirements and formats of instruction render the two programs not comparable.  *See* Cowan Rep. ¶¶ 39, 46 (Ex. pp. 99, 102-03).  But at least some of the programs Dr. Cowan identified appear to have the same differences in admission requirements that Dr. Cowan used to disqualify the UW's programs from his analysis.  *Compare* Cowan Rep. ¶ 39 (Ex. p. 99) *with* Hansen Rep. ¶ 61 (Ex. p. 137).  Dr. Cowan also failed to analyze whether online students in the "comparable" programs nonetheless had access to on-campus services and facilities or comparable online services.  The omission is material, because he purports to be calculating harm caused by *both* lack of in-person instruction *and* the lack of access to on-campus facilities and other services.  *See* Cowan Rep. ¶ 2 (Ex. p. 87).

*Comparability of the Programs Identified to the UW's Programs.*  The comparable academic programs on Dr. Cowan's list also do not reflect the variety and mix of degrees offered at the UW.  Dr. Cowan ignores graduate and professional degree programs, assuming that tuition differences between online and in-person programs would be constant, regardless of student level.  *See* Turner Rep. ¶¶ 123-24 (Ex. pp. 67-68). Dr. Cowan made that same assumption in *Brandeis* and the court concluded it was "unsupported and no fact-finder could rely on the actual value it yields in order to make class-wide determinations."  2023 WL 3511341, at *5.  Even among undergraduate programs, the comparable programs Dr. Cowan identified do not reflect the variety of programs available at the UW.  Several of the programs offer degrees (e.g., in "Applied Studies") that have no analog at the UW.  Hansen Rep. ¶ 54 (Ex. p. 133).  In fact, more than half of the UW's undergraduates are enrolled in degree programs with no corresponding program in Dr. Cowan's entire set of comparables.  Turner Rep. ¶ 122 (Ex. pp. 66-67).

### D. Calculating Any Loss of Value Students Experienced in Winter and Spring 2020 Would Require Individualized Analysis

Dr. Cowan's analysis also ignores the many individualized issues that make classwide determination of damages unworkable.  Damages can be determined classwide only where a plaintiff's suggested methodology makes "the process of computing individual damages …

virtually a mechanical task." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).  But where calculating damages would require "separate 'mini-trial(s)' of an overwhelming large number of individual claims, courts have found that the 'staggering problems of logistics' thus created 'make the damage aspect of (the) case predominate,' and render the case unmanageable as a class action." *Britton v. Servicelink Field Servs., LLC*, 2019 WL 3400683, at *6–7 (E.D. Wash. July 26, 2019) (quoting *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977)).  Even if Dr. Cowan were correct that it is possible and appropriate to calculate a single "market value" for online education and apply it across the UW's broad array of courses, serious logistical problems remain.

First, Dr. Cowan has not proposed a method to determine whether a particular student is even in the class.  To prove that common issues predominate, Plaintiff must establish that each class member has suffered an injury-in-fact and has standing.  *See Cross v. Univ. of Toledo*, 2022-Ohio-3825, at ¶ 33 ("[R]equiring the court to determine individualized fact of damages does not meet the predominance standards of Rule 23(b)(3)." (citation omitted)).  Given Plaintiff's proposed class definition, he must prove that each student class member "*paid for* the [UW's] in-person based educational programs, services, and courses for the Winter Quarter 2020 or Spring Quarter 2020." Mot. at 2.  Dr. Cowan's report is silent on how he would determine who paid each student's tuition. The Tenth Circuit recently affirmed a denial of class certification where the district court concluded that it would be impossible to distinguish between students and third-party payors. *See Evans v. Brigham Young Univ.*, 2023 WL 3262012, at *7 (10th Cir. May 5, 2023).

Second, Dr. Cowan ignores the dozens of classes enrolling thousands of students in Winter and Spring 2020 that were always planned to be entirely online or "hybrid" courses with substantial online components.  Turner Rep. ¶ 99 (Ex. pp. 55-56).  Third, as for the Winter 2020 Quarter, Dr. Cowan proposes calculating damages from March 9th (when the UW moved classes online) to March 20th (the last day of final exams for the Winter Quarter), no matter when a particular course actually ended.  Cowan Rep. ¶ 20 (Ex. p. 93).  Many courses concluded before March 20th.  Hansen Rep. ¶ 85 (Ex. pp. 148-49).  Finally, Dr. Cowan has not proposed a method for offsetting any refunds purportedly payable to a student with financial aid, including emergency aid and CARES

- 9 -

Act funds.  *See* Hansen Rep. ¶¶ 66-72 (Ex. pp. 139-43); Turner Rep. ¶¶ 129-131 (Ex. pp. 70-72).

In sum, to calculate damages for an individual plaintiff under Dr. Cowan's methodology, a searching inquiry would need to be performed to determine, at least: (1) who paid the student's tuition; (2) what classes the student took in each quarter and the format of those classes; (3) for Winter 2020 classes, when each class ended; and (4) how much financial aid the student received and from what source.  Far from being a "mechanical inquiry," calculating damages for every student will be its own mini-trial.

## IV. PLAINTIFF SUPPLIES NO BASIS TO SUPPORT CLASSWIDE RESTITUTION FOR HIS UNJUST ENRICHMENT CLAIM

Because Plaintiff has not even attempted to articulate a classwide theory of restitution for his unjust enrichment claim, this Court should refuse to certify a class for that claim.[4]  Plaintiff's sole reference to his unjust enrichment claim in his Reply argues the Court should certify a class because the UW's course of conduct was the same as to each class member. (It was not.)  *See* Reply at 6-7.  Identifying a common course of conduct is not enough.  Plaintiff must present a theory showing that the damages resulting from that conduct "are capable of measurement on a classwide basis" to satisfy the predominance requirement.  *See Comcast*, 569 U.S. at 34.

Dr. Cowan has not offered any such measure.  He purports to measure the loss in *contract value*—i.e., the expectation value to the plaintiff of the UW's performance, Cowan Rep. ¶¶ 70-76 (Ex. pp. 113-16)—but unjust enrichment damages are measured based on "the extent to which the other party's property has been increased in value or his other interests advanced."  *Young v. Young*, 164 Wn.2d 477, 487 (2008).  The Court should deny class certification for that claim.

## V. CONCLUSION

For these reasons and those discussed in the UW's Opposition, the UW asks the Court to deny Plaintiff's motion for class certification.

---

[4] Plaintiff may have declined to offer a damages methodology for his unjust enrichment claim because such claims require individualized fairness considerations and are ill-suited for class treatment. *See Little v. Grand Canyon Univ.*, 2022 WL 266726, at *7 (D. Ariz. Jan. 28, 2022) (refusing to certify class for unjust enrichment claim); *Daley v. Greystar Real Est. Partners LLC*, 2020 WL 6865780, at *11 (E.D. Wash. July 2, 2020), *report and recommendation adopted*, 2020 WL 4698316 (E.D. Wash. Aug. 13, 2020) (same).

SUR-REPLY ISO OPPOSITION TO CLASS
CERTIFICATION:  20-2-13924-6                - 10 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

Dated: June 21, 2023

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By: */s/ Robert M. McKenna*
    Robert M. McKenna (WSBA No. 18327)
    rmckenna@orrick.com
    Aaron P. Brecher (WSBA No. 47212)
    abrecher@orrick.com
    401 Union Street, Suite 3300
    Seattle, WA  98101-2668
    Telephone:  +1 206 839 4300
    Facsimile:  +1 206 839 4301

    Karen G. Johnson-McKewan
    (Admitted *Pro Hac Vice*)
    kjohnson-mckewan@orrick.com
    405 Howard Street
    San Francisco, CA 94105-2669
    Telephone:  +1 415 773 5700
    Facsimile:  +1 415 773 5759

    Marc R. Shapiro (Admitted *Pro Hac Vice*)
    mrshapiro@orrick.com
    51 West 52nd Street
    New York, NY 10019-6142
    Telephone:  +1 212 506 5000
    Facsimile:  +1 212 506 5151

    Diana Szego Fassbender
    (Admitted *Pro Hac Vice*)
    dszego@orrick.com
    1152 15th Street, NW
    Washington, DC 20005-1706
    Telephone:  +1 202 339 8400
    Facsimile:  +1 202 339 8500

    *Special Assistant Attorneys General*
    *Attorneys for Defendant University of Washington*

SUR-REPLY ISO OPPOSITION TO CLASS
CERTIFICATION:  20-2-13924-6

- 11 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300